1  Christopher A. Carr (#44444)
      ccarr@afrct.com
2  D. Dennis La (#237927)
      dla@afrct.com
3  ANGLIN, FLEWELLING, RASMUSSEN,
      CAMPBELL & TRYTTEN LLP
4  199 South Los Robles Avenue, Suite 600
   Pasadena, California 91101-2459
5  Tel: (626) 535-1900 | Fax: (626) 577-7764

6  Attorneys for Defendant
   Wells Fargo Bank, N.A., successor by
7  merger with Wells Fargo Bank Southwest,
   N.A., f/k/a Wachovia Mortgage, FSB, f/k/a
8  World Savings Bank, FSB ("Wells Fargo")

```
FILED
CLERK, U.S. DISTRICT COURT

FEB 28 2013

CENTRAL DISTRICT OF CALIFORNIA
BY                          DEPUTY
```

9

10                    UNITED STATES DISTRICT COURT

11        CENTRAL DISTRICT OF CALIFORNIA – SOUTHERN DIVISION

12  KEITH WINTERBOWER, as Trustee       CASE NO.: SACV13-360- DOC
    to the Keith Winterbower Revocable                    (mLGx)
13  trust, and         Plaintiff, DEBRA WINTERBOWER

14  v.                                  NOTICE OF REMOVAL
                                        PURSUANT TO 28 U.S.C. §§ 1441,
15  WELLS FARGO BANK, N.A., a           1331 [FEDERAL QUESTION] &
    business entity form unknown,       1332 [DIVERSITY]
16  REGIONAL TRUSTEE SERVICES
    CORPORATION, a business entity form
17  unknown, and DOES 1-100, inclusive,

18                     Defendants.

19

20

21  TO PLAINTIFF, THE CLERK OF THE ABOVE-ENTITLED COURT, AND

22  THE HONORABLE UNITED STATES DISTRICT JUDGE, AS ASSIGNED:

23         PLEASE TAKE NOTICE that defendant Wells Fargo Bank, N.A.,

24  successor by merger to Wells Fargo Bank Southwest, N.A., f/k/a Wachovia

25  Mortgage, FSB, f/k/a World Savings Bank, FSB ("Wells Fargo") hereby provides

26  this Notice of Removal based on federal question jurisdiction pursuant to 28 U.S.C

27  § 1331 and diversity of citizenship jurisdiction pursuant to 28 U.S.C. § 1441 &

28  1332, and hereby removes to this Court the state court action described below.

1        **1. THE STATE COURT ACTION**

2        On February 5, 2013, plaintiff KEITH WINTERBOWER as Trustee to the

3 Keith Winterbower Revocable Trust, and DEBRA WINTERBOWER, commenced

4 an action in the Superior Court of the State of California for the County of Orange,

5 case number 30-2013-00628738 (the "State Court Action").

6        On February 6, 2013, a first amended complaint was filed ("FAC"), wherein

7 the plaintiff in the State Court Action was changed to Keith Winterbower

8 individually.

9        Defendant Wells Fargo did not appear in the State Court Action. Defendant

10 Regional Trustee Services Corporation appeared in the State Court Action merely

11 to file a declaration of non-monetary status ("DNMS") on February 27, 2013. A

12 copy of the Complaint and FAC filed in the State Court Action are attached

13 collectively hereto as Exhibit A. Attached collectively hereto as Exhibit B are all

14 other documents filed in the State Court Action which are in Wells Fargo's

15 possession.

16        **2. JURISDICTION**

17 A.    **FEDERAL QUESTION JURISDICTION**

18        Cases filed in state court may be removed to federal district court where the

19 district courts have original subject matter jurisdiction over the case. 28 U.S.C.

20 § 1441(a). District courts "have original jurisdiction of all civil actions arising

21 under the Constitution, laws or treaties of the United States." 28 U.S.C. § 1331.

22        "The existence of federal question jurisdiction is ordinarily determined from

23 the face of the complaint." *Sparta Surgical Corp. v. National Ass'n of Sec.*

24 *Dealers, Inc.*, 159 F.3d 1209, 1211 (9th Cir. 1998). Under the well-pleaded

25 complaint rule, a defendant may remove a case to federal court if "the plaintiff's

26 complaint establishes that the case 'arises under' federal law." *Franchise Tax Bd.*

27 *v. Construction Laborers Vacation Trust*, 463 U.S. 1, 10 (1983) (emphasis

28 omitted); *Caterpillar, Inc. v. Williams*, 482 U.S. 386, 392 (1987) (stating that

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

1  federal jurisdiction is appropriate when it is presented on the face of plaintiff's
2  well-pleaded complaint); *Duncan v. Stuetzle*, 76 F.3d 1480, 1485 (9th Cir. 1996)
3  (same).

4       A case "arises under" federal law when the complaint "establishes either
5  that federal law creates the cause of action or that the plaintiff's right to relief
6  necessarily depends on resolution of a substantial question of federal law."
7  *Franchise Tax Bd.*, 463 U.S. at 27-28. It is well-established that a single claim
8  over which federal question jurisdiction exists is sufficient for removal. *Exxon*
9  *Mobil Corp. v. Allapattah Servs.*, Inc., 545 U.S. 546, 563 (2005); *City of Chicago*
10 *v. International College of Surgeons*, 522 U.S. 156, 164-66 (1997).

11      Further, district courts have supplemental jurisdiction over related claims.
12 28 U.S.C. § 1367(a) (providing in pertinent part that "in any civil action of which
13 the district courts have original jurisdiction, the district courts shall have
14 supplemental jurisdiction over all other claims that are so related to claims in the
15 action within such original jurisdiction that they form part of the same case or
16 controversy under Article III of the United States Constitution").

17      This Court has jurisdiction of this case under 28 U.S.C. §§ 1441(b) and 1331
18 because plaintiff alleges claims arising under the laws of the United States. In
19 particular, the State Court Action bases one distinct claim for relief on a federal
20 statute including: federal Home Affordable Modification Program ("HAMP");
21 (Compl. ¶¶ 15-38, 114,). These allegations, in turn, form the basis for plaintiff's
22 claims for relief wherein plaintiff alleges he was harmed under the HAMP statute
23 in connection with the loan from Wells Fargo.

24      Here, plaintiff alleges that HAMP requires "participating servicers to
25 evaluate all loans that are sixty (60) or more days delinquent for HAMP
26 modifications," and that "that the lender must proactively solicit all borrowers
27 whose first mortgage loans are potentially eligible for HAMP…" (Compl. ¶¶ 33,
28 35.) According to plaintiff, "the clear violation[] of…the provisions of HAMP"

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

1 | constitutes an unlawful business practice. (Compl. ¶ 114.)

2 | "Federal law controls the interpretation of a contract entered pursuant to

3 | federal law when the United States is a party." *Klamath Water Users Protective*

4 | *Ass'n v. Patterson*, 204 F.3d 1206, 1210 (9th Cir. 2000). Furthermore, federal

5 | common law of contracts applies to contracts with the federal government, and

6 | federal common law is part of the "laws… of the United States" for the purpose of

7 | Section 1331 jurisdiction." *North Side Lumber Co. v. Block*, 753 F.2d 1482, 1484

8 | (9th Cir. 1985).

9 | HAMP is an agreement between Wells Fargo and the Federal Government

10 | and thus presents a federal questions under section 1331. Numerous California

11 | district courts have ruled that claims brought by borrowers alleging lenders'

12 | violations of HAMP raise an issue of federal law that falls under courts' federal

13 | question jurisdiction. *See, e.g., Hammonds v. Aurora Loan Services LLC*, 2010

14 | U.S. Dist. LEXIS 143758 * 6 (C.D. Cal. Sept. 27, 2010) ("Federal law controls the

15 | interpretation of the HAMP contract…. When a contract is entered into under

16 | federal law and one party is the United States, federal law applies. The Court will

17 | therefore apply federal common law to the breach of contract claim"); *Escobedo v.*

18 | *Countrywide Home Loans, Inc.*, 2009 U.S. Dist. LEXIS 117017 (S.D. Cal. Dec.

19 | 15, 2009) ("The [HAMP] Agreement is governed by and must be construed under

20 | federal law"); *Simmons v. Countrywide Home Loans, Inc.*, 2010 U.S. Dist. LEXIS

21 | 65031 (S.D. Cal. June 28, 2010) ("Federal law governs the Agreement and thus the

22 | Agreement must be construed under federal law"); *Wright v. Bank of Am., N.A.*,

23 | 2010 U.S. Dist. LEXIS 73807 * 10-11 (N.D. Cal. July 22, 2010) (The Court

24 | dismissed plaintiff's breach of HAMP contract claim which "provides the sole

25 | basis for federal question jurisdiction" and remanded the remaining state causes of

26 | action to state court); *Phipps v. Wells Fargo Bank, N.A.*, 2011 U.S. Dist. LEXIS

27 | 10550 at * 16 (E.D. Cal. Jan. 27, 2011) ("[F]ederal law governs interpretation of

28 | the Servicer Participation Agreement and related documents. Federal law controls

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

1   the interpretation of a contract entered into pursuant to federal law and to which

2   the United States is a party. The Servicer Participation Agreement was entered into

3   between Wells Fargo and Fannie Mae in Fannie Mae's capacity as a financial

4   agent of the United States to render the Servicer Participation Agreement subject to

5   interpretation under federal law.")

6        This reasoning has been extensively followed by district courts across the

7   nation. *See, e.g., Speleos v. BAC Home Loans Servicing, L.P.,* 755 F. Supp. 2d

8   304, 307 (Mass. 2010) ("Federal law controls the interpretation of the HAMP

9   contract because one party to that contract is the United States") (*citing*

10  *Hammonds, supra,* 2010 U.S. Dist. LEXIS at * 6); *Larsen v. Bank of America,*

11  *N.A.,* 2011 WL 6065426, at *8-9 (D. Minn. July 21, 2011) (noting that "federal

12  contract does not, standing alone, create federal question jurisdiction," but finding

13  that allegations in plaintiffs' complaint "placed the interpretation of the federal

14  contracts ... squarely at issue," and issues to be resolved raised "substantial

15  questions of federal law with national implications"); *Copeland-Turner v. Wells*

16  *Fargo Bank, N.A.,* 2011 U.S. Dist. LEXIS 28093 at *5-14, *23 (Ore. March 17,

17  2011); *Pennington v. PNC Mortg.,* 2010 U.S. Dist. LEXIS 143157 (E.D. Va. Aug.

18  11, 2010) (upholding removal because "[f]ederal question jurisdiction pursuant to

19  28 U.S.C. §1331 exists over this action because Plaintiffs assert claims involving

20  questions that will require resolution of significant disputed issue of federal law,

21  including Plaintiffs' claims under the federal National Housing Act, 12 U.S.C.

22  §1701 et seq., which is where HAMP is codified..."); *Nafso v. Wells Fargo Bank,*

23  *NA.,* 2011 U.S. Dist. LEXIS 44654 ( E.D. Mich. Apr. 26, 2011) ("Federal law

24  controls the interpretation of the HAMP contract. When a contract is entered into

25  under federal law and one party is the United States, federal law applies") (*citing*

26  *County of Santa Clara v. Astra USA, Inc.,* 588 F.3d 1237, 1243 (9th Cir. 2009));

27  *Rivera v. Bank of Am. Home Loans,* 2011 U.S. Dist. LEXIS 43138 (E.D.N.Y. Apr.

28  21, 2011) (applying federal common law to interpretation of HAMP agreement);

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

1   *Ahmad v. Wells Fargo Bank, NA,* 2012 U.S. Dist. LEXIS 36300 ( E.D. Mich. Feb.

2   27, 2012) ("Federal law controls the interpretation of the HAMP contract. When a

3   contract is entered into under federal law and one party is the United States, federal

4   law applies").[1]

5        Thus, claims arising under the laws of the United States, or "Federal

6   questions," are presented, which gives this Court jurisdiction under 28 U.S.C. §

7   1331 and makes the State Court Action removable to this Court under 28 U.S.C. §

8   1441(a) and (b).

9   **B.**    **DIVERSITY OF CITIZENSHIP**

10        This Court has jurisdiction of this case under 28 U.S.C. § 1332 because the

11   citizenship of the parties is entirely diverse and the amount in controversy exceeds

12   $75,000.00.

13      **i.**    **Complete Diversity**

14        Complete diversity under 28 U.S.C. § 1332 exists because no defendant is a

15   citizen of the state in which plaintiff is a citizen.  Plaintiff is a citizen of California,

16   and defendant Wells Fargo Bank, N.A., the only real-party-in-interest in this

17   action, is a citizen only of South Dakota.

18      **(a)**    **Plaintiff is a Citizen of California**

19        Plaintiff Keith Winterbower is a citizen of California based on domicile, as

20   he alleges residency and ownership of that parcel of real property situated in

21

22   [1] A small minority of cases outside California do not follow this reasoning. *See,*

23   *e.g., Dean v. BAC Home Loans Servicing LLP,* 2012 WL 353766, at *2-*4 (M.D.

Ala. Feb. 3, 2012) (finding no federal question jurisdiction); *Boyle v. Wells Fargo*

24   *Bank, N.A.,* 2012 WL 289881, at *2-*4 (S.D. Tex. Jan. 31, 2012) (same); *Gretsch*

25   *v. Vantium Capital, Inc.,* 2011 WL 6754079, at *2 (D. Minn. Dec. 23, 2011)

(same).  These cases are distinguishable to the cited herein, and the present case,

26   because those cases did not center on allegations that the lender/servicer did not

27   comply with its contractual obligation under HAMP to extend loan modifications

to borrowers such as plaintiff.  That is exactly what plaintiff in this case alleges,

28   and as such, puts this case in line with those that found HAMP contract claims

subject to federal question jurisdiction.

*(left margin, vertical):* ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

1   Orange County commonly known as 2333 Colgate Drive, Costa Mesa, CA 92626
2   (the "Property"). (Compl., ¶ 2).

3        Upon information and belief, the plaintiff in this action resides in California
4   with the intention to remain indefinitely. "A person's domicile is her permanent
5   home, where she resides with the intention to remain or to which she intends to
6   return." *See e.g., Kanter v. Warner-Lambert Co.*, 265 F.3d 853, 857 (9th Cir.
7   2001); *Heinz v. Havelock*, 757 F.Supp. 1076, 1079 (C.D. Cal. 1991) (residence and
8   property ownership is a factor in domicile for diversity jurisdiction); *State Farm*
9   *Mut. Auto Ins. Co. v. Dyer*, 19 F.3d 514, 520 (10th Cir. 1994) ("Residence alone is
10  not the equivalent of citizenship, but the place of residence is prima facie the
11  domicile.").

12       **(b)   Defendant Wells Fargo Bank, N.A. is a Citizen of South**
13       **Dakota**

14       Effective December 31, 2007, World Savings Bank, FSB, changed its name
15  to Wachovia Mortgage, FSB.  (Exh C [Nov. 19, 2007 OTS Letter].)  Effective
16  November 1, 2009, Wachovia Mortgage, FSB, was converted to Wells Fargo Bank
17  Southwest, N.A., and merged into Wells Fargo Bank, N.A.  (*See* Exhibit D [Nov.
18  1, 2009 OCC Certification Letter].)  The citizenship of the surviving entity from a
19  merger, here Wells Fargo Bank, N.A., is used to determine citizenship. *Meadows*
20  *v. Bicrodyne Corp.*, 785 F.2d 670, 672 (9th Cir. 1986) (using citizenship of
21  surviving entity for diversity).

22       Pursuant to 28 U.S.C. § 1348, defendant Wells Fargo Bank, N.A., as a
23  national banking association, is a citizen of the state where it is "located."  In 2006,
24  the Supreme Court, after a thorough examination of Section 1348 and existing case
25  law, held that "a national bank, for § 1348 purposes, is a citizen of the State in
26  which its main office, as set forth in its articles of incorporation, is located."
27  *Wachovia Bank v. Schmidt*, 546 U.S. 303, 306-307 (2006) ("*Schmidt*").

28       Wells Fargo is a citizen of South Dakota, for its main office is located in

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

1  Sioux Falls, South Dakota.  Attached hereto as <u>Exhibit E</u> are true and correct

2  copies of the FDIC Profile and the Articles of Association for Wells Fargo Bank,

3  N.A., as issued by the Office of the Comptroller of the Currency, Administrator of

4  National Banks, reflecting that Wells Fargo (at Article II, § 1) has its main office in

5  Sioux Falls, South Dakota.

6                 (i)    **Post-*Schmidt* Decisions *Uniformly* Hold That A**

7                      **National Bank Is A Citizen Of Only One State.**

8        While the *Schmidt* Supreme Court did not decide whether a national bank is

9  also a citizen of a second State, it held Section 1348 did not include the principal

10  place of business language:  "[Section] 1348, however, does not refer to 'principal

11  place of business'; it simply deems such associations 'citizens of the States in

12  which they are respectively located.'  *Schmidt*, at 315, n.8 and 317, n.9.  (calling 28

13  U.S.C. § 1332(c)(1) a "counterpart provision" to § 1348).  "[T]he fairest reading of

14  footnote nine is that the Supreme Court expressed skepticism over whether the

15  term 'located' in § 1348 included a national bank's 'principal place of business' in

16  view of the absence of such term in the statute."  *Excelsior Funds, Inc., v. J.P.*

17  *Morgan Chase Bank, N.A.*, 470 F. Supp. 2d 312 (S.D.N.Y. 2006) (rejecting

18  inclusion of principal place of business test).

19        Since *Schmidt*, the published decisions have <u>uniformly</u> held that Section

20  1348 does <u>not</u> include the principal place of business test, leaving national banks a

21  citizen of only one state; that of the main office.

22        In *Wells Fargo Bank, N.A., v. WMR e-PIN, LLC*, 653 F.3d 702, 708-710 (8th

23  Cir. 2011) ("*WMR*"), the Eighth Circuit rejected the principal place of business test

24  because it did not come into existence until ten years <u>after</u> Section 1348 was

25  enacted:

26       In 1948, when Congress last amended § 1348, it had not
     yet created principal-place-of-business citizenship . . . .

27       [T]he term 'located' referred to the state in which the
     national bank had its main office . . . . [W]hen Congress

28       introduced principal-place-of-business citizenship for
     state banks and corporations in § 1332(c)(1), it made no

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

reference to jurisdictional parity, nor to national banks or § 1348. And nothing in § 1348 indicates that it would incorporate by reference any subsequent change in the statutes governing jurisdiction over state banks and corporations. These circumstances strongly suggest that . . . Congress . . . left [the jurisdiction landscape] of national banks undisturbed.

Had Congress wished to retain jurisdictional parity in 1958, it could have done so. It did not, and consequently the concept no longer applies. Whether it ought to be revived is a

policy question for Congress, not the federal courts. We will not import a jurisdictional concept into § 1348 that was unknown at the time of its adoption. Accordingly, we hold that, pursuant to § 1348, a national bank is a citizen only of the state in which its main office is located.

*Id.* (emphasis added); *Moreno v. Wells Fargo Bank, N.A.*, 2011 U.S. Dist. LEXIS 146195 (N.D. Cal. Dec. 21, 2011).

Before *WMR*, the published California District Court decisions[2] found Wells Fargo is a citizen of only one state, South Dakota. "**B. Wells Fargo is not a citizen of California. . . .** this Court decline[s] Plaintiffs' invitation to apply a principal place of business test to Wells Fargo. Consequently, the Court concludes that Wells Fargo is a citizen of the state in which its main office, as specified in its articles of association, is located. *See Schmidt*, 546 U.S. at 318." *DeLeon v. Wells Fargo Bank, N.A.*, 729 F. Supp. 2d 1119, 1124 (N.D. Cal. 2010) (bold in original) (holding "[m]oreover, in footnote 9, the [*Schmidt* Supreme Court] recognized the imperfect parity between corporations and national banks…"); see also, *Nguyen v. Wells Fargo Bank, N.A.*, 749 F. Supp. 2d 1022, 1028 (N.D. Cal. 2010) ("Wells Fargo is a citizen of South Dakota for purposes of diversity.").

---

[2] The unpublished decisions are split.

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

(ii)   ***WMR's* Dissent Erroneously Relied on *American Surety*.**

The *WMR* dissent erroneously relied on *American Surety v. Bank of Cal.*, 133 F.2d 160 (9th Cir. 1943), an outdated case that looked to a bank's principal place of business as the determinative factor in citizenship. *WMR*, 653 F.3d at 716. *American Surety* held:

> No case defining 'located,' in this connection, has come to our attention . . . . There would appear to be a close analogy between such a bank and a corporation national in scope. The citizenship of a corporation is fixed by its principal place of business, a rule which prevails even though it extends its field of endeavor into other states under the sanction of the laws of such other states. *St. Louis & San Francisco Ry. Co. v. James*, 161 U.S. 545; *Southern Ry. Co., v. Allison*, 190 U.S. 326 (citations omitted). In addition, a logical interpretation of the phraseology of 28 U.S.C.A. § 41(16) leads to the conclusion that the 'States in which [national banking associations] are <u>respectively located</u>' are those states in which their principal places of business are maintained.

*American Surety*, 133 F.2d at 161-62 (emphasis added).

*American Surety* only applied the principal place of business test, not the main office test. *See generally id.*

After *Schmidt*, few California District Courts have held *American Surety* viable. As detailed below, *American Surety* is erroneous for several key reasons: (a) it is irreconcilable with *Schmidt*; (b) *American Surety's* premise that "located" is undefined was superseded by statute in 1994; (c) according to the Supreme Court in *Hertz v. Friend*, 130 S. Ct. 1181 (2010), *American Surety* was incorrect to apply the principal place of business test; and (d) *American Surety* is not precedential because it incorrectly "assumed" that the principal place of business test was the correct standard.

(iii)   **Schmidt Abrogated American Surety.**

The first case to rely on *American Surety's* continuing viability, post-*Schmidt*, is *Guinto v. Wells Fargo Bank, N.A.*, No. CIV. S-11-372, 2011 U.S. Dist.

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

1  LEXIS 114986 (E.D. Cal. Oct. 4, 2011). *Guinto* held that, because *Schmidt* did not
2  completely preclude applying the principal place of business test *in conjunction*
3  *with* the main office test, *American Surety* is still viable. *Id.* at 11 (while *Schmidt*
4  did not decide "whether the bank *was also* located in North Carolina *on account of*
5  *the location of its principal place of business* . . . . [t]his court believes that
6  Footnote 9 is too slender a read" to not follow *American Surety*.) (emphasis
7  added); *accord Rouse v . Wachovia Mortgage, FSB*, No. EDCV 11-00928, 2012
8  U.S. Dist. LEXIS 6962 (C.D. Cal. Jan. 13, 2012).

9      However, *American Surety* only applied the principal place of business test.
10  This is inconsistent with *Schmidt,* which unequivocally adopted the "main office"
11  test. *Schmidt,* 546 U.S. 307, 318. At most, *Schmidt* allowed for the possibility that
12  the "main office plus principal place of business" test could be used. *Id.* at n. 8.
13  (emphasis added). <u>Accordingly, *American Surety* and *Schmidt* held for single, but</u>
14  <u>different standards for citizenship. Using the principal place of business test to the</u>
15  <u>exclusion of the main office test, as *American Surety* did, is irreconcilable with</u>
16  <u>*Schmidt.*</u> *Schmidt* should prevail. *Miller v. Gammie,* 335 F.3d 889, 900 (9th Cir.
17  2003) (lower courts are bound by intervening Supreme Court authority where
18  "clearly irreconcilable" with prior Ninth Circuit rulings; cases need not be
19  identical).

20      Recently, the *Flores* Court addressed this issue, explaining that:

21  **C.**   <u>**Schmidt Abrogated American Surety**</u>

22     . . .

23      <u>*American Surety* cannot be reconciled with the Supreme</u>
24      <u>Court's decision in *Schmidt.*</u> The *American Surety* court
held that "[t]he trial court was right in holding that
25  defendant is a citizen *only* of the state in which its
principal place of business is located, the State of
26  California." 133 F.2d at 162 (emphasis added). In other
words, *American Surety* held that the principal place of
27  business rule is the exclusive test for citizenship of
national banks for diversity jurisdiction purposes. In
28  *Schmidt,* in contrast, the Supreme Court interpreted the
same word—"located"—to mean that a national bank is a
citizen of the state in which its main office, as set out in

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

1   its articles of association, is located. 546 U.S. at 307.
2   Thus, *Schmidt* conflicts with *American Surety*.

3   *Flores v. Wells Fargo Bank, N.A.*, 2012 U.S. Dist. LEXIS 32648, *6-7 (N.D. Cal.
4   Mar. 12, 2012) (original bold, underline added).

5       *Flores* pointed out that amongst the many uses of the word "located" in the
6   National Bank Act, none refers to the principal place of business. *Id.* at *6. In
7   fact, one provision even statutorily links the terms "main office" and "locate."
8   (discussed, *infra*).

9       (i)   In 1994, The Citizenship Statute Superseded
10           *American Surety*'s Premise That the Term "Located"
11           Is Undefined.

12       *American Surety* held that the term "located" was not defined in the Section
13   1348 predecessor statute, stating that "[n]o case defining 'located,' in this
14   connection, has come to our attention." *American Surety*, 133 F.2d at 161–62. As
15   such, *American Surety* borrowed from the citizenship rule for corporations. That,
16   however, is no longer viable due to *Schmidt*. *Schmidt* provided: **(B) Home State.**
17   The term "Home State" means the State in which the main office of a national
18   bank is located." 12 U.S.C. § 36(g)(3)(B) (bold in original). "State" appears only
19   in the singular form. *Id.* at n.1.

20       This provision was added by the Riegle-Neal Interstate Banking Act of 1994
21   (the "1994 Act"), § 103, 103 P.L. 328; 108 Stat. 2338, 2352 ("(12 U.S.C. 36) is
22   amended by inserting after subsection (f) (as added by section 102(b)) the
23   following new subsection: '(g) State 'Opt-In' Election To Permit . . . .'"). While
24   the 1994 Act permitted national banks to operate across state lines for the first time
25   (*Schmidt*, 546 U.S. at 307, n.2), it simultaneously defined, for the first time ("new
26   subsection"), the "Home State" by where its "main office . . . is located." The
27   *Schmidt* Supreme Court used the terms "Home State" or its "main office" as the
28   national bank's citizenship.

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

1     *Guinto* missed *Schmidt's* Section 36(g)(3)(B) reference. *Guinto* held that the

2 absence of the principal place of business phrase in Section 1348 does not prevent

3 applying the test because it only refers to "locat[ion]" and not the "main office."

4 *Guinto,* 2011 U.S. Dist. LEXIS 114986, *11, n. 13. However, "main office" is

5 referenced with "located" in Section 36(g)(3)(B). *Id.; see Schmidt,* 546 U.S. at

6 307, n.1.

7     If Section 36(g)(3)(B) had a predecessor statute in 1943, *American Surety*

8 would not have held that there was nothing "defining 'located.'" *American Surety,*

9 133 F.2d at 161. *American Surety*'s premise to look to corporations for an

10 "analogy" on citizenship (*Id.* at 162) was superseded by statute in 1994. *See*

11 *Schmidt,* 546 U.S. at 307, n.1. Accordingly, in addition to being abrogated by

12 *Schmidt, American Surety* was also superseded by statute. *See* 12 U.S.C.

13 § 36(g)(3)(B).

14         (ii)    **Even in 1943, _American Surety_ Was Wrong To Apply**

15                 **The Principal Place of Business Test to a Corporation.**

16     According to the Supreme Court, applying the principal place of business

17 test to corporations was erroneous. *The Hertz Corp., v. Friend*, 130 S. Ct. 1181

18 (2010). In *Hertz,* the Supreme Court concluded that: "[b]y 1928 this Court made

19 clear that the 'state of incorporation' rule was virtually absolute." *Id.* at 1188

20 (citing *Black and White,* 276 U.S. 518, 522-525 (1928) as "refusing to question

21 corporation's reincorporation motives . . . .").

22     The Supreme Court analyzed, in detail, the historical origins of the principal

23 place of business test for citizenship. *Hertz,* 130 S. Ct. at 1187-90. That analysis

24 showed that the courts formulated only the "state of incorporation" test for

25 corporations (*Id.* at 1187-88.) and that, after several failed legislative attempts

26 between 1928 and 1957, Congress created, purely by statute, the principal place of

27 business test for citizenship: "in 1958, Congress both codified the courts'

28 traditional place of incorporation test and also enacted into law . . . [the] 'principal

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

1   place of business' language." *Id.* at 1190; 28 U.S.C. § 1332 at Notes to 1958

2   amendment ("added <u>new</u> subsecs. (b) and <u>(c)</u>"). In other words, the principal place

3   of business test had no common law precursor.

4       While *Hertz* does go on to discuss the earliest meanings of the "principal

5   place of business" phrase in the <u>bankruptcy</u> context (*Id.* at 1190), those cases

6   necessarily dealt with <u>venue</u>—not jurisdiction. The Constitution gives federal

7   courts original and exclusive jurisdiction over bankruptcy. Const. Art. III § 2, and

8   Art. I § 8 ("Congress shall have the Power [¶] To establish . . . uniform Laws on

9   the subject of Bankruptcies throughout the United States"); *see also* 28 U.S.C.

10  § 1334 ("district courts shall have original and exclusive jurisdiction of all cases

11  under Title 11"). The principal place of business concept for bankruptcy remains

12  in the venue section. 28 U.S.C. § 1408 ("Venue of Cases Under Title

13  11. . . . district court for the district (1) in which . . . principal place of business in

14  the United States, or principal assets in the United States . . . .).

15      The 1958 origins of the principal place of business for jurisdiction had also

16  been confirmed separately in *Schmidt*: "A business organized as a corporation, for

17  diversity jurisdiction purposes, is 'deemed to be a citizen of any State by which it

18  has been incorporated' <u>and, since 1958, also</u> 'of the State where it has its principal

19  place of business.' § 1332(c)(1)." *Schmidt*, 546 U.S. at 306 (emphasis added).

20      The cases that *American Surety* relied on for the principal place of business

21  test standard actually hold that a corporation's state of incorporation was the

22  proper test for citizenship, even if that corporation was later authorized to do

23  business in a second state and conferred the title of a "domestic corporation" under

24  state law. *See St. Louis & San Francisco Ry. Co. v. James*, 161 U.S. 545, 564-565

25  (1896) and *Southern Ry. Co. v. Allison*, 190 U.S. 326, 337 (1903). *American*

26  *Surety*'s application of the principal place of business test is <u>irreconcilable</u> with the

27  Supreme Court's analysis in *Hertz* (and *Schmidt*) and should be disregarded.

28      Unfortunately, *Guinto* relied on *American Surety*, stating "[t]he Court is

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

1  aware of [WMR] . . . reasoning directly from the language and history of Section

2  1348, [it] found that it does not permit the use of the 'principal place of business'

3  as the 'location' of a national bank.  That reasoning is precluded in the Ninth

4  Circuit by *American Surety*." *Guinto*, 2011 U.S. Dist. LEXIS 114986, at *12-13,

5  n.15 (emphasis added).

6        *WMR* reasoned that the principal place of business test for citizenship did

7  not occur until 1958, ten years after Section 1348 was enacted.  As detailed above,

8  *American Surety* was wrong to apply the principal place of business test; and

9  *Guinto*'s reliance thereon was also in error.  Finally, the *Hertz* and *Schmidt*

10  Supreme Court confirmed *American Surety*'s erroneous application of the principal

11  place of business test.  *See Hertz*, 130 S. Ct. at 1187–88; *American Surety*, 133

12  F.2d at 161–62.

13              **(iii)**    <u>***American Surety*'s Holding Regarding The Principal**</u>

14                    <u>**Place of Business Test Is Not Controlling.**</u>

15        *American Surety* merely assumed that the principal place of business test

16  was the correct standard because it was not aware of any (1943) definition of

17  "located" and (erroneously) used the principal place of business test by analogy.

18  *Id.* at 161–62 ("No case defining "located," in this connection, has come to our

19  attention. . . .  There would appear to be a close **analogy** between such a bank and

20  a corporation national in scope.").  It did so in order to review the subrogation

21  issue on which the trial court's decision turned.  *Id.* at 162–64.

22        The Ninth Circuit held that federal law applies in diversity actions, but in

23  1974, it previously assumed that state law applied.  *Canada Life Assur. Co., v.*

24  *LaPeter*, 563 F.3d 837, 843 (9th Cir. 2009).  The Court held:

25              To the extent we have previously applied state law, we
              did so without deciding whether state or federal law
26              controlled.  Thus, those decisions are **not controlling**.
              *Estate of Bishop v. Bechtel Power Corp.*, 905 F.2d 1272,
27              1275-76 (9th Cir. 1990) (court not bound by prior cases
              in which the question was assumed without decision). . .
28              . *Prudential Ins. Co. of Am. v. Fifty Assoc.*, 503 F.2d
              925, 930 (9th Cir. 1974) . . . .

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

1  *LaPeter*, 563 F.3d at 843, n. 12 (emphasis added).

2      Because *American Surety* assumed that the principal place of business was

3  the standard for a national bank's citizenship, its holding is not controlling. Instead

4  of adhering to prior decisions, *LaPeter* chose to follow more recent and reasoned

5  decisions from other Circuits. *Id.* at 842–43. By this logic, the recent and well-

6  reasoned *WMR* decision should be followed.

               **(iv)   The "*Mount*" Decisions Are No Longer Valid.**

8      In *Mount v. Wells Fargo Bank, N.A.*, 2008 U.S. Dist. LEXIS 98193, *4

9  (C.D. Cal. Nov. 24, 2008, Feess, J.), a California Central District Court held that

10  Wells Fargo is a citizen of California because its principal place of business is

11  located there. *See also, Saberi v. Wells Fargo Home Mortgage*, 2011 U.S. Dist.

12  LEXIS 5286, *7–8 (S.D. Cal. Jan. 20, 2011) (following *Mount's* principal place of

13  business test). However, the *Mount* Court re-examined Wells Fargo's citizenship

14  in *Kasramehr* and "conclude[d] that under [28 U.S.C.] § 1348, a national banking

15  association is a citizen of the state of its main office as designated in its articles of

16  association, and not also a citizen of the state of its principal place of business.

17  Thus, Wells Fargo is a citizen of South Dakota." *Kasramehr v. Wells Fargo Bank,*

18  *N.A.*, 2011 U.S. Dist. LEXIS 52930, *6 (C.D. Cal. May 17, 2011, Feess, J.). The

19  *Kasramehr* Court noted that the principal place of business provision in 28 U.S.C.

20  § 1332(c)(1), applicable to state-chartered corporations, did not come into

21  existence until ten (10) years after Section 1348 was enacted, applicable to national

22  banking associations, and that if "Congress had intended for national banks

23  likewise to be deemed citizens of the states of their principal places of business, it

24  likely would have similarly amended § 1348 to contain a reference to national

25  banks' 'principal places of businesses.' Its failure to do so suggests that Congress

26  did not intend for a national bank to be deemed a citizen of the state of its principal

27  place of business." *Id.* at *5-6 (emphasis added). Therefore, *Kasramehr*

28  effectively vacated the *Mount* decision and by implication, all decisions following

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

1   *Mount*, such as *Saberi, Gutterman v. Wachovia Mortgage*, 2011 U.S. Dist. LEXIS

2   74521 (C.D. Cal. Mar. 31, 2011), *Goodman v. Wells Fargo Bank, N.A.*, 2011 U.S.

3   Dist. LEXIS 63165 (C.D. Cal. June 1, 2011), *Naumoff v. Wells Fargo Bank, N.A.*,

4   2011 U.S. Dist. LEXIS 128045 (C.D. Cal. Nov. 2, 2011), and *Stewart v. Wachovia*

5   *Mortgage*, 2011 U.S. Dist. LEXIS 85822 (C.D. Cal. Aug. 2, 2011); *see also*

6   *McNeely v. Wells Fargo Bank, N.A.*, 2011 U.S. Dist. LEXIS 126970, *9 (C.D. Cal.

7   Nov. 1, 2011) (noting *Mount*'s reversal and finding only South Dakota

8   citizenship).

9        Just as Judge Feess reversed himself in *Mount*, the *Stewart* Court recently

10   changed its position in *Mireles v. Wells Fargo Bank, N.A.*, 2012 U.S. Dist. LEXIS

11   3871 (C.D. Cal. 2012). "Recognizing Congress's intent to create parity, the

12   *Excelsior* court noted that at the time § 1348 was enacted, a state bank was only a

13   citizen of a single state: the state in which was incorporated. [citation]. As a

14   result, jurisdictional parity at the time the statute was passed was achieved by

15   limiting a national bank's citizenship to a single location." *Id.* at *6 (emphasis

16   added).

17        The *Stewart* Court explained that it would not be appropriate to depart from

18   a historical construction of Section 1348, enacted in 1948. "[O]ne can only

19   speculate as to what Congress' intent would have been had it known that the

20   citizenship of state banks would be changed decades in the future." *Id.* at *6-8.

21        Besides *Kasramehr* and *Mireles*, numerous other unpublished California

22   District Courts have held that Wells Fargo is strictly a citizen of South Dakota.

23   *See e.g., Tse v. Wells Fargo Bank, N.A.*, 2011 U.S. Dist. LEXIS 6796, *8 (N.D.

24   Cal. Jan. 19, 2011) ("Wells Fargo is a citizen of South Dakota;" denying motion to

25   remand); *Atienza v. Wells Fargo Bank, N.A.*, 2011 U.S. Dist. LEXIS 1738, *6

26   (N.D. Cal. Jan. 4, 2011) ("Thus, Wells Fargo is a citizen of South Dakota for

27   purposes of diversity jurisdiction."); *Giordano v. Wachovia Mortgage, FSB*, 2010

28   U.S. Dist. LEXIS 136284, *5 (N.D. Cal. Dec. 14, 2010) (finding Wells Fargo is a

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

1   citizen of South Dakota; denying motion for remand): *Silva v. Wells Fargo Bank,*
2   *N.A.,* 2011 U.S. Dist. LEXIS 64636, *6 (C.D. Cal. June 16, 2011) ("Wells Fargo's
3   main office is in South Dakota. [Citation.] It is accordingly, a citizen of South
4   Dakota."); *Albarran v. Wells Fargo Bank, N.A.,* 2011 U.S. Dist. LEXIS 59635, *4
5   (C.D. Cal. May 26, 2011) ("Wells Fargo is a citizen of South Dakota because
6   Wells Fargo's main office, as set forth in its articles of association, is located in
7   Sioux Falls, South Dakota."); *Taguinod v. World Sav. Bank, FSB,* 2010 U.S. Dist.
8   LEXIS 140509, *4 (C.D. Cal. Dec. 2, 2010) (Wells Fargo is deemed to be a citizen
9   of South Dakota.); *Cochran v. Wachovia Bank, N.A.,* 2010 U.S. Dist. LEXIS
10   38379, *3 (C.D. Cal. Mar. 9, 2010); *Marzette v. Provident Sav. Bank, FSB,* 2011
11   U.S. Dist. LEXIS 130657, *3-4 (E.D. Cal. 2011); *Heard-Rodriguez v. World
12   Savings Bank, FSB,* No. CV 12-00129, 2012 U.S. Dist. LEXIS 43529, *4-5 (C.D.
13   Cal. Mar. 28, 2012); *Forsythe v. Wells Fargo Bank, N.A.,* No. CV 12-00139, 2012
14   U.S. Dist. LEXIS 44031, * 5 (C.D. Cal. Mar. 28, 2012) ("As the Supreme Court
15   has noted, section 1348 governs national banks and section 1332(c)(1) governs
16   corporations.").
17       Accordingly, Wells Fargo is a citizen of only South Dakota for diversity
18   purposes.
19       (c)    **Defendant Regional Trustee Services Corporation's**
20              **Citizenship**
21       Defendant Regional Trustee Services Corporation ("Regional") is a citizen
22   of Washington, the state wherein it is incorporated and headquartered. (Compl.,
23   ¶ 3; *see also* Exhibit F [printout from the website of the Secretary of State for the
24   State of Washington, evidencing those facts].).
25       What is more, all of this information is moot as Regional is to be ignored for
26   purposes of diversity jurisdiction analysis. As the trustee of a deed of trust,
27   Regional is a nominal defendant with no financial interest in the property. Further,
28

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

1   Regional consented to the removal, notice of which is filed concurrently with this

2   removal.

3            (d)     **Complete Diversity**

4            Complete diversity of citizenship exists under 28 U.S.C. § 1332(a) in that

5   plaintiff is a citizen of California, defendant Wells Fargo is a citizen of South

6   Dakota, and Regional is a defendant of Washington. The other defendants are

7   Does, which are ignored for diversity purposes. 28 U.S.C. § 1332. Thus, no other

8   joinders are required to perfect removal of the State Court Action. *Salveson v.*

9   *Western States Bankcard Ass'n*, 731 F.2d 1423, 1429 (9th Cir. 1984).

10  **D.     AMOUNT IN CONTROVERSY**

11           Generally, "[t]he amount in controversy is determined from the allegations

12  or prayer of the complaint." Schwarzer, *Fed. Civ. Proc. Before Trial, supra*, ¶

13  2:450 (citing *St. Paul Mercury Indem. Co. v. Red Cab Co.*, 303 U.S. 283, 289

14  (1938), which held that an inability to recover an amount adequate to give the court

15  jurisdiction does not oust the court of jurisdiction). Here, plaintiff seeks damages

16  well in excess of $75,000.

17           "'In actions seeking declaratory or injunctive relief, it is well established that

18  the amount in controversy is measured by the value of the object of the litigation.'

19  'If the primary purpose of a lawsuit is to enjoin a bank from selling or transferring

20  property, then the property is the object of the litigation.'" *Reyes v. Wells Fargo*

21  *Bank, N.A.*, No. C-10-01667, 2010 U.S. Dist. LEXIS 113821, at*12–13 (N.D. Cal.

22  June 29, 2010). Even where the property at issue has already been sold in

23  foreclosure by the defendant, the property is still the object of the litigation. *See*

24  *Delgado v. Bank of Am. Corp.*, No. 1:09cv01638, 2009 U.S. Dist. LEXIS 114220

25  (E.D. Cal. Nov. 23, 2009). Moreover, where a complaint seeks to invalidate a loan

26  secured by a deed of trust, the amount in controversy is the loan amount. *Nguyen*

27  *v. Wells Fargo Bank, N.A.*, No. C-10-4081, 2010 U.S. Dist. LEXIS 113246, at

28  *15–16 (N.D. Cal. Oct. 25, 2010) (citing *Cabriales v. Aurora Loan*, No. C 10-161,

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

1   2010 U.S. Dist. LEXIS 24726, at *9–10 (N.D. Cal. Mar. 2, 2010) and *Craver v.*

2   *National City Bank*, No. CIV S-09-1276, 2009 U.S. Dist. LEXIS 98333, at *3

3   (E.D. Cal. Oct. 22, 2009)). In *Nguyen*, the plaintiff sought to quiet title by

4   cancelling the deed of trust and note on the property and sought rescission of the

5   $712,000.00 loan. *Nguyen*, 2010 U.S. Dist. LEXIS at *16.

6         Here, as in *Nguyen* and *Taguinod,* the underlying basis of the litigation is the

7   Subject Property and the loan encumbering it, which exceeds that $75,000.00

8   amount in controversy threshold. In 2006, plaintiff obtained a $525,000.00 home

9   loan from Wells Fargo's predecessor, World Savings Bank, FSB, which was

10   secured by the Subject Property. (See Deed of Trust, attached hereto as Exhibit

11   G.) Plaintiff eventually defaulted on the loan, triggering foreclosure proceedings

12   against the Subject Property pursuant to the terms of the Deed of Trust.

13         Plaintiff now brings this lawsuit against Wells Fargo challenging the non-

14   judicial foreclosure, claiming "that *no sale may take placed based on these*

15   *defective documents*." (Compl. ¶ 80.) This places the value of the loan and

16   Subject Property at issue – in the amount of $525,000.00. Additionally, plaintiff

17   prays for damages as provided by statute, costs of suit as well as "for injunctive

18   relief as set forth herein." (Compl., Prayer for Relief, ¶ 9.)

19         Accordingly, the amount in controversy far exceeds the $75,000.00

20   threshold.

### 3.   TIMELINESS

22         This Notice is timely pursuant to 28 U.S.C. § 1446(b), because service of

23   process occurred on February 8, 2013. Wells Fargo has not appeared in the State

24   Court Action. *Destfino v. Reiswig, et al.*, 630 F.3d 952, 956 (9th Cir. Cal. 2011)

25   ("we hold that each defendant is entitled to thirty days to exercise his removal

26   rights after being served").

27         Defendant Regional appeared in the State Court Action solely to file the

28   DNMS on February 27, 2013 (Exhibit B, attached collectively hereto). Further,

ANGLIN FLEWELLING RASMUSSEN CAMPBELL & TRYTTEN LLP

1  Wells Fargo is not required to obtain Regional's consent to removal because it is a

2  nominal party that has been fraudulently joined. *Emrich v. Touche Ross & Co.*,

3  846 F.2d 1190, 1193 (9th Cir. 1988) (general requirement of consent does not

4  apply to "nominal, unknown or fraudulently joined parties").

5      No other joinders are required to perfect removal of the State Court Action,

6  including any Doe defendant. *Salveson v. Western States Bankcard Ass'n*, 730

7  F.2d 1423, 1429 (9th Cir. 1984).

8      **4.  <u>OTHER PERTINENT INFORMATION</u>**

9      A.   Pursuant to 28 U.S.C. § 1446(a), Wells Fargo files this Notice in the

10  District Court of the United States for the district and division within which the

11  State Court Action is pending. As such, this case is being removed to the United

12  States District Court for the Central District of California because the State Court

13  Action is pending in Orange County.

14      B.   Pursuant to 28 U.S.C. § 1446(d), a copy of this Notice with its

15  attachments will promptly be served on plaintiff in the State Court Action, and

16  notice thereof will be filed with the clerk of the Orange County Superior Court.

17      WHEREFORE, Wells Fargo hereby removes Orange County Superior Court

18  Case No. 30-2013-00628738 to the United States District Court for the Central

19  District of California.

20      Respectfully submitted,

21  Dated: February 28, 2013    ANGLIN, FLEWELLING, RASMUSSEN,

22      CAMPBELL & TRYTTEN LLP

23      By: _____

24      D. Dennis La
       dla@afrct.com

25      Attorneys for Defendants

26      Wachovia Mortgage, a division of Wells Fargo Bank, N.A., successor by merger

27      with Wells Fargo Bank Southwest, N.A., f/k/a Wachovia Mortgage, FSB, f/k/a

28      World Savings Bank, FSB ("Wells Fargo")

**EXHIBIT A**

**EXHIBIT A**

1   Joseph R. Manning, Jr., Esq. (State Bar No. 223381)
    **THE LAW OFFICES OF JOSEPH R. MANNING, JR.**
2   **A PROFESSIONAL CORPORATION**
    4667 MacArthur Blvd., Suite 150
3   Newport Beach, CA 92660
    (949) 200-8755
4   (866) 843-8308

5   Attorneys for PLAINTIFFS KEITH WINTERBOWER, as Trustee to the Keith Winterbower
    Revocable Trust, and DEBRA WINTERBOWER
6

7

8

9                     SUPERIOR COURT OF CALIFORNIA

10       IN AND FOR THE COUNTY OF ORANGE – CENTRAL JUSTICE CENTER

11   KEITH WINTERBOWER as Trustee          Case No.:   30-2013-00628738-CU-OR-CJC
     to the Keith Winterbower Revocable
12   Trust, and DEBRA WINTERBOWER,         **COMPLAINT FOR DAMAGES AND EQUITABLE**
                                           **RELIEF:**
13              Plaintiffs,

14       v.                               1.  **VIOLATION OF CAL. CIVIL CODE §2923.6**
                                          2.  **VIOLATION OF CAL. CIVIL CODE §2924**
15   WELLS FARGO BANK, N.A., a            3.  **VIOLATIONS OF CALIFORNIA BUSINESS**
     business entity form unknown,            **& PROFESSIONS CODE §17200**
16   REGIONAL TRUSTEE SERVICES            4.  **NEGLIGENCE**
     CORPORATION, a business entity       5.  **UNFAIR DEBT COLLECTION**
17   form unknown, and DOES 1-100,        6.  **DEMAND FOR ACCOUNTING**
     inclusive,
18                                        **DEMAND FOR JURY TRIAL**
                Defendants.
19                                        Judge Derek W. Hunt

20       TO WELLS FARGO BANK, N.A. and REGIONAL SERVICE CORPORATION, and to

21   their Attorneys of record:

22       Plaintiffs, KEITH WINTERBOWER as Trustee to the Keith Winterbower Revocable Trust,

23   and DEBRA WINTERBOWER (hereinafter collectively known as "Plaintiffs"), by their attorney,

24   for causes of action against Defendants WELLS FARGO BANK, N.A., a business entity of

25   unknown form, REGIONAL TRUSTEE SERVICES CORPORATION, a business entity of

26   unknown form, and DOES 1 through 100, inclusive (hereinafter collectively known as

27   "Defendants"), allege the following on information and belief:

28

ELECTRONICALLY FILED
Superior Court of California,
County of Orange

**02/05/2013** at 08:37:27 AM
Clerk of the Superior Court
By Rochelle Lucey, Deputy Clerk

---

                    **COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF**
                                        1

JOSEPH R. MANNING, JR., ESQ.
4667 MACARTHUR BLVD., STE. 150
NEWPORT BEACH, CA 92660

# I.

## INTRODUCTION

1. Plaintiffs own the subject property located at **2333 Colgate Dr., Costa Mesa, CA 92626** (the "Subject Property").

2. Plaintiffs bring this action against Defendants and DOES 1 to 100 based on the following:

   a. Defendants' violations of California *Civil Code* §2923.6;

   b. Defendants' violations of California *Civil Code* §2924;

   c. Defendants' violations of California *Business & Professions Code* §17200 by engaging in unlawful, unfair and/or fraudulent business practices as part and parcel to unsafe and unsound banking procedures;

   d. Negligently and carelessly assessing Plaintiffs' loan for a loan modification; and

   e. Unlawful billing practices.

# II.

## PARTIES

3. At all times mentioned herein, Plaintiffs KEITH WINTERBOWER and DEBRA WINTERBOWER are individuals who reside in the County of Orange, California.

4. Upon information and belief, Defendant WELLS FARGO BANK, N.A., ("Wells Fargo"), is a business organization of unknown form doing business in the State of California.

5. Upon information and belief, Defendant REGIONAL TRUSTEE SERVICES CORPORATION ("Regional Service"), is a business organization of unknown form doing business in the State of California.

6. Plaintiffs are ignorant of the true names and capacities of Defendants sued herein as DOES 1-100, inclusive, and therefore, sue these Defendants by such fictitious names. Plaintiffs will seek leave of Court to amend this Complaint to allege their true names and capacities when they have

been ascertained.

7. Plaintiffs are informed and believe, and based on such information and belief, allege that at all times mentioned in this complaint Defendants were the agents, servants, representatives, partners and/or employees of co-Defendants, and, by engaging in the actions mentioned below, were, unless otherwise alleged, acting within the course and scope of their authority as such agent, servant, representative, partner, and/or employee, with the permission and consent of co-Defendants.

8. Plaintiffs are informed and believe, and on such information and belief, allege that each of said Defendants is, in some manner, legally responsible for the unlawful actions, unlawful policies, and unlawful practices hereinafter alleged, and that Plaintiffs' damages were proximately caused by Defendants. Plaintiffs will seek leave of Court to amend this Complaint to set forth the appropriate charging allegations along with the true names and capacities of said Defendants when they have been ascertained.

9. Any allegations about acts of any corporate or other business Defendants means that the corporation or other business did the alleged acts through its officers, directors, employees, agents, and/or representatives, while they were acting within the actual or ostensible scope of their authority.

## III.

### JURISDICTION AND VENUE

10. Venue and jurisdiction are proper in this Court because injury and damages to Plaintiffs occurred in this jurisdictional area, and the Subject Property is located in this jurisdictional area.

11. This Court has subject-matter jurisdiction over the causes of action alleged in this Complaint because this Court is a court of general subject-matter jurisdiction and is not otherwise excluded from exercising subject-matter jurisdiction over said causes of action.

JOSEPH R. MANNING, JR., ESQ.
4667 MACARTHUR BLVD., STE. 150
NEWPORT BEACH, CA 92660

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

3

12. This Court has personal jurisdiction over Defendants because each Defendant resides in, is incorporated in, has its main place of business in, and/or conducts business in the State of California, and a substantial portion of the acts, omissions, events, and transactions constituting the causes of action alleged herein occurred within the State of California. Cal. Code Civil Proc. §410.10.

13. This Court is the appropriate venue for this action under Cal. Code of Civil Proc. §395 & §395.5 because the acts that give rise to the causes of action alleged herein occurred in the County of Orange, State of California, and the Subject Property is located in this county. Plaintiffs hereby designate the County of Orange, State of California, as the place of proper venue.

## IV.

## DEMAND FOR JURY TRIAL

14. Plaintiffs hereby respectfully request a trial by jury on all appropriate issues raised in this Complaint.

## V.

## BACKGROUND OF THE HOME AFFORDABLE MODIFICATION PROGRAM

15. **Creation of the Program:** Congress passed the Emergency Economic Stabilization Act of 2008 on October 3, 2008 and amended it with the American Recovery and Reinvestment Act of 2009 on February 17, 2009 (collectively, the "Act"). *12 U.S.C.A. §5201 et seq. (2009)*.

16. The purpose of the Act is to grant the Secretary of the Treasury the authority to restore liquidity and stability to the financial system, and to ensure that such authority is used in a manner which "protects home values" and "preserves homeownership." *12 U.S.C.A. §5201*.

17. The Act grants the Secretary of the Treasury the authority to establish the Troubled Asset Relief Program ("TARP"). *12 U.S.C. §5211*.

18. Under TARP, the Secretary may purchase or make commitments to purchase troubled assets

JOSEPH R. MANNING, JR., ESQ.
4667 MACARTHUR BLVD., STE. 150
NEWPORT BEACH, CA 92660

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

4

from financial institutions.

19. Congress allocated up to Seven Hundred Billion Dollars ($700,000,000,000.00) to the United States Department of Treasury for TARP. *12. U.S.C.A §5225.*

20. The Act grants authority to the Secretary to administer TARP, stating that the Secretary "shall" take into consideration the "need to help families keep their homes and stabilize communities." *12 U.S.C §5213(3).*

21. The Act mandates the Secretary, for any acquired assets that are backed by residential real estate, to "implement a plan that seeks to maximize assistance for homeowners," as well as the use of the Secretary's authority over servicers to encourage them to take advantage of programs to "minimize foreclosures." Specifically, the Act authorizes the Security to use credit enhancement and loan guarantees to "facilitate loan modifications to prevent avoidable foreclosures." *12 U.S.C.A §5219.*

22. The Act also imposes parallel mandates to implement plans to maximize assistance to homeowners and to minimize foreclosures on the Federal Housing Finance Agency, Federal National Mortgage Associate ("Fannie Mae"), Federal Home Loan Mortgage Corporation ("Freddie Mac"), and the Federal Reserve Board, in their roles as "federal property managers." *12 U.S.C.A §5220.*

23. On February 18, 2009, pursuant to the authority granted under the Act, the Secretary and the Director of the Federal Housing Finance Agency announced the Making Home Affordable Program (the "MHA Program").

24. The MHA Program consists of two (2) subprograms: (1) the Home Affordable Refinance Program ("HARP"), designed to assist homeowners with minimal or negative equity in their home by refinancing their mortgages, and (2) the Home Affordable Modification Program ("HAMP"), created to implement the uniform loan modification protocol. It is this subprogram

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF
5

JOSEPH R. MANNING, JR., ESQ.
4667 MACARTHUR BLVD., STE. 150
NEWPORT BEACH, CA 92660

that is at issue in this case.

25. HAMP is funded by the federal government, primarily with TARP funds. The Treasury Dept. has allotted at least Seventy-Five Billion Dollars ($75,000,000,000.00) to HAMP, of which at least Fifty Billion Dollars ($50,000,000,000.00) is TARP money.

26. Under HAMP, the federal government incentivizes participating servicers to enter into agreements with struggling homeowners that will make adjustments to the existing mortgage obligations in order to make the monthly payments more affordable. Servicers receive one thousand dollars ($1,000.00) for each HAMP modification.

27. **Defendant's Obligations Under HAMP**: Industry entities that perform the actual interface with borrowers, including such tasks as payment processing, escrow maintenance, loss mitigation and foreclosure, are known as "servicers." Servicers typically act as the agent of the entities that hold mortgage loans.

28. If a servicer elects to participate in HAMP, the servicer executes a Servicer Participation Agreement (an "SPA") with the federal government.

29. The SPA incorporates all "guidelines," "procedures," and supplemental documentation instructions, bulletins, frequently asked questions, letters, Fannie Mae or Freddie Mac, in connection with the duties of the participating servicers (collectively, these documents are known as the "Program Documents").

30. As defined in the SPA, a participating servicer is required to "perform" the activities described in the program documents "for all mortgage loans it services."

31. HAMP and the SPA are manifestly intended to benefit defaulting borrowers. This is the reason for the program's existence. Supplemental Directive 09-01, incorporated into the SPA, states:

> On February 18, 2009, President Obama announced the Home Affordability and Stability plan to help up to 7 to 9 million families restructure or refinance their mortgages to avoid foreclosure. As a part of this plan, Treasury Department (Treasury) announced a

JOSEPH R. MANNING, JR., ESQ.
4667 MACARTHUR BLVD., STE. 150
NEWPORT BEACH, CA 92660

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

6

*national modification program aimed at helping 3 to 4 million at risk homeowners-* both those who are in default and those who are at imminent risk of default—by reducing monthly payments to sustainable levels. *Supp. Directive 09-01 at 1 (emphasis added).*

32. Similarly, the MHA website introduces HAMP as a plan to "help….Americans reduce their monthly mortgage payments to more affordable levels by 'preventing avoidable foreclosure.'"

33. The Program Documents require participating servicers to evaluate all loans that are sixty (60) or more days delinquent for HAMP modifications. In addition, if a borrower contacts a participating servicer regarding a HAMP modification, the participating servicer must collect the borrower's income and hardship information to determine if HAMP is appropriate.

34. HAMP modifications consist of two (2) stages: (1) a Participating Servicer is required to gather information and, if appropriate, offer the homeowner a Trial Period Plan ("TPP"). The TPP initiates a three (3) month period during which the homeowner is to make the modified mortgage payments. If the homeowner successfully completes the TPP, the homeowner moves to stage (2), and the Participating Servicer offers the homeowner a permanent mortgage modification.

35. HAMP Supplemental Directive 10-02 expressly states that the lender must proactively solicit all borrowers whose first mortgage loans are potentially eligible for HAMP and who have two (2) or more payments due and unpaid.

36. In addition, Supplemental Directive 10-02 contains a prohibition against referral to foreclosure until either: (a) a borrower has been evaluated and determined to be ineligible for HAMP; or (b) reasonable solicitation efforts have failed.

37. Furthermore, Supplemental Directive 10-02 explicitly requires participating servicers to consider borrowers in <u>active bankruptcy</u> for HAMP if a request is received from the borrower, borrower's counsel, or bankruptcy trustee.

38. In order to qualify for a HAMP modification, the **original loan amount cannot exceed**

JOSEPH R. MANNING, JR., ESQ.
4667 MACARTHUR BLVD., STE. 150
NEWPORT BEACH, CA 92660

**COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF**

7

$729,750.00, and the subject property must be owner-occupied.

## VI.

## CALIFORNIA HOMEOWNER'S BILL OF RIGHTS: Effective January 1, 2013

39. California's housing crisis has had a devastating economic impact on the state and local governments. From 2007 to 2011 alone, there were over 900,000 completed foreclosure sales. In 2011, 38 of the top 100 hardest hit ZIP Codes in the nation were in California. All of this foreclosure activity has adversely affected property values and resulted in less money for schools, public safety, and other public services.

40. In addition, according to the Urban Institute, every foreclosure imposes significant costs on local governments, including an estimated nineteen thousand two hundred twenty-nine dollars ($19,229) in local government costs. The foreclosure crisis continues in California, and there remain more than two million "underwater" mortgages in California.

41. **Legislative Intent.** The legislature found and declared that it is essential to the economic health of California to mitigate the negative effects on the state and local economies and the housing market that are the result of continued foreclosures by **modifying the foreclosure process to ensure that borrowers who may qualify for a foreclosure alternative are considered for, and have a meaningful opportunity to obtain, available loss mitigation options.** These changes to California's foreclosure process are essential to ensure that the current crisis is not worsened by unnecessarily adding foreclosed properties to the market when an alternative to foreclosure may be available. Avoiding foreclosure, where possible, will help stabilize the state's housing market and avoid the substantial, corresponding negative effects of foreclosures on families, communities, and the state and local economy.

42. As a result, in February 2012, Attorney General Harris announced the California "Homeowner Bill of Rights," designed to protect homeowners from unfair practices by banks and mortgage

JOSEPH R. MANNING, JR., ESQ.
4667 MACARTHUR BLVD., STE. 150
NEWPORT BEACH, CA 92660

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

8

companies and to help consumers and communities cope with the state's urgent mortgage and foreclosure crisis. Attorney General Harris claims that "this legislation will make the mortgage and foreclosure process more fair and transparent, which will benefit homeowners, their community, and the housing market as a whole."

43. On July 11, 2012, California Governor Jerry Brown signed into law the Homeowner's Bill of Rights (also known as "AB 278" or "SB 900"), marking California as the first U.S. state to adopt into law the residential mortgage foreclosure reform principles outlined in the February 2012 National Mortgage Settlement with the nation's top five mortgage services. The Homeowner's Bill of Rights makes changes to nonjudicial foreclosure protocols for first lien residential mortgage loans.

44. The Homeowner's Bill of Rights provides protections for borrowers and struggling homeowners by prohibiting a series of inherently unfair bank practices that have needlessly forced thousands of homeowners into foreclosure. Essentially, this law ensures that qualified first mortgage borrowers are afforded the right to explore any available alternative to foreclosure with their mortgage servicer before a California nonjudicial foreclosure can commence and/or be completed through foreclosure sale.

45. The Homeowner's Bill of Rights offers borrowers the following protections:

    a. **Burden of Compliance on the "Mortgage Servicer:"** the burden of compliance is placed on the "mortgage servicer," the person servicing the loan or is responsible for interacting a borrower, either as the current owner of the note or as the owner's agent;

    b. **Foreclosure Prevention Alternative:** "foreclosure prevention alternative" is broadly defined as any available loss mitigation option, including first lien loan modification;

    c. **Disclosure:** mortgage servicers must include a disclosure in the borrower's pre-Notice of Default outreach package that includes (i) a statement that the borrower may be entitled to certain protections, and (ii) a statement informing the borrower of his/her right to request a copy of his/her note and deed of trust, any assignment of the deed of

JOSEPH R. MANNING, JR., ESQ.
4667 MACARTHUR BLVD., STE. 150
NEWPORT BEACH, CA 92660

NOTICE OF REMOVAL
EXHIBIT A PAGE 30

trust required to demonstrate the mortgage servicer's right to foreclosure, and the borrower's payment history since he/she was last less than sixty (60) days past due;

d. **Notice of Default and Declaration of Compliance:** a mortgage servicer, mortgagee, trustee, beneficiary or authorized agent MAY NOT record a Notice of Default until a disclosure (as described above) is sent to the borrower, AND thirty (30) days after either (i) Initial contact is made, to assess the borrower's financial situation and explore options for foreclosure avoidance, OR (ii) The due diligence requirements for locating the borrower have been met with no borrower response. In addition, a declaration of compliance must be attached to the Notice of Default;

e. **Restriction on dual track foreclosure:** mortgage servicers are restricted from advancing the foreclosure process while a borrower is seeking a loan modification. When a borrower completes an application for a loan modification, the foreclosure process is essentially on-hold until the complete application has been reviewed;

f. **Guaranteed Single Point of Contact:** borrowers are guaranteed and provided one or more direct means of communication with their single point of contact, as they navigate the system and try to keep their homes- a person or team at the bank who knows the facts of their case, has their paperwork and can get the borrowers a decision about their application for a loan modification;

g. **Restriction on "Robo-Signing:"** the recording of "robodocs," or "robo-signing," the process through which banks approved fraudulently signed mortgage documents in the foreclosure process, is PROHIBITED. All mortgage documents, including notices of default and supporting declarations, notices of sale, assignments of deed of trust, and substitutions of trustee recorded in connection with a nonjudicial foreclosure, as well as declarations filed in court with respect to any foreclosure proceeding, must be accurate, complete and supported by competent and relevant evidence;

h. **Restriction on Charges and Fees:** mortgage servicers may not charge any application, processing, or other fee for any first lien loan foreclosure prevention alternative, and while a foreclosure prevention alternative is being considered or denial is being appealed, a mortgage servicer cannot collect late fees;

i. **Private right of action:** borrowers are afforded the following private right of action:

    i. Up until a foreclosure sale is completed, borrowers may seek a court injunction for a material violation of these protections, and may seek attorney's fees.

NOTICE OF REMOVAL
EXHIBIT A PAGE 31

ii.  After a foreclosure sale is completed, borrowers can seek court recovery for actual damages suffered as a result of a material violation, that was not corrected prior to the foreclosure sale, plus attorney's fees, and, upon a court's finding of willful, reckless, and/or intentional material violations committed, borrowers can be awarded the greater of $50,000 civil money penalty or treble damages.

46. According to the Legislature, the new Bill of Rights brings basic fairness, accountability, and transparency to the state's mortgage and foreclosure process, and it is necessary to provide stability to California's statewide and regional economies and housing market.

47. This new law takes effect January 1, 2013 through January 1, 2018, when alternate provisions become effective on and after that date. A true and correct copy of the relevant Civil Code sections under the Bill of Rights are attached and incorporated hereto as **Exhibit A.**

## VII.

## FACTUAL BACKGROUND

### Defendants' Marked-Up and Unnecessary Fees for Default-Related Services

48. Plaintiffs allege, upon information and belief, that in Defendants' loan servicing operations, Defendants follow a strategy to generate fraudulently concealed default-related fee income. Rather than simply obtaining default-related services directly from independent third-party vendors, and charging borrowers for the actual cost of these services, Defendants assess borrowers' accounts for services that are unnecessary and they unlawfully add additional undisclosed profits on to the charges before they are assessed on borrowers' accounts.

49. Upon information and belief, Defendants' scheme works as follows: Defendants order default-related services from their subsidiaries and affiliated companies, who, in turn, obtain the services from third-party vendors. The third-party vendors charge Defendants for their services. Defendants, in turn, charge borrowers a fee that is significantly marked-up from the third-party vendors' actual fees for the services. As a result, even though the mortgage market has

JOSEPH R. MANNING, JR., ESQ.
4667 MACARTHUR BLVD., STE. 150
NEWPORT BEACH, CA 92660

**COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF**

11

collapsed, and more and more borrowers are following into delinquency, Defendants continue to earn substantial profits by assessing undisclosed, marked-up fees for default-related services on borrowers' accounts.

50. The mortgage contract between a lender and a borrower consists of two (2) documents: the Promissory Note ("Note") and the Mortgage or Deed of Trust ("Security Instrument"). The mortgage contracts serviced by Defendants are substantially similar because they conform to the standard Fannie Mae/Freddie Mac form contract. These contracts contain form language regarding what occurs if borrowers default on their loans. The Security Instrument authorizes the loan services, in the event of default, to:

> pay for whatever is reasonable or appropriate to protect the note holder's interest in the property and rights under the security instrument, including protecting and/or assessing the value of the property, and securing and/or repairing the property.

51. The Security Instrument further provides that any such amounts disbursed by the servicer shall become additional debt of the borrower secured by the Security Instrument and shall bear interest at the Note rate from the date of disbursement. The Note provides that the note holder:

> will have the right to be paid back by [the borrower] for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorney's fees.

52. Thus, the mortgage contract allows the servicer to pay for default-related services when necessary or appropriate, and to be reimbursed by the borrowers, but it *does not authorize* the servicer to mark-up the actual cost of those services to make a profit.

53. As discussed above, by charging marked-up fees, Defendants violate their agreements with borrowers because, among other things, charges that exceed the actual cost of the services provided are neither reasonable nor appropriate to protect the Note holder's interest in the property and the rights under the Security Instrument.

54. Furthermore, the wrongful nature of the marked-up fees is demonstrated by the fact that

JOSEPH R. MANNING, JR., ESQ.
4667 MACARTHUR BLVD., STE. 150
NEWPORT BEACH, CA 92660

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

12

Defendants do not disclose to borrowers that the fees assessed on their accounts are marked-up from the amount actually charged by the vendor.

55. Plaintiffs are informed and believe, and on that basis, allege that Defendants conceal these marked-up fees for default-related services on borrowers' accounts, including Plaintiffs', by identifying the charges only as "Miscellaneous Fees," "Corporate Advances," "Other Fees" or "Advances" on borrowers' statements.

56. Plaintiffs are informed and believe, and on that basis, allege that under the "Miscellaneous Fees," "Corporate Advances," "Other Fees" or "Advances" categories on borrowers' statements, Defendants also assess unnecessary and unreasonable fees for property inspections. Although such inspections purportedly are conducted to guard against property loss, Defendants' practices are designed to ensure that these fees are charged to as many accounts as possible, even if the inspections are inappropriate, unnecessary, or unreasonable.

57. Plaintiffs are informed and believe, and on that basis, allege that even if the property inspections were properly performed and actually reviewed by someone at the bank, Defendants' continuous assessment of fees for these inspections on borrowers' accounts is still improper and unreasonable because of the frequency with which they are performed. If the first inspection report shows that the property is occupied and in good condition, it is unnecessary and inappropriate for Defendants to automatically continue to order monthly inspections. Nothing in the reports justifies continued monitoring.

58. As a result of Defendants' concealment of these unlawful fees, thousands of unsuspecting borrowers, including Plaintiffs, are cheated out of millions of dollars.

**Plaintiffs' Injuries as a Result of Defendants' Practices**

59. Plaintiffs allege, upon information and belief, that the assessment of these marked-up fees can make it impossible for borrowers to become current on their loan. Charges for default-related

JOSEPH R. MANNING, JR., ESQ.
4667 MacARTHUR BLVD., STE. 150
NEWPORT BEACH, CA 92660

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

13

services can add hundreds or thousands of dollars to borrowers' loans over time, driving them further into default.

60. When borrowers, including Plaintiffs, get behind on their mortgage, and fees for these default-related services are added on to the past-due principal and interest payments, Defendants' practices make it increasingly difficult for borrowers to ever bring their loan current. Even if borrowers pay the delinquent principal and interest payments, the marked-up fees for default-related services ensure that borrowers stay in default. After paying delinquent principal and interest, although the next payment comes in on time, often through automatic payment deductions from borrowers' bank accounts, part of the payment is applied to the fees first, so there is not enough to cover the entire monthly payment. This makes the payment late, creating a cascade of more fees and arrears, which keeps borrowers in delinquency. By the time borrowers are aware, Defendants are threatening to foreclose unless a huge payment is made, and the weight of these unnecessary fees drops borrowers into a financial abyss.

61. As a result of Defendants' practices, borrowers, including Plaintiffs, are forced to move deeper into default, and suffer damage to their credit score. Defendants provide information about borrowers' payment history to credit reporting companies, including whether they have been late with a payment or missed any payments. By keeping borrowers in default with these practices, Defendants affect whether borrowers can get a loan in the future, and what borrowers' interest rate will be on such loans.

62. Additionally, as a result of Defendants' practices, borrowers, including Plaintiffs, are wrongfully driven into foreclosure.

**Plaintiffs' Financial Struggle and Subsequent Attempts to Remain Current on their Loan**

63. The Subject Property is Plaintiffs' principal residence and is owner-occupied.

64. In 2006, Plaintiffs entered into a written loan agreement with Defendants for a sum of $525,000

JOSEPH R. MANNING, JR., ESQ.
4667 MACARTHUR BLVD., STE. 150
NEWPORT BEACH, CA 92660

(the "Loan"), secured by the Subject Property through a Deed of Trust (recorded February 7, 2006), then and now the principal residence of Plaintiffs.

65. In or around 2011, Plaintiffs suffered a significant financial setback, due to the poor economy, and as a result, Plaintiffs began using the money in their savings and investments to make their monthly mortgage payments and remain current on their loan.

66. However, as time passed, Plaintiffs continued to suffer and finally, were unable to keep up with their mortgage payments. Plaintiffs had exhausted their savings and they had no stable income.

67. Plaintiffs are in possession of the Subject Property and no Trustee's sale has occurred. A Trustee's sale is currently set for February 7, 2013. As a result, the instant action became necessary.

68. As alleged herein, Plaintiffs have never been fairly evaluated for a foreclosure prevention alternative, including a loan modification, *and* there has been a material change in Plaintiffs' financial circumstances, and that change has been documented by the borrowers and submitted to Defendants. At this time, Plaintiffs' expenses have decreased from $25,000 per month down to $10,000 per month, providing them with more disposable income. Therefore, pursuant to the new California Homeowner's Bill of Rights, specifically *Civil Code* §2923.6(g), Defendants must evaluate Plaintiffs' application for an alternative to foreclosure, including a loan modification. Meanwhile, all foreclosure activity on the Subject Property must cease.

69. Plaintiffs' claims are simple: when large financial institutions promise to modify eligible loans to prevent foreclosures and taxpaying homeowners live up to their end of the bargain, homeowners expect that promise to be kept, especially when those large financial institutions are acting under the guidance of a federal program specifically targeted at preventing foreclosures.

70. Plaintiffs **have been harmed** by Defendants' failure to provide accurate material disclosures

JOSEPH R. MANNING, JR., ESQ.
4667 MACARTHUR BLVD., STE. 150
NEWPORT BEACH, CA 92660

and notices such that Plaintiffs can cure any alleged default and extinguish the transaction by operation of law.

71. As a result of the above-described wrongful acts and omissions, Plaintiffs have been unable to cure the default because of the substantial arrearages, which includes unnecessary fees added to the loan balance.

72. The foregoing acts and material omissions of the Defendants herein alleged were undertaken willfully, persistently, intentionally, knowingly, and/or in gross or reckless disregard of Plaintiffs' notice and disclosure rights.

73. Defendants, as employers of the authorized representatives who had contact with Plaintiffs, had advanced knowledge of the unfitness of the employee representatives and employed such representatives with a conscious disregard of the rights or safety of others, or authorized/ratified the wrongful conduct for which the damages are awarded or was personally guilty of oppression, fraud, or malice.

74. Defendants are corporate employers. As such, their officers, directors, and/or managing agents had advanced knowledge of the willful and despicable conduct herein alleged and ratified the aforementioned acts of their authorized representatives and employees.

75. Defendants are acting in concert to deprive Plaintiffs of their civil rights by attempting to take the Subject Property without due process of law.

**Defendants Lack Standing to Foreclose under the California Homeowner's Bill of Rights**

76. The operative 2006 Deed of Trust provides that the Lender on Plaintiffs' loan is "World Savings Bank, FSB," and the Trustee and the Beneficiary is "Golden West Savings Association Service Co." (Exhibit B).

77. As set forth herein, the Notice of Default, recorded on December 7, 2011 and the Notice of Sale, recorded on March 8, 2012 (Exhibit C), identify Defendant Regional Trustee Service

JOSEPH R. MANNING, JR., ESQ.
4667 MACARTHUR BLVD., STE. 150
NEWPORT BEACH, CA 92660

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF
16

Corporation, as Trustee under the Deed of Trust. However, these documents were recorded without just cause or authority because Defendant Regional Trustee Service Corporation is a stranger to Plaintiffs' transaction.

78. In fact, there are NO known recorded Assignments transferring any such beneficial interest to others, including to Defendant Regional Trustee Service Corporation, and such recorded Assignments are mandatory.

79. As fully alleged herein, Regional Trustee Service Corporation, as Trustee, had no such beneficial interest in Plaintiffs' Deed of Trust, which renders the Notice of Default and Notice of Trustee's Sale flawed such that *no sale may take place based on these defective documents.*

80. These flawed and defective documents give rise to Plaintiffs' claim based on the Homeowner's Bill of Rights, specifically under *Civil Code* §2924(a)(6), as set forth herein.

## VIII.

### FIRST CAUSE OF ACTION

### VIOLATIONS OF CAL. CIV. CODE §2923.6

### (AS TO ALL DEFENDANTS)

81. Plaintiffs reallege and incorporate by reference all paragraphs above, as though fully set forth in this cause of action.

82. As of January 1, 2013, the new California Homeowner's Bill of Rights, specifically *Civil Code* §2923.6, applies only to mortgages or deeds of trust that are secured by owner-occupied residential real property containing no more than four (4) dwelling units. For these purposes, "owner-occupied" means that the property is the principal residence of the borrower as indicated in loan documents. In this case, the Subject Property contains no more than four (4) dwelling units and is the principal residence of Plaintiffs, as indicated in their loan documents.

83. *Civil Code* §2923.6(g) states that the mortgage servicer shall not be obligated to evaluate

JOSEPH R. MANNING, JR., ESQ.
4667 MACARTHUR BLVD., STE. 150
NEWPORT BEACH, CA 92660

---

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

17

applications from borrowers who have already been evaluated or afforded a fair opportunity to be evaluated for a foreclosure prevention alternative prior to January 1, 2013, **unless there has been a material change in the borrower's financial circumstances** since the date of the borrower's previous application AND that change is documented by the borrower and submitted to the mortgage servicer (**Exhibit A, page 12**).

84. In this case, Plaintiffs have not been evaluated for a foreclosure prevention alternative, nor have they been afforded a fair opportunity to be evaluated for a foreclosure prevention alternative. Moreover, Plaintiffs' financial circumstances have materially changed. Plaintiffs' expenses have decreased from $25,000 to $10,000 per month, giving them more disposable income per month. Plaintiffs no longer need to pay a $900 per month towards their truck payment, and Plaintiffs no longer need to pay $2,000 per month to the land lease for their mother's residence.

85. Moreover, pursuant to the requirements of *Civil Code* §2923.6, Plaintiffs documented this change and Plaintiffs' attorney has notified Defendants of this change, via facsimile. A true and correct copy of the letter faxed to Defendants Wells Fargo Bank and Regional Service Corp., informing them of Plaintiffs' material financial changes, along with the fax confirmation sheets, are attached and incorporated hereto as **Exhibit D**.

86. Accordingly, under *Civil Code* §2923.6, the mortgage servicer, Defendant Wells Fargo, must evaluate Plaintiffs' application for a loan modification. In fact, Defendants may NOT conduct a nonjudicial foreclosure sale, including Defendants' scheduling a foreclosure sale date and/or postponing a foreclosure sale date, while a review of the complete loan modification application is pending.

87. Despite these facts, Defendants continue with foreclosure activity on the Subject Property and are proceeding with a Trustee's sale, scheduled for **February 7, 2013. This is a clear violation** of *Civil Code* §2923.6.

JOSEPH R. MANNING, JR., ESQ.
4667 MACARTHUR BLVD., STE. 150
NEWPORT BEACH, CA 92660

---

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

18

88. Therefore, pursuant to the Homeowner's Bill of Rights, and specifically *Civil Code* §2923.6, the foreclosure sale date of Plaintiffs' property must be **cancelled**, and Defendant Wells Fargo must review Plaintiffs for a foreclosure prevention alternative, including a loan modification.

89. The intent of the California legislators in enacting the Homeowner's Bill of Rights was to address the consequences of the subprime mortgage crisis leading to declining real property values and historic levels of foreclosure. Given the vast and devastating impact of the crisis, the objective of the Bill of Rights was to make sure lenders, loan servicers, and their agents were communicating and working with borrowers in default to assess the borrowers' financial situation and discuss foreclosure alternatives before a foreclosure is started by recording a notice of default. The intent of the legislature is clear and the requirements that it has imposed are by no means arbitrary.

90. Defendants' failure to comply with *Civil Code* §2923.6 directly undermines the intent of the statute. This failure to adhere to the statute renders it essentially meaningless and, if the statue is not enforced, it will serve to perpetuate a cycle that results in far too many homeowners being rendered helpless. As a result, Defendants are liable to Plaintiffs for any and all statutory and/or actual damages which have resulted from their conduct.

91. In addition, Plaintiffs have incurred costs associated with the foreclosure action since its commencement, and Plaintiffs have sought, and now seek, to be fairly evaluated for a foreclosure prevention alternative, specifically a loan modification, pursuant to the California Homeowner's Bill of Rights.

92. As a result of the above-described wrongful acts and omissions, Plaintiffs have been precluded from the rights granted by *Civil Code* §2923.6.

## IX.

## SECOND CAUSE OF ACTION

JOSEPH R. MANNING, JR., ESQ.
4667 MACARTHUR BLVD., STE. 150
NEWPORT BEACH, CA 92660

---

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

19

## VIOLATIONS OF CAL. CIV. CODE §2924

### (AS TO ALL DEFENDANTS)

93. Plaintiffs reallege and incorporate by reference all paragraphs above, as though fully set forth in this cause of action.

94. As set forth herein, *Civil Code* §2924(a)(6) (Exhibit A, page 17) provides that Defendants may not engage in foreclosure procedures against Plaintiffs' property unless they are the holder of the beneficial interest in the subject Deed of Trust, and as the proper Trustee.

95. As fully set forth above, *Defendants are not* the holder of the beneficial interest in Plaintiffs' Deed of Trust.

96. As a result, these actions are a violation of *Civil Code* §2924, specifically section (a)(6), and no foreclosure proceedings can proceed. Plaintiffs are entitled to all the rights and remedies set forth in the new statutory scheme known as the California Homeowner's Bill of Rights for such violation.

97. *Civil Code* §2924(a)(6) provides in pertinent part that "No entity shall record or cause a notice of default to be recorded or otherwise initiate the foreclosure process unless it is the holder of the beneficial interest under the mortgage or deed of trust, the original trustee or the substituted trustee under the deed of trust or the designated agent of the holder of the beneficial interest."

98. As a direct and proximate result of the negligence and carelessness of Defendants as set forth above, Defendants are precluded from conducting a sale of Plaintiffs' home because they are not the holder of the beneficial interest on Plaintiffs' Deed of Trust as set forth herein.

99. Based on the foregoing, Plaintiffs have suffered, and continue to suffer, general and special damages in an amount to be determined at trial.

### X.

### THIRD CAUSE OF ACTION

JOSEPH R. MANNING, JR., ESQ.
4667 MacArthur Blvd., Ste. 150
NEWPORT BEACH, CA 92660

---

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

20

1

## VIOLATIONS OF BUSINESS AND PROFESSIONS CODE §17200

2

### (AS TO ALL DEFENDANTS)

3

100. Plaintiffs reallege and incorporate by reference all paragraphs above, as though fully set forth in

4

this cause of action.

5

6

101. Plaintiffs bring this action against Defendants pursuant to California *Business and Professions*

7

*Code* §17200, *et seq.*, referred to as the Unfair Competition Law (the "UCL").

8

102. California *Business and Professions Code* §17200 prohibits "any unlawful, unfair or fraudulent

9

business act or practice." For the reasons described herein, Defendants have engaged in unfair

10

or fraudulent business acts or practices in violation of *Bus. and Prof. Code* §17200, *et. seq.*

11

103. The Court has jurisdiction over this action pursuant to California *Bus. and Prof. Code* §17200,

12

*et seq.*, specifically *Bus. and Prof. Code* §17203, which provides that any person who engages,

13

has engaged, or proposes to engage in unfair competition may be enjoined in any court of

14

15

competent jurisdiction; and the court may make such orders or judgments, including the

16

appointment of a receiver, as may be necessary to prevent the use or employment by any person

17

of any practice which constitutes unfair competition, or as may be necessary to restore to any

18

person in interest any money or property, real or personal, which may have been acquired by

19

means of such unfair competition; and *Bus. and Prof. Code* §17204, which provides for actions

20

for any relief pursuant to the Unfair Competition Law ("UCL") to be prosecuted exclusively in a

21

court of competent jurisdiction by any board, officer, person, corporation or association, or by

22

any person acting for the interests of itself, its members or the general public.

23

104. At all times relevant to this Complaint, Defendants were lenders in the business of providing

24

25

residential mortgages to the general public and were acting within the scope of that business

26

with regard to the loan provided to Plaintiffs. Defendants have committed acts of unfair

27

competition as proscribed by §17200 including the practices alleged herein against Plaintiffs.

28

JOSEPH R. MANNING, JR., ESQ.
4667 MACARTHUR BLVD., STE. 150
NEWPORT BEACH, CA 92660

---

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

21

NOTICE OF REMOVAL
EXHIBIT A PAGE 42

105. Specifically, as fully set forth above, Defendants engaged in deceptive business practices with respect to mortgage loan servicing, foreclosure of residential properties and related matters by, among other things:

    a. Recording the NTS, and conducting a Trustee's sale without complying with *Civil Code* §2923.6, by failing to evaluate Plaintiffs' complete application, or afford Plaintiffs a fair opportunity to be evaluated, and after there has been a **material change in Plaintiffs' financial circumstances;**

    b. Recording the NOD, the NTS, and conducting a Trustee's sale without complying with *Civil Code* §2924(a)(6) by doing the alleged acts despite the fact that Defendants are **not the holder of the beneficial interest** in Plaintiffs' Deed of Trust;

    c. Instituting improper or premature foreclosure proceedings to generate unwarranted fees;

    d. Misrepresenting the foreclosure status to Plaintiffs regarding their property; and

    e. Concealing the true character, quality, and nature of their assessment of marked-up fees against Plaintiffs' accounts.

106. *Bus. and Prof. Code* §17200 also prohibits any "fraudulent business act or practice." Defendants' concealment of material facts, as set herein, was misleading and likely to deceive the public within the meaning of this section. This concealment was made with knowledge of its effect, and was done to induce Plaintiffs to pay the marked-up and/or unnecessary fees for default-related services.

107. In the course and conduct of its loan servicing and collection, Defendant Wells Fargo omitted a true itemization that identifies the nature of each fee, and it failed to disclose the nature of the charges and fees assessed. Defendant Wells Fargo concealed the fact that the category identified as "Miscellaneous Fees" or "Other Charges" reflects marked-up and/or unnecessary fees that were never incurred by Defendants. Relying on Defendants, Plaintiffs and members of the general public believe they are obligated to pay the amounts specified in Defendants' communications for default-related services.

108. Plaintiffs relied on their reasonable expectation that Defendants complied with the plain

JOSEPH R. MANNING, JR., ESQ.
4667 MACARTHUR BLVD., STE. 150
NEWPORT BEACH, CA 92660

NOTICE OF REMOVAL
EXHIBIT A PAGE 43

meaning of the mortgage agreement, Notes, Security Instruments, court orders, and confirmed plans, and as a result, Plaintiffs relied on Defendants' disclosures about the fees on their statements, reasonably believing the "Other Charges," "Other Fees" or "Miscellaneous Fees" to be valid charges that were not unlawfully marked-up and/or unnecessary. Indeed, to trick borrowers into a sense of trust and to dissuade them from challenging Defendants' unlawful fee assessments, Defendants conceal their scheme by telling borrowers, in statements and other documents, that such fees are "allowed by borrowers' Note and Security Instrument," or that they are "in accordance with the terms of your mortgage." Had the true nature of the fees been disclosed to Plaintiffs, they would have been aware of the mark-ups and unnecessary nature of the fees, and Plaintiffs would have disputed the charges, not paid them.

109. These violations were and remain to be a matter of Defendants' standard corporate policy, and constitute a consistent pattern and practice of unlawful corporate behavior. Defendants' actions were against public policy, as the legislature enacted the Homeowner's Bill of Rights as an emergency act, to slow the foreclosure process so that foreclosure could be avoided.

110. Defendants' acts and practices, as hereinabove alleged, constitute "fraudulent" business acts under §17200 in that said acts and practices are likely to deceive the public and affected consumers' legal rights and obligations. Defendants' acts, including, but not limited to, active deception, falsifying documents, failing to deliver material documents, and concealment, may preclude consumers from exercising rights to which they are entitled.

111. Defendants' omissions of material facts, as hereinabove alleged, constitute "unlawful" practice because they violate Title 18 United States Code §1341, §1343, and §1962, California *Civil Code* §1572, §1573, §1709, §1710, and §1711, and the common law.

112. Defendants' acts and practices, as hereinabove alleged, constitute "unfair" business acts under *Bus. and Prof. Code* §17200, *et seq.*, in that said acts and practices offend public policy and

JOSEPH R. MANNING, JR., ESQ.
4667 MACARTHUR BLVD., STE. 150
NEWPORT BEACH, CA 92660

---

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

23

are substantially injurious to Plaintiffs and all consumers. Said acts and practices have no utility whatsoever; much less sufficient utility to outweigh the substantial harm to Plaintiffs, other consumers, and potential homeowners.

113. Defendants knew, or by the exercise of reasonable care, should have known, that the false representations by their representatives and/or agents as herein alleged were untrue and misleading at the time they were made, and clear violations of *Civil Code* §2923.6 and the provisions of HAMP.

114. Plaintiffs are informed and believe, and based thereon, allege that the illegal acts of Defendants are a serious threat to Plaintiffs because these acts have allowed, or will allow, Defendants to wrongfully foreclose on the Subject Property, to transfer title or interest of the Subject Property, and to cause the imminent eviction of Plaintiffs from their home. Because of Defendants' illegal actions, Plaintiffs will be forced out of their home. Such eviction will cause Plaintiffs to suffer further immediate and irreparable injury, loss, and damage.

115. As a direct, proximate, and foreseeable result of Defendants' unlawful, unfair, and fraudulent business practices, Plaintiffs have suffered substantial ascertainable losses, and therefore, Defendants should be enjoined from continuing such practices, pursuant to *Business and Professions Code* §17203 & §17204.

116. As a direct, proximate, and foreseeable result of Defendants' unlawful conduct alleged herein, Plaintiffs are at risk of losing the equity in their home or may lose their home through foreclosure by simply doing what they were instructed to do by Defendants.

117. As a direct, proximate, and foreseeable result of the unlawful conduct of Defendants, their business acts or practices have caused injury to Plaintiffs and the general public; and Plaintiffs are entitled to relief, including full restitution and/or disgorgement of all revenues, earnings, profits, compensation, and benefits which may have been obtained by Defendants as a result of

JOSEPH R. MANNING, JR., ESQ.
4667 MACARTHUR BLVD., STE. 150
NEWPORT BEACH, CA 92660

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF
24

such business act or practice.

118. In addition to the relief requested in the Prayer below, Plaintiffs seek the imposition of a constructive trust over, and restitution of, the monies collected and realized by Defendants.

## XI.

## FOURTH CAUSE OF ACTION

## NEGLIGENCE

## (AS TO ALL DEFENDANTS)

119. Plaintiffs reallege and incorporate by reference all paragraphs above, as though fully set forth in this cause of action.

120. At all times relevant herein, Defendants, acting as Plaintiffs' lenders and servicers, had a reasonable duty to exercise reasonable care and skill to:

    a.  Maintain proper and accurate loan records; and

    b.  Discharge and fulfill the other incidents attendant to the maintenance, accounting and servicing of loan records, including, but not limited to, disclosing to Plaintiffs the status of any foreclosure actions taken by Defendants, refraining from taking any action against Plaintiffs that they did not have the legal authority to do, and providing all relevant information regarding Plaintiffs' Loan.

121. In addition, Defendant Wells Fargo stepped outside its normal duties as lender and servicer and assumed additional responsibilities when it undertook efforts to modify loans including Plaintiffs' loan. Those additional responsibilities include proper implementation of evaluating Plaintiffs for foreclosure prevention alternatives, so that Plaintiffs would be fairly evaluated or afforded a fair opportunity to be evaluated for a suitable foreclosure alternative, including a loan modification.

122. In taking the actions alleged above, Defendants breached their duty of care and skill to Plaintiffs, in the servicing of Plaintiffs' loan by, among other things:

    a.  Failing to evaluate Plaintiffs' complete application for an alternative to foreclosure,

NOTICE OF REMOVAL
EXHIBIT A PAGE 46

JOSEPH R. MANNING, JR., ESQ.
4667 MACARTHUR BLVD., STE. 150
NEWPORT BEACH, CA 92660

even after a *material change in the borrowers' financial circumstances* has been documented and submitted to the mortgage servicer, pursuant to *Civil Code* §2923.6;

    b.  Failing to train their representatives and/or provide their representatives with correct information regarding loan modifications so that Plaintiffs could have consistent and accurate information from one phone call to the next, and the like;

    c.  Failing to notify Plaintiffs that they were foreclosing on Plaintiffs' property; and

    d.  Foreclosing on the Subject Property without having the legal authority to do so.

123. As a direct and proximate result of the negligence and carelessness of Defendants and their representatives as set forth above, Plaintiffs have suffered, and continue to suffer, general and special damages in an amount to be determined at trial.

## XII.

### FIFTH CAUSE OF ACTION

### UNFAIR DEBT COLLECTION: Rosenthal Fair Debt Collection Practices Act

### *Civil Code* §1788 *et. seq.*

### (AS TO ALL DEFENDANTS)

124. Plaintiffs reallege and incorporate by reference all paragraphs above, as though fully set forth in this cause of action.

125. Defendants are "debt collectors" and are engaged debt collection practices under the Rosenthal Fair Debt Collection Practices Act ("The Rosenthal Act").

126. In illegally attempting to collect on Plaintiffs' debt obligation in the manner described and alleged herein, Defendants violated the Rosenthal Act by falsely representing that they were the proper holder of the beneficial interest in Plaintiffs' Deed of Trust as claimed in the operative Notice of Default, and that they had/have the right to foreclose on Plaintiffs' property and receive payments from Plaintiffs regarding the property, when that is not true.

127. In addition, the claimed about owing in the Notice of Default contains fraudulent charges and unnecessary fees added by Defendants as described herein in order to benefit Defendants and

JOSEPH R. MANNING, JR., ESQ.
4667 MACARTHUR BLVD., STE. 150
NEWPORT BEACH, CA 92660

NOTICE OF REMOVAL
EXHIBIT A PAGE 47

1    without just cause.

2   128. As a direct and proximate result of the negligence and carelessness of Defendants, as set forth

3      above, Plaintiffs have suffered, and continue to suffer, general and special damages in an

4      amount to be determined at trial.

5

6                        **XIII.**

7              **DEMAND FOR ACCOUNTING**

8   129. Plaintiffs reallege and incorporate by reference all paragraphs above, as though fully set forth in

9      this cause of action.

10   130. The elements for a claim for accounting are: (i) a fiduciary relationship or other circumstances

11      appropriate to the remedy, and (ii) a balance due from to Defendant to Plaintiff that can only be

12

13      ascertained by an accounting. *See Witkin, Cal. Procedure 5th ed. (2008) Pleadings, Section 820.*

14   131. Defendants have held themselves out to be Plaintiffs' creditor and mortgage servicer. As a result

15      of this purported relationship with Plaintiffs, said Defendants have a duty to Plaintiffs to

16      properly account for payments made by Plaintiffs. *See* Witkin. Moreover, "A fiduciary

17      relationship between the parties is not required to state a cause of action for accounting. All that

18

19      is required is that some relationship exists that requires an accounting." *Teselle v. McLoughlin*

20      *(2009) 173 Cal. App. 4th 156, 179.*

21   132. The mortgage contract between Defendants and Plaintiffs allows Defendants to pay for default-

22      related services when necessary or appropriate, and to be reimbursed by the borrowers, but it

23      does not authorize Defendants to mark-up the actual cost of those services to make a profit, nor

24      does it allow Defendants to incur unnecessary fees.

25   133. Nevertheless, Defendants mark-up prices charged by vendors and then, without disclosing the

26      mark-up, assess borrowers' accounts for the higher, marked-up fee, so Defendants can earn a

27      profit.

28

JOSEPH R. MANNING, JR., ESQ.
4667 MACARTHUR BLVD., STE. 150
NEWPORT BEACH, CA 92660

134. Defendants are aware that it is improper to mark-up and/or assess unnecessary fees on borrowers' accounts for default-related services. Therefore, Defendants fraudulently conceal these fees on borrowers' accounts, omitting any information about Defendants' additional profits, by identifying them on mortgage statements only as "Other Charges," "Other Fees," "Miscellaneous Fees" or "Corporate Advances."

135. Plaintiffs have made mortgage payments to Defendants and their successors. Plaintiffs believe and are informed that the amount claimed due and owing at the time of the recording of the Notice of Default, $10,870, is not correct.

136. Plaintiffs have a reasonable good faith belief that the claimed arrearages include improper excess charges and fees imposed by all Defendants without Plaintiffs' knowledge or consent, which are not allowed by law.

137. The actual amount of the arrearages on Plaintiffs' loan and the actual amount of money due from Defendants to Plaintiffs is unknown to Plaintiffs and cannot be ascertained without an accounting of the receipts and disbursements of the aforementioned transactions.

///

///

## PRAYER

WHEREFORE, Plaintiffs pray for judgment against each Defendant, jointly and severally, as follows:

1. For damages sustained by Plaintiffs due to Defendants' wrongful acts in excess of the jurisdictional limits in an amount to be proven at trial;

2. Pursuant to Cal. *Bus. & Prof. Code* §17200, *et seq.*, that all Defendants, their employees,

3. agents, representatives, successors, assigns, and all persons who act in concert with them, be permanently enjoined from making any false or misleading statements or falsely reporting

JOSEPH R. MANNING, JR., ESQ.
4667 MACARTHUR BLVD., STE. 150
NEWPORT BEACH, CA 92660

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF
28

negative credit to reporting agencies, and from selling the foreclosed property on an unlawfully procured debt;

4.  Pursuant to Cal. *Bus. & Prof. Code* §17200, *et seq.*, that this Court make such orders or judgments necessary to prevent the use or employment by any Defendant of any act which violates §17200, *et seq.*; and to restore to any person in interest, any money or property, real or personal, which may have been acquired by means of any such act;

5.  For disgorgement of all monies acquired by Defendants by means of any act or practice declared by this Court to be wrongful;

6.  For interest on the sum at the rate of 10% per annum;

7.  For punitive damages against Defendants due to their intentional and wrongful acts;

8.  For reasonable attorney's fees and costs of suit, as allowed by law, and all other relief granted under *Civil Code* §2924.12;

9.  For injunctive relief as set forth herein; and

10. For such other and further relief as this Court deems just and appropriate.

Dated: February 5, 2013

LAW OFFICES OF JOSEPH R. MANNING, JR.
A PROFESSIONAL CORPORATION

By:
Joseph R. Manning Jr., Esq.
Attorney for Plaintiffs

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF
29



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Exhibit A**

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

30



1 of 38 DOCUMENTS

DEERING'S CALIFORNIA CODES ANNOTATED
Copyright (c) 2013 by Matthew Bender & Company, Inc.
a member of the LexisNexis Group.
All rights reserved.

\*\*\* This document is current through the 2013 Supplement \*\*\*
(All 2012 legislation, 2012 Governor's Reorg. Plan No. 2 and all
propositions approved by the electorate at the June and November 2012 elections)

CIVIL CODE
Division 3. Obligations
Part 4. Obligations Arising from Particular Transactions
Title 14. Lien
Chapter 2. Mortgage
Article 1. Mortgages in General

GO TO CALIFORNIA CODES ARCHIVE DIRECTORY

Cal Civ Code § 2920.5 (2013)

First of 2 versions of this section

§ 2920.5.  (First of two) Definitions

For purposes of this article, the following definitions apply:

(a) "Mortgage servicer" means a person or entity who directly services a loan, or who is responsible for interacting with the borrower, managing the loan account on a daily basis including collecting and crediting periodic loan payments, managing any escrow account, or enforcing the note and security instrument, either as the current owner of the promissory note or as the current owner's authorized agent. "Mortgage servicer" also means a subservicing agent to a master servicer by contract. "Mortgage servicer" shall not include a trustee, or a trustee's authorized agent, acting under a power of sale pursuant to a deed of trust.

(b) "Foreclosure prevention alternative" means a first lien loan modification or another available loss mitigation option.

(c)

(1) Unless otherwise provided and for purposes of Sections 2923.4, 2923.5, 2923.55, 2923.6, 2923.7, 2924.9, 2924.10, 2924.11, 2924.18, and 2924.19, "borrower" means any natural person who is a mortgagor or trustor and who is potentially eligible for any federal, state, or proprietary foreclosure prevention alternative program offered by, or

1

NOTICE OF REMOVAL
EXHIBIT A PAGE 52

through, his or her mortgage servicer.

(2) For purposes of the sections listed in paragraph (1), "borrower" shall not include any of the following:

(A) An individual who has surrendered the secured property as evidenced by either a letter confirming the surrender or delivery of the keys to the property to the mortgagee, trustee, beneficiary, or authorized agent.

(B) An individual who has contracted with an organization, person, or entity whose primary business is advising people who have decided to leave their homes on how to extend the foreclosure process and avoid their contractual obligations to mortgagees or beneficiaries.

(C) An individual who has filed a case under Chapter 7, 11, 12, or 13 of Title 11 of the United States Code and the bankruptcy court has not entered an order closing or dismissing the bankruptcy case, or granting relief from a stay of foreclosure.

(d) "First lien" means the most senior mortgage or deed of trust on the property that is the subject of the notice of default or notice of sale.

**HISTORY:**

Added Stats 2012 ch 86 § 2 (AB 278), effective January 1, 2013.

**NOTES:**

Note

Stats 2012 ch 86 provides:

SECTION 1. The Legislature finds and declares all of the following:

(a) California is still reeling from the economic impacts of a wave of residential property foreclosures that began in 2007. From 2007 to 2011 alone, there were over 900,000 completed foreclosure sales. In 2011, 38 of the top 100 hardest hit ZIP Codes in the nation were in California, and the current wave of foreclosures continues apace. All of this foreclosure activity has adversely affected property values and resulted in less money for schools, public safety, and other public services. In addition, according to the Urban Institute, every foreclosure imposes significant costs on local governments, including an estimated nineteen thousand two hundred twenty-nine dollars ($19,229) in local government costs. And the foreclosure crisis is not over; there remain more than two million "underwater" mortgages in California.

(b) It is essential to the economic health of this state to mitigate the negative effects on the state and local economies and the housing market that are the result of continued foreclosures by modifying the foreclosure process to ensure that borrowers who may qualify for a foreclosure alternative are considered for, and have a meaningful opportunity to obtain, available loss mitigation options. These changes to the state's foreclosure process are essential to ensure that the current crisis is not worsened by unnecessarily adding foreclosed properties to the market when an alternative to foreclosure may be available. Avoiding foreclosure, where possible, will help stabilize the state's housing market and avoid the substantial, corresponding negative effects of foreclosures on families, communities, and the state and local economy.

(c) This act is necessary to provide stability to California's statewide and regional economies and housing market by facilitating opportunities for borrowers to pursue loss mitigation options.

**Hierarchy Notes:**

2

NOTICE OF REMOVAL
EXHIBIT A PAGE 53



8 of 38 DOCUMENTS

DEERING'S CALIFORNIA CODES ANNOTATED
Copyright (c) 2013 by Matthew Bender & Company, Inc.
a member of the LexisNexis Group.
All rights reserved.

*** This document is current through the 2013 Supplement ***
(All 2012 legislation, 2012 Governor's Reorg. Plan No. 2 and all
propositions approved by the electorate at the June and November 2012 elections)

CIVIL CODE
Division 3.  Obligations
Part 4.  Obligations Arising from Particular Transactions
Title 14.  Lien
Chapter 2.  Mortgage
Article 1.  Mortgages in General

GO TO CALIFORNIA CODES ARCHIVE DIRECTORY

*Cal Civ Code § 2923.4 (2013)*

First of 2 versions of this section

§ 2923.4.  (First of two) Purpose of Act; Loss mitigation options; Construction

   (a) The purpose of the act that added this section is to ensure that, as part of the nonjudicial foreclosure process,
borrowers are considered for, and have a meaningful opportunity to obtain, available loss mitigation options, if any,
offered by or through the borrower's mortgage servicer, such as loan modifications or other alternatives to foreclosure.
Nothing in the act that added this section, however, shall be interpreted to require a particular result of that process.

   (b) Nothing in this article obviates or supersedes the obligations of the signatories to the consent judgment entered
in the case entitled United States of America et al. v. Bank of America Corporation et al., filed in the United States
District Court for the District of Columbia, case number 1:12-cv-00361 RMC.

HISTORY:

   Added Stats 2012 ch 86 § 3 (AB 278), effective January 1, 2013.

NOTES:

Editor's Notes

3



3 of 38 DOCUMENTS

DEERING'S CALIFORNIA CODES ANNOTATED
Copyright (c) 2013 by Matthew Bender & Company, Inc.
a member of the LexisNexis Group.
All rights reserved.

*** This document is current through the 2013 Supplement ***
(All 2012 legislation, 2012 Governor's Reorg. Plan No. 2 and all
propositions approved by the electorate at the June and November 2012 elections)

CIVIL CODE
Division 3. Obligations
Part 4. Obligations Arising from Particular Transactions
Title 14. Lien
Chapter 2. Mortgage
Article 1. Mortgages in General

GO TO CALIFORNIA CODES ARCHIVE DIRECTORY

*Cal Civ Code § 2923.5 (2013)*

First of 3 versions of this section

§ 2923.5. (First of three; Repealed January 1, 2018) Notice of default, grace period; Contact to assess borrower's financial situation; Due diligence requirement; Discussion of options to avoid foreclosure; Applicability

(a)

(1) A mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent may not record a notice of default pursuant to Section 2924 until both of the following:

(A) Either 30 days after initial contact is made as required by paragraph (2) or 30 days after satisfying the due diligence requirements as described in subdivision (e).

(B) The mortgage servicer complies with paragraph (1) of subdivision (a) of Section 2924.18, if the borrower has provided a complete application as defined in subdivision (d) of Section 2924.18.

(2) A mortgage servicer shall contact the borrower in person or by telephone in order to assess the borrower's financial situation and explore options for the borrower to avoid foreclosure. During the initial contact, the mortgage servicer shall advise the borrower that he or she has the right to request a subsequent meeting and, if requested, the mortgage servicer shall schedule the meeting to occur within 14 days. The assessment of the borrower's financial situation and discussion of options may occur during the first contact, or at the subsequent meeting scheduled for that

4

purpose. In either case, the borrower shall be provided the toll-free telephone number made available by the United States Department of Housing and Urban Development (HUD) to find a HUD-certified housing counseling agency. Any meeting may occur telephonically.

(b) A notice of default recorded pursuant to Section 2924 shall include a declaration that the mortgage servicer has contacted the borrower, has tried with due diligence to contact the borrower as required by this section, or that no contact was required because the individual did not meet the definition of "borrower" pursuant to subdivision (c) of Section 2920.5.

(c) A mortgage servicer's loss mitigation personnel may participate by telephone during any contact required by this section.

(d) A borrower may designate, with consent given in writing, a HUD-certified housing counseling agency, attorney, or other advisor to discuss with the mortgage servicer, on the borrower's behalf, the borrower's financial situation and options for the borrower to avoid foreclosure. That contact made at the direction of the borrower shall satisfy the contact requirements of paragraph (2) of subdivision (a). Any loan modification or workout plan offered at the meeting by the mortgage servicer is subject to approval by the borrower.

(e) A notice of default may be recorded pursuant to Section 2924 when a mortgage servicer has not contacted a borrower as required by paragraph (2) of subdivision (a) provided that the failure to contact the borrower occurred despite the due diligence of the mortgage servicer. For purposes of this section, "due diligence" shall require and mean all of the following:

(1) A mortgage servicer shall first attempt to contact a borrower by sending a first-class letter that includes the toll-free telephone number made available by HUD to find a HUD-certified housing counseling agency.

(2)

(A) After the letter has been sent, the mortgage servicer shall attempt to contact the borrower by telephone at least three times at different hours and on different days. Telephone calls shall be made to the primary telephone number on file.

(B) A mortgage servicer may attempt to contact a borrower using an automated system to dial borrowers, provided that, if the telephone call is answered, the call is connected to a live representative of the mortgage servicer.

(C) A mortgage servicer satisfies the telephone contact requirements of this paragraph if it determines, after attempting contact pursuant to this paragraph, that the borrower's primary telephone number and secondary telephone number or numbers on file, if any, have been disconnected.

(3) If the borrower does not respond within two weeks after the telephone call requirements of paragraph (2) have been satisfied, the mortgage servicer shall then send a certified letter, with return receipt requested.

(4) The mortgage servicer shall provide a means for the borrower to contact it in a timely manner, including a toll-free telephone number that will provide access to a live representative during business hours.

(5) The mortgage servicer has posted a prominent link on the homepage of its Internet Web site, if any, to the following information:

(A) Options that may be available to borrowers who are unable to afford their mortgage payments and who wish to avoid foreclosure, and instructions to borrowers advising them on steps to take to explore those options.

(B) A list of financial documents borrowers should collect and be prepared to present to the mortgage servicer when discussing options for avoiding foreclosure.

Cal Civ Code § 2923.5

(C) A toll-free telephone number for borrowers who wish to discuss options for avoiding foreclosure with their mortgage servicer.

(D) The toll-free telephone number made available by HUD to find a HUD-certified housing counseling agency.

(f) This section shall apply only to mortgages or deeds of trust described in Section 2924.15.

(g) This section shall apply only to entities described in subdivision (b) of Section 2924.18.

(h) This section shall remain in effect only until January 1, 2018, and as of that date is repealed, unless a later enacted statute, that is enacted before January 1, 2018, deletes or extends that date.

**HISTORY:**

Added Stats 2008 ch 69 § 2 (SB 1137), effective July 8, 2008, operative September 6, 2008, repealed January 1, 2013. Amended Stats 2009 ch 43 § 1 (SB 306), effective January 1, 2010, repealed January 1, 2013; Stats 2012 ch 86 § 4 (AB 278), effective January 1, 2013, repealed January 1, 2018, ch 87 § 4 (SB 900), effective January 1, 2013, repealed January 1, 2018.

**NOTES:**

Editor's Notes

For legislative findings and declarations, see the 2012 Note under CC § 2920.5 (Second of two).

Amendments:

2009 Amendment:

(1) Substituted "initial contact" for "contact" in subd (a)(1); (2) amended subd (b) by substituting (a) "declaration that" for "declaration from"; (b) "agent has" for "agent that it has"; (c) "has tried" for "tried"; and (d) "that no contact was required pursuant to subdivision (h)" for "the borrower has surrendered the property to the mortgagee, trustee, beneficiary, or authorized agent"; (3) amended the first sentence of subd (f) by adding (a) ", with consent given in writing,"; and (b) "the borrowers financial situation and"; (4) substituted subd (h)(3) for former subd (b)(3) which read: "(3) The borrower has filed for bankruptcy, and the proceedings have not been finalized."; (5) amended the first sentence of subd (i) by substituting (a) "mortgages or deeds of trust recorded" for "loans made"; and (b) "owner-occupied residential real property containing no more than four dwelling units" for "residential real property and are for owner-occupied residences"; and (6) added "as indicated to the lender in loan documents" in the second sentence of subd (i).

2012 Amendment:

(1) Amended the introductory clause of subd (a)(1) by adding (a) "mortgage servicer,"; and (b) "both of the following:"; (2) added subdivision designation (a)(1)(A); (3) amended subd (a)(1)(A) by (a) adding "Either"; and (b) substituting "subdivision (e)" for "subdivision (g)"; (4) added subds (a)(1)(B) and (g); (5) substituted "mortgage servicer" for "mortgagee, beneficiary, or authorized agent" wherever it appears in subds (a)(2), (b), (d), and (e); (6) substituted "recorded" for "filed" in subd (b) and in the first sentence of the introductory paragraph of subd (e); (7)

6

substituted "because the individual did not meet the definition of 'borrower' pursuant to subdivision (c) of Section 2920.5" for "pursuant to subdivision (h)" in subd (b); (8) deleted former subd (c) which read: "(c) If a mortgagee, trustee, beneficiary, or authorized agent had already filed the notice of default prior to the enactment of this section and did not subsequently file a notice of rescission, then the mortgagee, trustee, beneficiary, or authorized agent shall, as part of the notice of sale filed pursuant to Section 2924f, include a declaration that either: (1) States that the borrower was contacted to assess the borrower's financial situation and to explore options for the borrower to avoid foreclosure. (2) Lists the efforts made, if any, to contact the borrower in the event no contact was made."; (9) redesignated former subds (d), (f), (g), (i), and (j) to be subds (c)-(f), and (h); (10) substituted "mortgage servicer's" for "mortgagee's, beneficiary's, or authorized agent's" in subd (c); (11) deleted former subd (e) which read: "(e) For purposes of this section, a 'borrower' shall include a mortgagor or trustor."; (12) substituted "borrower's" for "borrowers" in the first sentence of subd (d); (13) deleted former subd (h) which read: "(h) Subdivisions (a), (c), and (g) shall not apply if any of the following occurs: (1) The borrower has surrendered the property as evidenced by either a letter confirming the surrender or delivery of the keys to the property to the mortgagee, trustee, beneficiary, or authorized agent. (2) The borrower has contracted with an organization, person, or entity whose primary business is advising people who have decided to leave their homes on how to extend the foreclosure process and avoid their contractual obligations to mortgagees or beneficiaries. (3) A case has been filed by the borrower under Chapter 7, 11, 12, or 13 of Title 11 of the United States Code and the bankruptcy court has not entered an order closing or dismissing the bankruptcy case, or granting relief from a stay of foreclosure."; (14) substituted subd (f) for former subd (f) which read: "This section shall apply only to mortgages or deeds of trust recorded from January 1, 2003, to December 31, 2007, inclusive, that are secured by owner-occupied residential real property containing no more than four dwelling units. For purposes of this subdivision, 'owner-occupied' means that the residence is the principal residence of the borrower as indicated to the lender in loan documents"; and (15) substituted "January 1, 2018" for "January 1, 2013" both times it appears in subd (h). (As amended Stats 2012 ch 87 compared to the section as it read prior to 2012. This section was also amended by an earlier chapter, ch 86. See *Gov C § 9605*.)

Note

Stats 2008 ch 69 provides:

SECTION 1. The Legislature finds and declares all of the following:

(a) California is facing an unprecedented threat to its state economy and local economies because of skyrocketing residential property foreclosure rates in California. Residential property foreclosures increased sevenfold from 2006 to 2007. In 2007, more than 84,375 properties were lost to foreclosure in California, and 254,824 loans went into default, the first step in the foreclosure process.

(b) High foreclosure rates have adversely affected property values in California, and will have even greater adverse consequences as foreclosure rates continue to rise. According to statistics released by the HOPE NOW Alliance, the number of completed California foreclosure sales in 2007 increased almost threefold from 1,902 in the first quarter to 5,574 in the fourth quarter of that year. Those same statistics report that 10,556 foreclosure sales, almost double the number for the prior quarter, were completed just in the month of January 2008. More foreclosures means less money for schools, public safety, and other key services.

(c) Under specified circumstances, mortgage lenders and servicers are authorized under their pooling and servicing agreements to modify mortgage loans when the modification is in the best interest of investors. Generally, that modification may be deemed to be in the best interest of investors when the net present value of the income stream of the modified loan is greater than the amount that would be recovered through the disposition of the real property security through a foreclosure sale.

NOTICE OF REMOVAL
EXHIBIT A PAGE 58

Cal Civ Code § 2923.5

(d) It is essential to the economic health of California for the state to ameliorate the deleterious effects on the state economy and local economies and the California housing market that will result from the continued foreclosures of residential properties in unprecedented numbers by modifying the foreclosure process to require mortgagees, beneficiaries, or authorized agents to contact borrowers and explore options that could avoid foreclosure. These changes in accessing the state's foreclosure process are essential to ensure that the process does not exacerbate the current crisis by adding more foreclosures to the glut of foreclosed properties already on the market when a foreclosure could have been avoided. Those additional foreclosures will further destabilize the housing market with significant, corresponding deleterious effects on the local and state economy.

(e) According to a survey released by the Federal Home Loan Mortgage Corporation (Freddie Mac) on January 31, 2008, 57 percent of the nation's late-paying borrowers do not know their lenders may offer alternatives to help them avoid foreclosure.

(f) As reflected in recent government and industry-led efforts to help troubled borrowers, the mortgage foreclosure crisis impacts borrowers not only in nontraditional loans, but also many borrowers in conventional loans.

(g) This act is necessary to avoid unnecessary foreclosures of residential properties and thereby provide stability to California's statewide and regional economies and housing market by requiring early contact and communications between mortgagees, beneficiaries, or authorized agents and specified borrowers to explore options that could avoid foreclosure and by facilitating the modification or restructuring of loans in appropriate circumstances.

SEC. 7.  Nothing in this act is intended to affect any local just-cause eviction ordinance. This act does not, and shall not be construed to, affect the authority of a public entity that otherwise exists to regulate or monitor the basis for eviction.

SEC. 8.  The provisions of this act are severable. If any provision of this act or its application is held invalid, that invalidity shall not affect other provisions or applications that can be given effect without the invalid provision or application.

Law Review Articles:

Civil: Does Opportunity Knock? The California Foreclosure Prevention Act of 2009. *41 McGeorge L. Rev. 511.*

Annotations:

Preemption Issues Arising Under Home Owners' Loan Act of 1933, *12 U.S.C.A. §§ 1461 et seq. 13 ALR Fed 2d 161.*

Hierarchy Notes:

Div. 3, Pt. 4, Tit. 14, Ch. 2 Note

Div. 3, Pt. 4, Tit. 14, Ch. 2, Art. 1 Note

LexisNexis 50 State Surveys, Legislation & Regulations

8

NOTICE OF REMOVAL
EXHIBIT A PAGE 59



6 of 38 DOCUMENTS

DEERING'S CALIFORNIA CODES ANNOTATED
Copyright (c) 2013 by Matthew Bender & Company, Inc.
a member of the LexisNexis Group.
All rights reserved.

*** This document is current through the 2013 Supplement ***
(All 2012 legislation, 2012 Governor's Reorg. Plan No. 2 and all
propositions approved by the electorate at the June and November 2012 elections).

CIVIL CODE
Division 3. Obligations
Part 4. Obligations Arising from Particular Transactions
Title 14. Lien
Chapter 2. Mortgage
Article 1. Mortgages in General

GO TO CALIFORNIA CODES ARCHIVE DIRECTORY

*Cal Civ Code § 2923.55 (2013)*

First of 2 versions of this section

§ 2923.55. (First of two; Repealed January 1, 2018) Recording of notice of default; Conditions; Information in writing to borrower required; "Due diligence"; Applicability

(a) A mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent may not record a notice of default pursuant to Section 2924 until all of the following:

(1) The mortgage servicer has satisfied the requirements of paragraph (1) of subdivision (b).

(2) Either 30 days after initial contact is made as required by paragraph (2) of subdivision (b) or 30 days after satisfying the due diligence requirements as described in subdivision (f).

(3) The mortgage servicer complies with subdivision (c) of Section 2923.6, if the borrower has provided a complete application as defined in subdivision (h) of Section 2923.6.

(b)

(1) As specified in subdivision (a), a mortgage servicer shall send the following information in writing to the borrower:

(A) A statement that if the borrower is a servicemember or a dependent of a servicemember, he or she may be

9

Cal Civ Code § 2923.55

entitled to certain protections under the federal Servicemembers Civil Relief Act *(50 U.S.C. Sec. 501* et seq.) regarding the servicemember's interest rate and the risk of foreclosure, and counseling for covered servicemembers that is available at agencies such as Military OneSource and Armed Forces Legal Assistance.

    (B) A statement that the borrower may request the following:

        (i) A copy of the borrower's promissory note or other evidence of indebtedness.

        (ii) A copy of the borrower's deed of trust or mortgage.

        (iii) A copy of any assignment, if applicable, of the borrower's mortgage or deed of trust required to demonstrate the right of the mortgage servicer to foreclose.

        (iv) A copy of the borrower's payment history since the borrower was last less than 60 days past due.

    (2) A mortgage servicer shall contact the borrower in person or by telephone in order to assess the borrower's financial situation and explore options for the borrower to avoid foreclosure. During the initial contact, the mortgage servicer shall advise the borrower that he or she has the right to request a subsequent meeting and, if requested, the mortgage servicer shall schedule the meeting to occur within 14 days. The assessment of the borrower's financial situation and discussion of options may occur during the first contact, or at the subsequent meeting scheduled for that purpose. In either case, the borrower shall be provided the toll-free telephone number made available by the United States Department of Housing and Urban Development (HUD) to find a HUD-certified housing counseling agency. Any meeting may occur telephonically.

    (c) A notice of default recorded pursuant to Section 2924 shall include a declaration that the mortgage servicer has contacted the borrower, has tried with due diligence to contact the borrower as required by this section, or that no contact was required because the individual did not meet the definition of "borrower" pursuant to subdivision (c) of Section 2920.5.

    (d) A mortgage servicer's loss mitigation personnel may participate by telephone during any contact required by this section.

    (e) A borrower may designate, with consent given in writing, a HUD-certified housing counseling agency, attorney, or other adviser to discuss with the mortgage servicer, on the borrower's behalf, the borrower's financial situation and options for the borrower to avoid foreclosure. That contact made at the direction of the borrower shall satisfy the contact requirements of paragraph (2) of subdivision (b). Any foreclosure prevention alternative offered at the meeting by the mortgage servicer is subject to approval by the borrower.

    (f) A notice of default may be recorded pursuant to Section 2924 when a mortgage servicer has not contacted a borrower as required by paragraph (2) of subdivision (b), provided that the failure to contact the borrower occurred despite the due diligence of the mortgage servicer. For purposes of this section, "due diligence" shall require and mean all of the following:

    (1) A mortgage servicer shall first attempt to contact a borrower by sending a first-class letter that includes the toll-free telephone number made available by HUD to find a HUD-certified housing counseling agency.

    (2)

        (A) After the letter has been sent, the mortgage servicer shall attempt to contact the borrower by telephone at least three times at different hours and on different days. Telephone calls shall be made to the primary telephone number on file.

        (B) A mortgage servicer may attempt to contact a borrower using an automated system to dial borrowers,

10

Cal Civ Code § 2923.55

provided that, if the telephone call is answered, the call is connected to a live representative of the mortgage servicer.

(C) A mortgage servicer satisfies the telephone contact requirements of this paragraph if it determines, after attempting contact pursuant to this paragraph, that the borrower's primary telephone number and secondary telephone number or numbers on file, if any, have been disconnected.

(3) If the borrower does not respond within two weeks after the telephone call requirements of paragraph (2) have been satisfied, the mortgage servicer shall then send a certified letter, with return receipt requested, that includes the toll-free telephone number made available by HUD to find a HUD-certified housing counseling agency.

(4) The mortgage servicer shall provide a means for the borrower to contact it in a timely manner, including a toll-free telephone number that will provide access to a live representative during business hours.

(5) The mortgage servicer has posted a prominent link on the homepage of its Internet Web site, if any, to the following information:

(A) Options that may be available to borrowers who are unable to afford their mortgage payments and who wish to avoid foreclosure, and instructions to borrowers advising them on steps to take to explore those options.

(B) A list of financial documents borrowers should collect and be prepared to present to the mortgage servicer when discussing options for avoiding foreclosure.

(C) A toll-free telephone number for borrowers who wish to discuss options for avoiding foreclosure with their mortgage servicer.

(D) The toll-free telephone number made available by HUD to find a HUD-certified housing counseling agency.

(g) This section shall not apply to entities described in subdivision (b) of Section 2924.18.

(h) This section shall apply only to mortgages or deeds of trust described in Section 2924.15.

(i) This section shall remain in effect only until January 1, 2018, and as of that date is repealed, unless a later enacted statute, that is enacted before January 1, 2018, deletes or extends that date.

**HISTORY:**

Added Stats 2012 ch 86 § 6 (AB 278), effective January 1, 2013, repealed January 1, 2018.

**NOTES:**

**Editor's Notes**

For legislative findings and declarations see the 2012 Note following *CC § 2920.5* (First of two).

**Former Sections:**

Former CC § 2923.55, relating to specified conditions for which *CC § 2923.52* is inapplicable, was added Stats 2009-2010 2d Ex Sess ch 4 § 6 (SB 7XX), effective May 21, 2009, and ch 5 § 6 (AB 7XX), effective May 21, 2009, and repealed January 1, 2011, by its own terms.

NOTICE OF REMOVAL
EXHIBIT A PAGE 62



10 of 38 DOCUMENTS

DEERING'S CALIFORNIA CODES ANNOTATED
Copyright (c) 2013 by Matthew Bender & Company, Inc.
a member of the LexisNexis Group.
All rights reserved.

*** This document is current through the 2013 Supplement ***
(All 2012 legislation, 2012 Governor's Reorg. Plan No. 2 and all
propositions approved by the electorate at the June and November 2012 elections)

CIVIL CODE
Division 3. Obligations
Part 4. Obligations Arising from Particular Transactions
Title 14. Lien
Chapter 2. Mortgage
Article 1. Mortgages in General

GO TO CALIFORNIA CODES ARCHIVE DIRECTORY

*Cal Civ Code § 2923.6 (2013)*

**First of 3 versions of this section**

**§ 2923.6. (First of three; Repealed January 1, 2018) Legislative findings and declarations; Loan modification or workout plan; Conditions for recording notice of default or sale, or conducting trustee's sale; Denial of application**

(a) The Legislature finds and declares that any duty that mortgage servicers may have to maximize net present value under their pooling and servicing agreements is owed to all parties in a loan pool, or to all investors under a pooling and servicing agreement, not to any particular party in the loan pool or investor under a pooling and servicing agreement, and that a mortgage servicer acts in the best interests of all parties to the loan pool or investors in the pooling and servicing agreement if it agrees to or implements a loan modification or workout plan for which both of the following apply:

(1) The loan is in payment default, or payment default is reasonably foreseeable.

(2) Anticipated recovery under the loan modification or workout plan exceeds the anticipated recovery through foreclosure on a net present value basis.

(b) It is the intent of the Legislature that the mortgage servicer offer the borrower a loan modification or workout plan if such a modification or plan is consistent with its contractual or other authority.

12

Cal Civ Code § 2923.6

(c) If a borrower submits a complete application for a first lien loan modification offered by, or through, the borrower's mortgage servicer, a mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall not record a notice of default or notice of sale, or conduct a trustee's sale, while the complete first lien loan modification application is pending. A mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall not record a notice of default or notice of sale or conduct a trustee's sale until any of the following occurs:

(1) The mortgage servicer makes a written determination that the borrower is not eligible for a first lien loan modification, and any appeal period pursuant to subdivision (d) has expired.

(2) The borrower does not accept an offered first lien loan modification within 14 days of the offer.

(3) The borrower accepts a written first lien loan modification, but defaults on, or otherwise breaches the borrower's obligations under, the first lien loan modification.

(d) If the borrower's application for a first lien loan modification is denied, the borrower shall have at least 30 days from the date of the written denial to appeal the denial and to provide evidence that the mortgage servicer's determination was in error.

(e) If the borrower's application for a first lien loan modification is denied, the mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall not record a notice of default or, if a notice of default has already been recorded, record a notice of sale or conduct a trustee's sale until the later of:

(1) Thirty-one days after the borrower is notified in writing of the denial.

(2) If the borrower appeals the denial pursuant to subdivision (d), the later of 15 days after the denial of the appeal or 14 days after a first lien loan modification is offered after appeal but declined by the borrower, or, if a first lien loan modification is offered and accepted after appeal, the date on which the borrower fails to timely submit the first payment or otherwise breaches the terms of the offer.

(f) Following the denial of a first lien loan modification application, the mortgage servicer shall send a written notice to the borrower identifying the reasons for denial, including the following:

(1) The amount of time from the date of the denial letter in which the borrower may request an appeal of the denial of the first lien loan modification and instructions regarding how to appeal the denial.

(2) If the denial was based on investor disallowance, the specific reasons for the investor disallowance.

(3) If the denial is the result of a net present value calculation, the monthly gross income and property value used to calculate the net present value and a statement that the borrower may obtain all of the inputs used in the net present value calculation upon written request to the mortgage servicer.

(4) If applicable, a finding that the borrower was previously offered a first lien loan modification and failed to successfully make payments under the terms of the modified loan.

(5) If applicable, a description of other foreclosure prevention alternatives for which the borrower may be eligible, and a list of the steps the borrower must take in order to be considered for those options. If the mortgage servicer has already approved the borrower for another foreclosure prevention alternative, information necessary to complete the foreclosure prevention alternative.

(g) In order to minimize the risk of borrowers submitting multiple applications for first lien loan modifications for the purpose of delay, the mortgage servicer shall not be obligated to evaluate applications from borrowers who have already been evaluated or afforded a fair opportunity to be evaluated for a first lien loan modification prior to January 1, 2013, or who have been evaluated or afforded a fair opportunity to be evaluated consistent with the requirements of this

13

Cal Civ Code § 2923.6

section, unless there has been a material change in the borrower's financial circumstances since the date of the borrower's previous application and that change is documented by the borrower and submitted to the mortgage servicer.

(h) For purposes of this section, an application shall be deemed "complete" when a borrower has supplied the mortgage servicer with all documents required by the mortgage servicer within the reasonable timeframes specified by the mortgage servicer.

(i) Subdivisions (c) to (h), inclusive, shall not apply to entities described in subdivision (b) of Section 2924.18.

(j) This section shall apply only to mortgages or deeds of trust described in Section 2924.15.

(k) This section shall remain in effect only until January 1, 2018, and as of that date is repealed, unless a later enacted statute, that is enacted before January 1, 2018, deletes or extends that date.

**HISTORY:**

Added Stats 2008 ch 69 § 3 (SB 1137), effective July 8, 2008, repealed January 1, 2013. Amended Stats 2009 ch 43 § 2 (SB 306), effective January 1, 2010, repealed January 1, 2013; Stats 2012 ch 86 § 7 (AB 278), effective January 1, 2013, repealed January 1, 2018; ch 87 § 7 (SB 900), effective January 1, 2013, repealed January 1, 2018.

**NOTES:**

**Editor's Notes**

For legislative findings and declarations, see the 2012 Note under CC § 2920.5 (Second of two).

**Amendments:**

**2009 Amendment:**

Amended the introductory clause of subd (a) by (1) adding "or to all investors under a pooling and servicing agreement,"; (2) substituting "party in the loan pool or investor under a polling and servicing agreement" for "parties"; and (3) adding "to the loan pool or investors in the pooling and servicing agreement".

**2012 Amendment:**

(1) Amended the introductory clause of subd (a) by (a) adding "that mortgage"; (b) substituting "pooling" for "polling" after "investor under a"; and (c) adding "mortgage" before "servicer acts in"; (2) substituted "mortgage servicer" for "mortgagee, beneficiary, or authorized agent" in subd (b); (3) added subds (c)-(j); (4) redesignated former subd (c) to be subd (k); and (5) substituted "January 1, 2018" for "January 1, 2013" both times it appears in subd (k). (As amended Stats 2012 ch 87 compared to the section as it read prior to 2012. This section was also amended by an earlier chapter, ch 86. See Gov C § 9605.)

**Note**

Stats 2008 ch 69 provides:

14

NOTICE OF REMOVAL
EXHIBIT A PAGE 65



13 of 38 DOCUMENTS

DEERING'S CALIFORNIA CODES ANNOTATED
Copyright (c) 2013 by Matthew Bender & Company, Inc.
a member of the LexisNexis Group.
All rights reserved.

*** This document is current through the 2013 Supplement ***
(All 2012 legislation, 2012 Governor's Reorg. Plan No. 2 and all
propositions approved by the electorate at the June and November 2012 elections)

CIVIL CODE
Division 3. Obligations
Part 4. Obligations Arising from Particular Transactions
Title 14. Lien
Chapter 2. Mortgage
Article 1. Mortgages in General

GO TO CALIFORNIA CODES ARCHIVE DIRECTORY

*Cal Civ Code § 2923.7 (2013)*

First of 2 versions of this section

§ 2923.7. (First of two) Responsibilities of single point of contact; Applicability

(a) Upon request from a borrower who requests a foreclosure prevention alternative, the mortgage servicer shall promptly establish a single point of contact and provide to the borrower one or more direct means of communication with the single point of contact.

(b) The single point of contact shall be responsible for doing all of the following:

(1) Communicating the process by which a borrower may apply for an available foreclosure prevention alternative and the deadline for any required submissions to be considered for these options.

(2) Coordinating receipt of all documents associated with available foreclosure prevention alternatives and notifying the borrower of any missing documents necessary to complete the application.

(3) Having access to current information and personnel sufficient to timely, accurately, and adequately inform the borrower of the current status of the foreclosure prevention alternative.

(4) Ensuring that a borrower is considered for all foreclosure prevention alternatives offered by, or through, the mortgage servicer, if any.

NOTICE OF REMOVAL
EXHIBIT A PAGE 66

Cal Civ Code § 2923.7

(5) Having access to individuals with the ability and authority to stop foreclosure proceedings when necessary.

(c) The single point of contact shall remain assigned to the borrower's account until the mortgage servicer determines that all loss mitigation options offered by, or through, the mortgage servicer have been exhausted or the borrower's account becomes current.

(d) The mortgage servicer shall ensure that a single point of contact refers and transfers a borrower to an appropriate supervisor upon request of the borrower, if the single point of contact has a supervisor.

(e) For purposes of this section, "single point of contact" means an individual or team of personnel each of whom has the ability and authority to perform the responsibilities described in subdivisions (b) to (d), inclusive. The mortgage servicer shall ensure that each member of the team is knowledgeable about the borrower's situation and current status in the alternatives to foreclosure process.

(f) This section shall apply only to mortgages or deeds of trust described in Section 2924.15.

(g)

(1) This section shall not apply to a depository institution chartered under state or federal law, a person licensed pursuant to Division 9 (commencing with Section 22000) or Division 20 (commencing with *Section 50000) of the Financial Code*, or a person licensed pursuant to Part 1 (commencing with *Section 10000) of Division 4 of the Business and Professions Code*, that, during its immediately preceding annual reporting period, as established with its primary regulator, foreclosed on 175 or fewer residential real properties, containing no more than four dwelling units, that are located in California.

(2) Within three months after the close of any calendar year or annual reporting period as established with its primary regulator during which an entity or person described in paragraph (1) exceeds the threshold of 175 specified in paragraph (1), that entity shall notify its primary regulator, in a manner acceptable to its primary regulator, and any mortgagor or trustor who is delinquent on a residential mortgage loan serviced by that entity of the date on which that entity will be subject to this section, which date shall be the first day of the first month that is six months after the close of the calendar year or annual reporting period during which that entity exceeded the threshold.

**HISTORY:**

Added Stats 2012 ch 86 § 9 (AB 278), effective January 1, 2013.

**NOTES:**

**Editor's Notes**

For legislative findings and declarations, see the 2012 Note under *CC § 2920.5* (First of two).

**Hierarchy Notes:**

Div. 3, Pt. 4, Tit. 14, Ch. 2 Note

Div. 3, Pt. 4, Tit. 14, Ch. 2, Art. 1 Note

 LexisNexis®

1 of 1 DOCUMENT

DEERING'S CALIFORNIA CODES ANNOTATED
Copyright (c) 2013 by Matthew Bender & Company, Inc.
a member of the LexisNexis Group.
All rights reserved.

*** This document is current through the 2013 Supplement ***
(All 2012 legislation, 2012 Governor's Reorg. Plan No. 2 and all
propositions approved by the electorate at the June and November 2012 elections)

CIVIL CODE
Division 3. Obligations
Part 4. Obligations Arising from Particular Transactions
Title 14. Lien
Chapter 2. Mortgage
Article 1. Mortgages in General

**GO TO CALIFORNIA CODES ARCHIVE DIRECTORY**

*Cal Civ Code § 2924 (2013)*

§ 2924. Transfer as security deemed mortgage or pledge; Exercise of power of sale; No liability for good faith error; Recital of acts as prima facie evidence; Privileged communications; Rebuttable presumption

(a) Every transfer of an interest in property, other than in trust, made only as a security for the performance of another act, is to be deemed a mortgage, except when in the case of personal property it is accompanied by actual change of possession, in which case it is to be deemed a pledge. Where, by a mortgage created after July 27, 1917, of any estate in real property, other than an estate at will or for years, less than two, or in any transfer in trust made after July 27, 1917, of a like estate to secure the performance of an obligation, a power of sale is conferred upon the mortgagee, trustee, or any other person, to be exercised after a breach of the obligation for which that mortgage or transfer is a security, the power shall not be exercised except where the mortgage or transfer is made pursuant to an order, judgment, or decree of a court of record, or to secure the payment of bonds or other evidences of indebtedness authorized or permitted to be issued by the Commissioner of Corporations, or is made by a public utility subject to the provisions of the Public Utilities Act, until all of the following apply:

(1) The trustee, mortgagee, or beneficiary, or any of their authorized agents shall first file for record, in the office of the recorder of each county wherein the mortgaged or trust property or some part or parcel thereof is situated, a notice of default. That notice of default shall include all of the following:

(A) A statement identifying the mortgage or deed of trust by stating the name or names of the trustor or trustors and giving the book and page, or instrument number, if applicable, where the mortgage or deed of trust is recorded or a description of the mortgaged or trust property.

NOTICE OF REMOVAL
EXHIBIT A PAGE 68

(B) A statement that a breach of the obligation for which the mortgage or transfer in trust is security has occurred.

(C) A statement setting forth the nature of each breach actually known to the beneficiary and of his or her election to sell or cause to be sold the property to satisfy that obligation and any other obligation secured by the deed of trust or mortgage that is in default.

(D) If the default is curable pursuant to Section 2924c, the statement specified in paragraph (1) of subdivision (b) of Section 2924c.

(2) Not less than three months shall elapse from the filing of the notice of default.

(3) Except as provided in paragraph (4), after the lapse of the three months described in paragraph (2), the mortgagee, trustee, or other person authorized to take the sale shall give notice of sale, stating the time and place thereof, in the manner and for a time not less than that set forth in Section 2924f.

(4) Notwithstanding paragraph (3), the mortgagee, trustee, or other person authorized to take sale may record a notice of sale pursuant to Section 2924f up to five days before the lapse of the three-month period described in paragraph (2), provided that the date of sale is no earlier than three months and 20 days after the recording of the notice of default.

(5) Until January 1, 2018, whenever a sale is postponed for a period of at least 10 business days pursuant to Section 2924g, a mortgagee, beneficiary, or authorized agent shall provide written notice to a borrower regarding the new sale date and time, within five business days following the postponement. Information provided pursuant to this paragraph shall not constitute the public declaration required by subdivision (d) of Section 2924g. Failure to comply with this paragraph shall not invalidate any sale that would otherwise be valid under Section 2924f. This paragraph shall be inoperative on January 1, 2018.

(6) No entity shall record or cause a notice of default to be recorded or otherwise initiate the foreclosure process unless it is the holder of the beneficial interest under the mortgage or deed of trust, the original trustee or the substituted trustee under the deed of trust, or the designated agent of the holder of the beneficial interest. No agent of the holder of the beneficial interest under the mortgage or deed of trust, original trustee or substituted trustee under the deed of trust may record a notice of default or otherwise commence the foreclosure process except when acting within the scope of authority designated by the holder of the beneficial interest.

(b) In performing acts required by this article, the trustee shall incur no liability for any good faith error resulting from reliance on information provided in good faith by the beneficiary regarding the nature and the amount of the default under the secured obligation, deed of trust, or mortgage. In performing the acts required by this article, a trustee shall not be subject to Title 1.6c (commencing with Section 1788) of Part 4.

(c) A recital in the deed executed pursuant to the power of sale of compliance with all requirements of law regarding the mailing of copies of notices or the publication of a copy of the notice of default or the personal delivery of the copy of the notice of default or the posting of copies of the notice of sale or the publication of a copy thereof shall constitute prima facie evidence of compliance with these requirements and conclusive evidence thereof in favor of bona fide purchasers and encumbrancers for value and without notice.

(d) All of the following shall constitute privileged communications pursuant to Section 47:

(1) The mailing, publication, and delivery of notices as required by this section.

(2) Performance of the procedures set forth in this article.

(3) Performance of the functions and procedures set forth in this article if those functions and procedures are

NOTICE OF REMOVAL
EXHIBIT A PAGE 69

Cal Civ Code § 2924

necessary to carry out the duties described in *Sections 729.040, 729.050, and 729.080 of the Code of Civil Procedure.*

(e) There is a rebuttable presumption that the beneficiary actually knew of all unpaid loan payments on the obligation owed to the beneficiary and secured by the deed of trust or mortgage subject to the notice of default. However, the failure to include an actually known default shall not invalidate the notice of sale and the beneficiary shall not be precluded from asserting a claim to this omitted default or defaults in a separate notice of default.

(f) With respect to residential real property containing no more than four dwelling units, a separate document containing a summary of the notice of default information in English and the languages described in Section 1632 shall be attached to the notice of default provided to the mortgagor or trustor pursuant to Section 2923.3.

## HISTORY:

Added Stats 2009-2010 2d Ex Sess ch 4 § 8 (SB 7XX), effective May 21, 2009, operative January 1, 2011. Amended Stats 2010 ch 180 § 1 (SB 1221), effective January 1, 2011, operative January 1, 2011; Stats 2012 ch 86 § 10 (AB 278), effective January 1, 2013, ch 87 § 10 (SB 900), effective January 1, 2013, ch 556 § 2.5 (AB 1599), effective January 1, 2013.

## NOTES:

## Former Sections:

Former CC 2924, similar to the present section, was added Stats 2009-2010 2d Ex Sess ch 5 § 8 (AB 7XX), effective May 21, 2009, operative January 1, 2011, amended Stats 2010 ch 180 § 2 (SB 1221), effective January 1, 2011, operative January 1, 2011, and repealed Stats 2012 ch 86 § 11 (AB 278), effective January 1, 2013, ch 87 § 11 (SB 900), effective January 1, 2013, and ch 556 § 3 (AB 1599), effective January 1, 2013.

Former § 2924, similar to the present section, was enacted 1872, amended Code Amdts 1873-74 ch 612 § 256; Stats 1917 ch 204 § 1; Stats 1923 ch 374 § 1; Stats 1931 ch 764 § 1; Stats 1933 ch 642 § 1, reenacted Stats 1935 ch 650 § 1, amended Stats 1939 ch 983 § 1; Stats 1959 ch 1890 § 1; Stats 1972 ch 1056 § 1; Stats 1973 ch 817 § 1, operative July 1, 1974; Stats 1981 ch 427 § 1; Stats 1990 ch 657 § 1; Stats 1993 ch 686 § 2; Stats 1995 ch 752 § 1; Stats 1996 ch 483 § 1; Stats 1999 ch 974 § 8; Stats 2000 ch 636 § 6; Stats 2006 ch 575 § 4, effective January 1, 2007; Stats 2009-2010 2d Ex Sess ch 4 § 7, effective May 21, 2009, ch 5 § 7, effective May 21, 2009, repealed January 1, 2011, and repealed January 1, 2011, by its own terms.

## Amendments:

## 2010 Amendment:

Added (1) "Except as provided in paragraph (4)," in subd (a)(3); and (2) subd (a)(4). (As amended Stats 2012 ch 556, compared to the section as it read prior to 2012. This section was also amended by two earlier chapters, ch 86 and 87. See *Gov C § 9605.*)

## 2012 Amendment:

(1) Amended subd (a)(4) by substituting (a) "record" for "file"; and (b) "recording" for "filing"; (2) added subds (a)(5) and (a)(6); and (3) substituted subd (f) for former subd (f) which read: "(f) This section shall become operative on

19

NOTICE OF REMOVAL
EXHIBIT A PAGE 70

Cal Civ Code § 2924

January 1, 2011." (As amended Stats 2012 ch 556, compared to the section as it read prior to 2012. This section was also amended by two earlier chapters, ch 86 and 87. See *Gov C § 9605*.)

**Historical Derivation:**

(a) *CC § 2924b*, as added Stats 1933 ch 642 § 2. Reenacted by Stats 1935 ch 650 § 2, Stats 1939 ch 983 § 2, Stats 1951 ch 417 § 2, Stats 1957 ch 1865 § 11.

(b) Field's Draft NY CC § 1610.

**Note**

Stats 1990 ch 657 provides:

SEC. 3. It is the intent of the Legislature in enacting this act to supersede the holding in *Anderson v. Heart Federal Savings, 208 Cal. App. 3d 202*, to the extent that decision restricted the ability of mortgages and beneficiaries under trust deeds to demand payment of all amounts in default under the terms of an obligation secured by a mortgage or trust deed as a condition to reinstatement of the obligation and avoidance of a sale of the security property to satisfy the obligation.

Stats 2009-2010 2d Ex Sess ch 4 provides:

SECTION 1.  This act shall be known as the California Foreclosure Prevention Act.

SEC. 2.  The Legislature finds and declares all of the following:

(a) California is facing an unprecedented threat to its state and local economies due to skyrocketing residential property foreclosure rates in California. Those high foreclosure rates have adversely affected property values in California, and will have even greater adverse consequences as foreclosure rates continue to rise.

(b) It is essential to the economic health of California for the state to ameliorate the deleterious effects that will result from the continued high rate of foreclosure of residential properties by modifying the foreclosure process to provide additional time for borrowers to work out loan modifications while providing an exemption for mortgage loan servicers that have implemented a comprehensive loan modification program. This change in accessing the state's foreclosure process is essential to ensure that the process does not exacerbate the current crisis by adding more foreclosures to the glut of foreclosed properties already on the market if the foreclosure may be avoided through a loan modification. Those additional foreclosures could further destabilize the housing market with significant, corresponding deleterious effects on the state and local economies.

**Law Review Articles:**

Civil: Does Opportunity Knock? The California Foreclosure Prevention Act of 2009. *41 McGeorge L. Rev. 511.*

**Cross References:**

Mode of recording instruments affecting real property: *CC §§ 1169 et seq.*

NOTICE OF REMOVAL
EXHIBIT A PAGE 71



15 of 38 DOCUMENTS

DEERING'S CALIFORNIA CODES ANNOTATED
Copyright (c) 2013 by Matthew Bender & Company, Inc.
a member of the LexisNexis Group.
All rights reserved.

*** This document is current through the 2013 Supplement ***
(All 2012 legislation, 2012 Governor's Reorg. Plan No. 2 and all
propositions approved by the electorate at the June and November 2012 elections)

CIVIL CODE
Division 3. Obligations
Part 4. Obligations Arising from Particular Transactions
Title 14. Lien
Chapter 2. Mortgage
Article 1. Mortgages in General

GO TO CALIFORNIA CODES ARCHIVE DIRECTORY

Cal Civ Code § 2924.9 (2013)

First of 2 versions of this section

§ 2924.9. (First of two; Repealed January 1, 2018) Written communication to borrower required after mortgage servicer recorded notice of default pursuant to Section 2924

(a) Unless a borrower has previously exhausted the first lien loan modification process offered by, or through, his or her mortgage servicer described in Section 2923.6, within five business days after recording a notice of default pursuant to Section 2924, a mortgage servicer that offers one or more foreclosure prevention alternatives shall send a written communication to the borrower that includes all of the following information:

(1) That the borrower may be evaluated for a foreclosure prevention alternative or, if applicable, foreclosure prevention alternatives.

(2) Whether an application is required to be submitted by the borrower in order to be considered for a foreclosure prevention alternative.

(3) The means and process by which a borrower may obtain an application for a foreclosure prevention alternative.

(b) This section shall not apply to entities described in subdivision (b) of Section 2924.18.

(c) This section shall apply only to mortgages or deeds of trust described in Section 2924.15.

Cal Civ Code § 2924.9

(d) This section shall remain in effect only until January 1, 2018, and as of that date is repealed, unless a later enacted statute, that is enacted before January 1, 2018, deletes or extends that date.

**HISTORY:**

Added Stats 2012 ch 86 § 12 (AB 278), effective January 1, 2013, repealed January 1, 2018.

**NOTES:**

Editor's Notes

For legislative findings and declarations see the 2012 Note following *CC § 2920.5* (First of two)

Hierarchy Notes:

Div. 3, Pt. 4, Tit. 14, Ch. 2 Note

Div. 3, Pt. 4, Tit. 14, Ch. 2, Art. 1 Note

NOTICE OF REMOVAL
EXHIBIT A PAGE 73



16 of 38 DOCUMENTS

DEERING'S CALIFORNIA CODES ANNOTATED
Copyright (c) 2013 by Matthew Bender & Company, Inc.
a member of the LexisNexis Group.
All rights reserved.

*** This document is current through the 2013 Supplement ***
(All 2012 legislation, 2012 Governor's Reorg. Plan No. 2 and all
propositions approved by the electorate at the June and November 2012 elections)

CIVIL CODE
Division 3.  Obligations
Part 4.  Obligations Arising from Particular Transactions
Title 14.  Lien
Chapter 2.  Mortgage
Article 1.  Mortgages in General

GO TO CALIFORNIA CODES ARCHIVE DIRECTORY

*Cal Civ Code § 2924.10 (2013)*

First of 2 versions of this section

§ 2924.10.  (First of two; Repealed January 1, 2018) Acknowledgment of receipt of loan modification application;
Responsibilities of mortgage servicer

   (a) When a borrower submits a complete first lien modification application or any document in connection with a
first lien modification application, the mortgage servicer shall provide written acknowledgment of the receipt of the
documentation within five business days of receipt. In its initial acknowledgment of receipt of the loan modification
application, the mortgage servicer shall include the following information:

   (1) A description of the loan modification process, including an estimate of when a decision on the loan
modification will be made after a complete application has been submitted by the borrower and the length of time the
borrower will have to consider an offer of a loan modification or other foreclosure prevention alternative.

   (2) Any deadlines, including deadlines to submit missing documentation, that would affect the processing of a first
lien loan modification application.

   (3) Any expiration dates for submitted documents.

   (4) Any deficiency in the borrower's first lien loan modification application.

Cal Civ Code § 2924.10

(b) For purposes of this section, a borrower's first lien loan modification application shall be deemed to be "complete" when a borrower has supplied the mortgage servicer with all documents required by the mortgage servicer within the reasonable timeframes specified by the mortgage servicer.

(c) This section shall not apply to entities described in subdivision (b) of Section 2924.18.

(d) This section shall apply only to mortgages or deeds of trust described in Section 2924.15.

(e) This section shall remain in effect only until January 1, 2018, and as of that date is repealed, unless a later enacted statute, that is enacted before January 1, 2018, deletes or extends that date.

HISTORY:

Added Stats 2012 ch 86 § 13 (AB 278), effective January 1, 2013, repealed January 1, 2018.

NOTES:

Editor's Notes

For legislative findings and declarations see the 2012 Note following CC § 2920.5 (First of two).

Hierarchy Notes:

Div. 3, Pt. 4, Tit. 14, Ch. 2 Note

Div. 3, Pt. 4, Tit. 14, Ch. 2, Art. 1 Note

NOTICE OF REMOVAL
EXHIBIT A PAGE 75



18 of 38 DOCUMENTS

DEERING'S CALIFORNIA CODES ANNOTATED
Copyright (c) 2013 by Matthew Bender & Company, Inc.
a member of the LexisNexis Group.
All rights reserved.

*** This document is current through the 2013 Supplement ***
(All 2012 legislation, 2012 Governor's Reorg. Plan No. 2 and all
propositions approved by the electorate at the June and November 2012 elections)

CIVIL CODE
Division 3. Obligations
Part 4. Obligations Arising from Particular Transactions
Title 14. Lien
Chapter 2. Mortgage
Article 1. Mortgages in General

**GO TO CALIFORNIA CODES ARCHIVE DIRECTORY**

*Cal Civ Code § 2924.11 (2013)*

First of 4 versions of this section

**§ 2924.11. (First of four; Repealed January 1, 2018) Approval of foreclosure prevention alternative; Recording notice of default or conducting a trustee's sale; Prohibited acts; Rescission or cancellation; Fees; Subsequent mortgage servicer**

(a) If a foreclosure prevention alternative is approved in writing prior to the recordation of a notice of default, a mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall not record a notice of default under either of the following circumstances:

(1) The borrower is in compliance with the terms of a written trial or permanent loan modification, forbearance, or repayment plan.

(2) A foreclosure prevention alternative has been approved in writing by all parties, including, for example, the first lien investor, junior lienholder, and mortgage insurer, as applicable, and proof of funds or financing has been provided to the servicer.

(b) If a foreclosure prevention alternative is approved in writing after the recordation of a notice of default, a mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall not record a notice of sale or conduct a trustee's sale under either of the following circumstances:

25

Cal Civ Code § 2924.11

(1) The borrower is in compliance with the terms of a written trial or permanent loan modification, forbearance, or repayment plan.

(2) A foreclosure prevention alternative has been approved in writing by all parties, including, for example, the first lien investor, junior lienholder, and mortgage insurer, as applicable, and proof of funds or financing has been provided to the servicer.

(c) When a borrower accepts an offered first lien loan modification or other foreclosure prevention alternative, the mortgage servicer shall provide the borrower with a copy of the fully executed loan modification agreement or agreement evidencing the foreclosure prevention alternative following receipt of the executed copy from the borrower.

(d) A mortgagee, beneficiary, or authorized agent shall record a rescission of a notice of default or cancel a pending trustee's sale, if applicable, upon the borrower executing a permanent foreclosure prevention alternative. In the case of a short sale, the rescission or cancellation of the pending trustee's sale shall occur when the short sale has been approved by all parties and proof of funds or financing has been provided to the mortgagee, beneficiary, or authorized agent.

(e) The mortgage servicer shall not charge any application, processing, or other fee for a first lien loan modification or other foreclosure prevention alternative.

(f) The mortgage servicer shall not collect any late fees for periods during which a complete first lien loan modification application is under consideration or a denial is being appealed, the borrower is making timely modification payments, or a foreclosure prevention alternative is being evaluated or exercised.

(g) If a borrower has been approved in writing for a first lien loan modification or other foreclosure prevention alternative, and the servicing of that borrower's loan is transferred or sold to another mortgage servicer, the subsequent mortgage servicer shall continue to honor any previously approved first lien loan modification or other foreclosure prevention alternative, in accordance with the provisions of the act that added this section.

(h) This section shall apply only to mortgages or deeds of trust described in Section 2924.15.

(i) This section shall not apply to entities described in subdivision (b) of Section 2924.18.

(j) This section shall remain in effect only until January 1, 2018, and as of that date is repealed, unless a later enacted statute, that is enacted before January 1, 2018, deletes or extends that date.

**HISTORY:**

Added Stats 2012 ch 86 § 14 (AB 278), effective January 1, 2013, repealed January 1, 2018.

**NOTES:**

**Editor's Notes**

For legislative findings and declarations see the 2012 Note following *CC § 2920.5* (First of two).

**Hierarchy Notes:**

Div. 3, Pt. 4, Tit. 14, Ch. 2 Note

Div. 3, Pt. 4, Tit. 14, Ch. 2, Art. 1 Note

NOTICE OF REMOVAL
EXHIBIT A PAGE 77



DEERING'S CALIFORNIA CODES ANNOTATED
Copyright (c) 2013 by Matthew Bender & Company, Inc.
a member of the LexisNexis Group.
All rights reserved.

\*\*\* This document is current through the 2013 Supplement \*\*\*
(All 2012 legislation, 2012 Governor's Reorg. Plan No. 2 and all
propositions approved by the electorate at the June and November 2012 elections)

CIVIL CODE
Division 3.  Obligations
Part 4.  Obligations Arising from Particular Transactions
Title 14.  Lien
Chapter 2.  Mortgage
Article 1.  Mortgages in General

GO TO CALIFORNIA CODES ARCHIVE DIRECTORY

*Cal Civ Code § 2924.12 (2013)*

First of 4 versions of this section

§ 2924.12.  (First of four; Repealed January 1, 2018) Actions concerning trustee's deed upon sale; Injunctive relief; Liability; Damages; Violations; Attorney's fees and costs

(a)

(1) If a trustee's deed upon sale has not been recorded, a borrower may bring an action for injunctive relief to enjoin a material violation of Section 2923.55, 2923.6, 2923.7, 2924.9, 2924.10, 2924.11, or 2924.17.

(2) Any injunction shall remain in place and any trustee's sale shall be enjoined until the court determines that the mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent has corrected and remedied the violation or violations giving rise to the action for injunctive relief. An enjoined entity may move to dissolve an injunction based on a showing that the material violation has been corrected and remedied.

(b) After a trustee's deed upon sale has been recorded, a mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall be liable to a borrower for actual economic damages pursuant to Section 3281, resulting from a material violation of Section 2923.55, 2923.6, 2923.7, 2924.9, 2924.10, 2924.11, or 2924.17 by that mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent where the violation was not corrected and remedied prior to the recordation of the trustee's deed upon sale. If the court finds that the material violation was intentional or reckless, or resulted from willful misconduct by a mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent, the court

NOTICE OF REMOVAL
EXHIBIT A PAGE 78

Cal Civ Code § 2924.12

may award the borrower the greater of treble actual damages or statutory damages of fifty thousand dollars ($50,000).

(e) A mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall not be liable for any violation that it has corrected and remedied prior to the recordation of a trustee's deed upon sale, or that has been corrected and remedied by third parties working on its behalf prior to the recordation of a trustee's deed upon sale.

(d) A violation of Section 2923.55, 2923.6, 2923.7, 2924.9, 2924.10, 2924.11, or 2924.17 by a person licensed by the Department of Corporations, Department of Financial Institutions, or Department of Real Estate shall be deemed to be a violation of that person's licensing law.

(e) No violation of this article shall affect the validity of a sale in favor of a bona fide purchaser and any of its encumbrancers for value without notice.

(f) A third-party encumbrancer shall not be relieved of liability resulting from violations of Section 2923.55, 2923.6, 2923.7, 2924.9, 2924.10, 2924.11, or 2924.17 committed by that third-party encumbrancer, that occurred prior to the sale of the subject property to the bona fide purchaser.

(g) A signatory to a consent judgment entered in the case entitled United States of America et al. v. Bank of America Corporation et al., filed in the United States District Court for the District of Columbia, case number 1:12-cv-00361 RMC, that is in compliance with the relevant terms of the Settlement Term Sheet of that consent judgment with respect to the borrower who brought an action pursuant to this section while the consent judgment is in effect shall have no liability for a violation of Section 2923.55, 2923.6, 2923.7, 2924.9, 2924.10, 2924.11, or 2924.17.

(h) The rights, remedies, and procedures provided by this section are in addition to and independent of any other rights, remedies, or procedures under any other law. Nothing in this section shall be construed to alter, limit, or negate any other rights, remedies, or procedures provided by law.

(i) A court may award a prevailing borrower reasonable attorney's fees and costs in an action brought pursuant to this section. A borrower shall be deemed to have prevailed for purposes of this subdivision if the borrower obtained injunctive relief or was awarded damages pursuant to this section.

(j) This section shall not apply to entities described in subdivision (b) of Section 2924.18.

(k) This section shall remain in effect only until January 1, 2018, and as of that date is repealed, unless a later enacted statute, that is enacted before January 1, 2018, deletes or extends that date.

**HISTORY:**

Added Stats 2012 ch 86 § 16 (AB 278), effective January 1, 2013, repealed January 1, 2018.

**NOTES:**

**Editor's Notes**

For legislative findings and declarations see the 2012 Note following *CC § 2920.5* (First of two).

**Hierarchy Notes:**

Div. 3, Pt. 4, Tit. 14, Ch. 2 Note

Div. 3, Pt. 4, Tit. 14, Ch. 2, Art. 1 Note



25 of 38 DOCUMENTS

DEERING'S CALIFORNIA CODES ANNOTATED
Copyright (c) 2013 by Matthew Bender & Company, Inc.
a member of the LexisNexis Group.
All rights reserved.

*** This document is current through the 2013 Supplement ***
(All 2012 legislation, 2012 Governor's Reorg. Plan No. 2 and all
propositions approved by the electorate at the June and November 2012 elections)

CIVIL CODE
Division 3.  Obligations
Part 4.  Obligations Arising from Particular Transactions
Title 14.  Lien
Chapter 2.  Mortgage
Article 1.  Mortgages in General

**GO TO CALIFORNIA CODES ARCHIVE DIRECTORY**

*Cal Civ Code § 2924.15 (2013)*

First of 4 versions of this section

§ 2924.15.  (First of four; Repealed January 1, 2018) Applicability of specified code sections to first lien mortgages or deeds of trust secured by owner-occupied residential real property containing no more than four dwelling units

(a) Unless otherwise provided, paragraph (5) of subdivision (a) of Section 2924, and Sections 2923.5, 2923.55, 2923.6, 2923.7, 2924.9, 2924.10, 2924.11, and 2924.18 shall apply only to first lien mortgages or deeds of trust that are secured by owner-occupied residential real property containing no more than four dwelling units. For these purposes, "owner-occupied" means that the property is the principal residence of the borrower and is security for a loan made for personal, family, or household purposes.

(b) This section shall remain in effect only until January 1, 2018, and as of that date is repealed, unless a later enacted statute, that is enacted before January 1, 2018, deletes or extends that date.

**HISTORY:**

Added Stats 2012 ch 86 § 18 (AB 278), effective January 1, 2013, repealed January 1, 2018.

**NOTES:**

NOTICE OF REMOVAL
EXHIBIT A PAGE 80



DEERING'S CALIFORNIA CODES ANNOTATED
Copyright (c) 2013 by Matthew Bender & Company, Inc.
a member of the LexisNexis Group.
All rights reserved.

\*\*\* This document is current through the 2013 Supplement \*\*\*
(All 2012 legislation, 2012 Governor's Reorg. Plan No. 2 and all
propositions approved by the electorate at the June and November 2012 elections)

CIVIL CODE
Division 3. Obligations
Part 4. Obligations Arising from Particular Transactions
Title 14. Lien
Chapter 2. Mortgage
Article 1. Mortgages in General

GO TO CALIFORNIA CODES ARCHIVE DIRECTORY

*Cal Civ Code § 2924.17 (2013)*

First of 2 versions of this section

**§ 2924.17. (First of two) Recording or filing of certain documents; Review of evidence to substantiate borrower's default and right to foreclose; Uncorrected violations; Civil penalties**

(a) A declaration recorded pursuant to Section 2923.5 or, until January 1, 2018, pursuant to Section 2923.55, a notice of default, notice of sale, assignment of a deed of trust, or substitution of trustee recorded by or on behalf of a mortgage servicer in connection with a foreclosure subject to the requirements of Section 2924, or a declaration or affidavit filed in any court relative to a foreclosure proceeding shall be accurate and complete and supported by competent and reliable evidence.

(b) Before recording or filing any of the documents described in subdivision (a), a mortgage servicer shall ensure that it has reviewed competent and reliable evidence to substantiate the borrower's default and the right to foreclose, including the borrower's loan status and loan information.

(c) Until January 1, 2018, any mortgage servicer that engages in multiple and repeated uncorrected violations of subdivision (b) in recording documents or filing documents in any court relative to a foreclosure proceeding shall be liable for a civil penalty of up to seven thousand five hundred dollars ($7,500) per mortgage or deed of trust in an action brought by a government entity identified in *Section 17204 of the Business and Professions Code*, or in an administrative proceeding brought by the Department of Corporations, the Department of Real Estate, or the Department of Financial Institutions against a respective licensee, in addition to any other remedies available to these

NOTICE OF REMOVAL
EXHIBIT A PAGE 81

Cal Civ Code § 2924.17                                     Page 2

entitles. This subdivision shall be inoperative on January 1, 2018.

**HISTORY:**

Added Stats 2012 ch 86 § 20 (AB 278), effective January 1, 2013.

**NOTES:**

**Editor's Notes**

For legislative findings and declarations see the 2012 Note following *CC § 2920.5* (First of two).

**Hierarchy Notes:**

Div. 3, Pt. 4, Tit. 14, Ch. 2 Note

Div. 3, Pt. 4, Tit. 14, Ch. 2, Art. 1 Note

NOTICE OF REMOVAL
EXHIBIT A PAGE 82



31 of 38 DOCUMENTS

DEERING'S CALIFORNIA CODES ANNOTATED
Copyright (c) 2013 by Matthew Bender & Company, Inc.
a member of the LexisNexis Group.
All rights reserved.

*** This document is current through the 2013 Supplement ***
(All 2012 legislation, 2012 Governor's Reorg. Plan No. 2 and all
propositions approved by the electorate at the June and November 2012 elections)

CIVIL CODE
Division 3.  Obligations
Part 4.  Obligations Arising from Particular Transactions
Title 14.  Lien
Chapter 2.  Mortgage
Article 1.  Mortgages in General

GO TO CALIFORNIA CODES ARCHIVE DIRECTORY

*Cal Civ Code § 2924.18 (2013)*

First of 2 versions of this section

**§ 2924.18.  (First of two; Repealed January 1, 2018) Recording notice of default, notice of sale, or conducting a trustee's sale; Applicability of section to depository institutions and specified licensed persons that foreclosed on residential properties containing no more than four dwelling units; Notifications; Subsequent mortgage servicer**

(a)

(1) If a borrower submits a complete application for a first lien loan modification offered by, or through, the borrower's mortgage servicer, a mortgage servicer, trustee, mortgagee, beneficiary, or authorized agent shall not record a notice of default, notice of sale, or conduct a trustee's sale while the complete first lien loan modification application is pending, and until the borrower has been provided with a written determination by the mortgage servicer regarding that borrower's eligibility for the requested loan modification.

(2) If a foreclosure prevention alternative has been approved in writing prior to the recordation of a notice of default, a mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall not record a notice of default under either of the following circumstances:

(A) The borrower is in compliance with the terms of a written trial or permanent loan modification, forbearance, or repayment plan.

32

NOTICE OF REMOVAL
EXHIBIT A PAGE 83

Cal Civ Code § 2924.18                                          Page 2

(B) A foreclosure prevention alternative has been approved in writing by all parties, including, for example, the first lien investor, junior lienholder, and mortgage insurer, as applicable, and proof of funds or financing has been provided to the servicer.

(3) If a foreclosure prevention alternative is approved in writing after the recordation of a notice of default, a mortgagee, mortgagee, trustee, beneficiary, or authorized agent shall not record a notice of sale or conduct a trustee's sale under either of the following circumstances:

(A) The borrower is in compliance with the terms of a written trial or permanent loan modification, forbearance, or repayment plan.

(B) A foreclosure prevention alternative has been approved in writing by all parties, including, for example, the first lien investor, junior lienholder, and mortgage insurer, as applicable, and proof of funds or financing has been provided to the servicer.

(b) This section shall apply only to a depository institution chartered under state or federal law, a person licensed pursuant to Division 9 (commencing with Section 22000) or Division 20 (commencing with *Section 50000) of the Financial Code*, or a person licensed pursuant to Part 1 (commencing with *Section 10000) of Division 4 of the Business and Professions Code*, that, during its immediately preceding annual reporting period, as established with its primary regulator, foreclosed on 175 or fewer residential real properties, containing no more than four dwelling units, that are located in California.

(c) Within three months after the close of any calendar year or annual reporting period as established with its primary regulator during which an entity or person described in subdivision (b) exceeds the threshold of 175 specified in subdivision (b), that entity shall notify its primary regulator, in a manner acceptable to its primary regulator, and any mortgagor or trustor who is delinquent on a residential mortgage loan serviced by that entity of the date on which that entity will be subject to Sections 2923.55, 2923.6, 2923.7, 2924.9, 2924.10, 2924.11, and 2924.12, which date shall be the first day of the first month that is six months after the close of the calendar year or annual reporting period during which that entity exceeded the threshold.

(d) For purposes of this section, an application shall be deemed "complete" when a borrower has supplied the mortgage servicer with all documents required by the mortgage servicer within the reasonable timeframes specified by the mortgage servicer.

(e) If a borrower has been approved in writing for a first lien loan modification or other foreclosure prevention alternative, and the servicing of the borrower's loan is transferred or sold to another mortgage servicer, the subsequent mortgage servicer shall continue to honor any previously approved first lien loan modification or other foreclosure prevention alternative, in accordance with the provisions of the act that added this section.

(f) This section shall apply only to mortgages or deeds of trust described in Section 2924.15.

(g) This section shall remain in effect only until January 1, 2018, and as of that date is repealed, unless a later enacted statute, that is enacted before January 1, 2018, deletes or extends that date.

**HISTORY:**

Added Stats 2012 ch 86 § 21 (AB 278), effective January 1, 2013, repealed January 1, 2018.

**NOTES:**

Editor's Notes

NOTICE OF REMOVAL
EXHIBIT A PAGE 84



33 of 38 DOCUMENTS

DEERING'S CALIFORNIA CODES ANNOTATED
Copyright (c) 2013 by Matthew Bender & Company, Inc.
a member of the LexisNexis Group.
All rights reserved.

\*\*\* This document is current through the 2013 Supplement \*\*\*
(All 2012 legislation, 2012 Governor's Reorg. Plan No. 2 and all
propositions approved by the electorate at the June and November 2012 elections)

CIVIL CODE
Division 3. Obligations
Part 4. Obligations Arising from Particular Transactions
Title 14. Lien
Chapter 2. Mortgage
Article 1. Mortgages in General

GO TO CALIFORNIA CODES ARCHIVE DIRECTORY

*Cal Civ Code § 2924.19 (2013)*

First of 2 versions of this section

**§ 2924.19. (First of two; Repealed January 1, 2018) Actions concerning trustee's deed; Injunctive relief;
Liability; Damages; Violations; Attorney's fees and costs.**

(a)

(1) If a trustee's deed upon sale has not been recorded, a borrower may bring an action for injunctive relief to
enjoin a material violation of Section 2923.5, 2924.17, or 2924.18.

(2) Any injunction shall remain in place and any trustee's sale shall be enjoined until the court determines that the
mortgage servicer, mortgagee, beneficiary, or authorized agent has corrected and remedied the violation or violations
giving rise to the action for injunctive relief. An enjoined entity may move to dissolve an injunction based on a showing
that the material violation has been corrected and remedied.

(b) After a trustee's deed upon sale has been recorded, a mortgage servicer, mortgagee, beneficiary, or authorized
agent shall be liable to a borrower for actual economic damages pursuant to Section 3281, resulting from a material
violation of Section 2923.5, 2924.17, or 2924.18 by that mortgage servicer, mortgagee, beneficiary, or authorized agent
where the material violation was not corrected and remedied prior to the recordation of the trustee's deed upon sale. If the court
finds that the material violation was intentional or reckless, or resulted from willful misconduct by a mortgage servicer,
mortgagee, beneficiary, or authorized agent, the court may award the borrower the greater of treble actual damages or

NOTICE OF REMOVAL
EXHIBIT A PAGE 85

Cal Civ Code § 2924.19                                   Page 2

statutory damages of fifty thousand dollars ($50,000).

(c) A mortgage servicer, mortgagee, beneficiary, or authorized agent shall not be liable for any violation that it has corrected and remedied prior to the recordation of the trustee's deed upon sale, or that has been corrected and remedied by third parties working on its behalf prior to the recordation of the trustee's deed upon sale.

(d) A violation of Section 2923.5, 2924.17, or 2917.18 by a person licensed by the Department of Corporations, the Department of Financial Institutions, or the Department of Real Estate shall be deemed to be a violation of that person's licensing law.

(e) No violation of this article shall affect the validity of a sale in favor of a bona fide purchaser and any of its encumbrancers for value without notice.

(f) A third-party encumbrancer shall not be relieved of liability resulting from violations of Section 2923.5, 2924.17 or 2924.18, committed by that third-party encumbrancer, that occurred prior to the sale of the subject property to the bona fide purchaser.

(g) The rights, remedies, and procedures provided by this section are in addition to and independent of any other rights, remedies, or procedures under any other law. Nothing in this section shall be construed to alter, limit, or negate any other rights, remedies, or procedures provided by law.

(h) A court may award a prevailing borrower reasonable attorney's fees and costs in an action brought pursuant to this section. A borrower shall be deemed to have prevailed for purposes of this subdivision if the borrower obtained injunctive relief or damages pursuant to this section.

(i) This section shall apply only to entities described in subdivision (b) of Section 2924.18.

(j) This section shall remain in effect only until January 1, 2018, and as of that date is repealed, unless a later enacted statute, that is enacted before January 1, 2018, deletes or extends that date.

HISTORY:

Added Stats 2012 ch 86 § 22 (AB 278), effective January 1, 2013, repealed January 1, 2018.

NOTES:

Editor's Notes

For legislative findings and declarations see the 2012 Note following CC § 2920.5 (First of two).

Hierarchy Notes:

Div. 3, Pt. 4, Tit. 14, Ch. 2 Note

Div. 3, Pt. 4, Tit. 14, Ch. 2, Art. 1 Note

NOTICE OF REMOVAL
EXHIBIT A PAGE 86



35 of 38 DOCUMENTS

DEERING'S CALIFORNIA CODES ANNOTATED
Copyright (c) 2013 by Matthew Bender & Company, Inc.
a member of the LexisNexis Group.
All rights reserved.

*** This document is current through the 2013 Supplement ***
(All 2012 legislation, 2012 Governor's Reorg. Plan No. 2 and all
propositions approved by the electorate at the June and November 2012 elections)

CIVIL CODE
Division 3. Obligations
Part 4. Obligations Arising from Particular Transactions
Title 14. Lien
Chapter 2. Mortgage
Article 1. Mortgages in General

GO TO CALIFORNIA CODES ARCHIVE DIRECTORY

*Cal Civ Code § 2924.20 (2013)*

First of 2 versions of this section

§ 2924.20. (First of two) Adoption of regulations; Enforcement

Consistent with their general regulatory authority, and notwithstanding subdivisions (b) and (c) of Section 2924.18, the Department of Corporations, the Department of Financial Institutions, and the Department of Real Estate may adopt regulations applicable to any entity or person under their respective jurisdictions that are necessary to carry out the purposes of the act that added this section. A violation of the regulations adopted pursuant to this section shall only be enforceable by the regulatory agency.

HISTORY:

Added Stats 2012 ch 86 § 23 (AB 278), effective January 1, 2013.

NOTES:

Editor's Notes

For legislative findings and declarations see the 2012 Note following *CC § 2920.5* (First of two).

Hierarchy Notes:

NOTICE OF REMOVAL
EXHIBIT A PAGE 87

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

JOSEPH R. MANNING, JR., ESQ.
4667 MACARTHUR BLVD., STE. 150
NEWPORT BEACH, CA 92660

**Exhibit B**

**COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF**
31

Documents provided by DataTree LLC via its proprietary imaging and delivery system. Copyright 2005, All rights reserved.

RECORDING REQUESTED BY:
**WORLD SAVINGS BANK**

WHEN RECORDED MAIL TO:
**WORLD SAVINGS BANK**
**FINAL DOCUMENTATION**
**CLOSING DEPARTMENT**
**P.O. BOX 659548**
**SAN ANTONIO, TX 78265-9548**

**LOAN NUMBER:** 0041949603

**NOTE AMOUNT:** $525,000.00

Recorded in Official Records, Orange County
Tom Daly, Clerk-Recorder

57.00

**2006000086599 01:49pm 02/07/06**

104 18 D11 19

0.00 0.00 0.00 0.00 51.00 0.00 0.00 0.00

FOR RECORDER'S USE ONLY

## DEED OF TRUST

THIS IS A FIRST DEED OF TRUST WHICH SECURES A NOTE WHICH CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE, FREQUENCY AND AMOUNT OF PAYMENTS AND PRINCIPAL BALANCE (INCLUDING FUTURE ADVANCES AND DEFERRED INTEREST). AT LENDER'S OPTION THE SECURED NOTE MAY BE RENEWED OR RENEGOTIATED. THE SECURED NOTE PROVIDES FOR MONTHLY PAYMENTS OF PRINCIPAL AND INTEREST.

THE MAXIMUM AGGREGATE PRINCIPAL BALANCE SECURED BY THIS DEED OF TRUST IS $656,250.00 WHICH IS 125% OF THE ORIGINAL PRINCIPAL NOTE AMOUNT.

**I.    DEFINITIONS OF WORDS USED IN THIS DEED OF TRUST**
    (A)  **Security Instrument.** This Deed of Trust, which is dated January 30, 2006, will be called the "Security Instrument."

    (B)  **Borrower.** KEITH WINTERBOWER AND DEBRA D. WINTERBOWER, HUSBAND AND WIFE sometimes will be called "Borrower" and sometimes simply "I" or "me."

    (C)  **Lender.** WORLD SAVINGS BANK, FSB, ITS SUCCESSORS AND/OR ASSIGNEES, will be called "Lender." Lender is a FEDERAL SAVINGS BANK, which is organized and exists under the laws of the United States. Lender's address is 1901 Harrison Street, Oakland, CA 94612 .

SD001A (2004-03-2)
DEFERRED INTEREST

DEED OF TRUST-ADJUSTABLE
Page 1

CA

LENDER'S USE ONLY

0 0 3

NOTICE OF REMOVAL
EXHIBIT A PAGE 89

Documents provided by DataTree LLC via its proprietary imaging and delivery system. Copyright 2003, All rights reserved.

0041949603

(D) **Note.** The note signed by Borrower and having the same date as this Security Instrument, including all extensions, renewals, substitutions and modifications thereof, will be called the "Note." The Note shows that I owe Lender the original principal amount of U.S. **$525,000.00,** plus accrued and deferred interest and such other amounts as stated in the Note. I have promised to pay this debt in regularly scheduled periodic payments as provided in the Note and to pay the debt in full by March 1, 2036 ("Maturity Date").

(E) **Property.** The property that is described below in Section III entitled "Description of the Property" will be called the "Property."

(F) **Sums Secured.** The amounts described below in Section II entitled "Borrower's Transfer of Rights in the Property" sometimes will be called the "Sums Secured."

(G) **Person.** Any person, organization, governmental authority or other party will be called "Person."

(H) **Trustor, Beneficiary, Trustee.** Borrower is the "Trustor," Lender is the "Beneficiary" and **Golden West Savings Association Service Co., A California Corporation is the "Trustee."**

II.   **BORROWER'S TRANSFER OF RIGHTS IN THE PROPERTY**

I irrevocably grant and convey the Property to the Trustee, in trust for Lender, with a power of sale subject to the terms of this Security Instrument. This means that, by signing this Security Instrument, I am giving Lender and Trustee those rights that are stated in this Security Instrument and also those rights that the law gives to lenders who are beneficiaries of a deed of trust and to trustees of a deed of trust. I am giving Lender and Trustee these rights to protect Lender from possible losses that might result if I fail to:

(i)    pay all amounts owed to Lender under the Note and all other notes secured by this Security Instrument, called the "Secured Notes," including future advances made by Lender and any changes to the Secured Notes made with the written consent of Lender;

(ii)    pay, with interest, any amounts that Lender spends under Paragraphs 2 and 7 below to protect the value of the Property and Lender's rights in the Property; and

(iii)    keep all of my other promises and agreements under this Security Instrument, the Secured Notes and any changes to the Secured Notes made with the written consent of Lender.

III.   **DESCRIPTION OF THE PROPERTY**

I give Trustee rights in the Property described below:

(i)    The Property which is located at **2333 COLGATE DRIVE, COSTA MESA, CA  92626-6305.** The legal description of the Property is attached as Exhibit "A" which is made a part of this Security Instrument. This Property is called the "Described Property."

(ii)    All buildings and other improvements that are located on the Described Property;

NOTICE OF REMOVAL
EXHIBIT A PAGE 90

Documents provided by DataTree LLC via its proprietary imaging and delivery system. Copyright 2003, All rights reserved.

0041949603

(iii)   All rights in other property that I have as owner of the Described Property. These rights are known as easements, rights and appurtenances attached to the Property;

(iv)   All rents or royalties and other income from the Described Property;

(v)   All mineral, oil and gas rights and profits, water rights and stock that are part of the Described Property;

(vi)   All rights that I have in the land which lies in the streets or roads in front of, behind or next to, the Described Property;

(vii)   All fixtures that are now or in the future will be on the Described Property or on the property described in subsection (i) of this Section;

(viii)   All of the rights and property described in subsections (ii) through (vii) of this Section that I acquire in the future;

(ix)   All replacements of or additions to the property described in subsections (ii) through (viii) of this Section; and

(x)   All of the amounts that I pay to Lender under Paragraph 2 below.

IV.   BORROWER'S RIGHT TO GRANT A SECURITY INTEREST IN THE PROPERTY AND BORROWER'S OBLIGATION TO DEFEND OWNERSHIP OF THE PROPERTY

I promise that: (i) I lawfully own the Property; (ii) I have the right to grant and convey the Property to Trustee; and (iii) there are no outstanding claims, charges, liens or encumbrances against the Property, except for those which are of public record.

I give a general warranty of title to Lender. This means that I will be fully responsible for any losses which Lender suffers because someone other than myself and the Trustee has some of the rights in the Property which I promise that I have. I promise that I will defend my ownership of the Property against any claims of such rights.

## COVENANTS

I promise and I agree with Lender as follows:

1.   BORROWER'S PROMISE TO PAY

I will pay to Lender, on time, all principal and interest due under the Secured Notes and any prepayment and late charges due under the Secured Notes.

2.   PAYMENTS FOR TAXES AND INSURANCE

(A)   Borrower's Obligations

I will pay all amounts necessary to pay taxes and hazard insurance premiums on the Property as well as assessments, leasehold payments, ground rents or mortgage insurance premiums (if any).

NOTICE OF REMOVAL
EXHIBIT A PAGE 91

Documents provided by DataTree LLC via its proprietary imaging and delivery system. Copyright 2003, All rights reserved.

**(B)    Escrow Accounts**

0041949603

Subject to applicable law, no escrow shall be required except upon written demand by Lender, in which case, I shall pay to Lender on the day payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes, penalties and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; (d) yearly flood insurance premiums, if any; and (e) yearly mortgage insurance premiums, if any. These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for an escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. § 2601 et seq. ("RESPA"), unless another law that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items. Lender may not charge me for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays me interest on the Funds and/or applicable law permits Lender to make such a charge. However, Lender may require me to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay me any interest or earnings on the Funds. Lender shall give to me, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to me for the excess Funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify me in writing, and, in such case I shall pay to Lender the amount necessary to make up the deficiency or shortage. I shall make up the deficiency or shortage in accordance with the requirements of the Lender, at its sole discretion, in the manner and times prescribed by RESPA.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to me any Funds held by Lender. If, under Paragraph 28, Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

NOTICE OF REMOVAL
EXHIBIT A PAGE 92

Documents provided by DataTree LLC via it's proprietary imaging and delivery system. Copyright 2003, All rights reserved.

0041949603

**3.     APPLICATION OF BORROWER'S PAYMENTS**

Unless applicable law requires otherwise, Lender will apply each of my payments under the Secured Notes and under Paragraphs 1 and 2 above in the following order and for the following purposes:

First, to pay prepayment charges due under the Secured Notes;

Second, to pay any advances due to Lender under this Security Instrument;

Third, to pay the amounts due to Lender under Paragraph 2 above;

Fourth, to pay interest due under the Secured Notes;

Fifth, to pay deferred interest due under the Secured Notes;

Sixth, to pay principal due under the Secured Notes;

Last, to pay late charges due under the Secured Notes.

**4.     BORROWER'S OBLIGATION TO PAY CHARGES, ASSESSMENTS AND CLAIMS**

I will pay all taxes, assessments and any other charges and fines that may be imposed on the Property and that may be superior to this Security Instrument.

I will also make payments due under my lease if I am a tenant on the Property and I will pay ground rents (if any) due on the Property. I will pay these amounts either by making the payments to Lender that are described in Paragraph 2 above or by making the payments on time to the Person owed them.

Any claim, demand or charge that is made against property because an obligation has not been fulfilled is known as a lien. I will promptly pay or satisfy all liens against the Property that may be superior to this Security Instrument. However, this Security Instrument does not require me to satisfy a superior lien if: (A) I agree, in writing, to pay the obligation which gave rise to the superior lien and Lender approves in writing the way in which I agree to pay that obligation; or (B) in good faith, I argue or defend against the superior lien in a lawsuit so that, during the lawsuit, the superior lien may not be enforced and no part of the Property must be given up; or (C) I secure from the holder of that other lien an agreement, approved in writing by Lender, that the lien of this Security Instrument is superior to the lien held by that Person. If Lender determines that any part of the Property is subject to a superior lien, Lender may give to me a notice identifying the superior lien. I will pay or satisfy the superior lien or take one or more of the actions set forth above within 10 days of the giving of notice.

**5.     BORROWER'S OBLIGATION TO MAINTAIN INSURANCE**

At my sole cost and expense, I will obtain and maintain hazard insurance to cover all buildings and other improvements that now are or in the future will be located on the Property. The insurance must cover loss or damage caused by fire, hazards normally covered by "extended coverage" hazard insurance policies and other hazards for which Lender requires coverage. The insurance must be in the amounts and for the periods of time required by Lender. I may choose the insurance company but my choice is subject to Lender's approval. Lender may not refuse to approve my choice unless the refusal is reasonable. All of these insurance policies and renewals of the policies must include what is known as a **Standard Mortgagee Clause** to protect Lender. The form of all policies and renewals must be acceptable to Lender. Lender will have the right to hold the policies and renewals. If Lender requires, I will promptly give Lender all receipts of paid premiums and renewal notices that I receive.

SD001E (2004-03-2)                          DEED OF TRUST-ADJUSTABLE                                    **CA**
                                                    Page 5

NOTICE OF REMOVAL
EXHIBIT A PAGE 93

Documents provided by DataTree LLC via its proprietary imaging and delivery system. Copyright 2003, All rights reserved

0041949603

If I obtain earthquake insurance, any other hazard insurance, credit life and/or disability insurance, or any other insurance on or relating to the Property or the Secured Notes and which are not specifically required by Lender, I will name Lender as loss payee of any proceeds.

If there is a loss or damage to the Property, I will promptly notify the proper insurance company and Lender. If I do not promptly prove to the insurance company that the loss or damage occurred, then Lender may do so.

The amount paid by the insurance company is called "Proceeds." Any Proceeds received will be applied first to reimburse Lender for costs and expenses incurred in connection with obtaining the Proceeds, and then, at Lender's option and in the order and proportion as Lender may determine in its sole and absolute discretion, regardless of any impairment or lack of impairment of security, as follows: (A) to the extent allowed by applicable law, to the Sums Secured in a manner that Lender determines and/or (B) to the payment of costs and expenses of necessary repairs or to the restoration of the Property to a condition satisfactory to Lender, such application to be made in the manner and at the times as determined by Lender.

If I abandon the Property or if I do not answer, within 30 days, a notice from Lender or the insurance company stating that the insurance company has offered to settle a claim, Lender may collect the Proceeds. I will notify Lender immediately of any offer to settle a claim I receive from the insurance company. I will immediately deliver any Proceeds I receive from any insurer or other persons to Lender. Lender may use the Proceeds to repair or restore the Property or to pay the Sums Secured. The 30-day period will begin when the notice is given.

If any Proceeds are used to reduce the amount of the outstanding balance of the Sums Secured, that use will not delay the due date or change the amount of any of my regularly scheduled payments under the Secured Notes and under Paragraphs 1 and 2 above. However, Lender and I may agree in writing to delays or changes.

If Lender acquires the Property under Paragraph 28 below, all of my rights in the insurance policies will belong to Lender. Also, all of my rights in any Proceeds which are paid because of damage that occurred before the Property is acquired by Lender or sold will belong to Lender. However, Lender's rights in those Proceeds will not be greater than the total amount of the Sums Secured immediately before the Property is acquired by Lender or sold.

If I am required by Lender to pay premiums for mortgage insurance, I will pay the premiums until the requirement for mortgage insurance ends according to my written agreement with Lender or according to law.

6.  BORROWER'S OBLIGATION TO MAINTAIN THE PROPERTY AND TO FULFILL ANY LEASE OBLIGATIONS

I will keep the Property in good repair including, but not limited to, keeping the Property free from debris, mold, termites, dry rot and other damaging pests and infestations. I will not destroy or substantially change the Property and I will not allow the Property to deteriorate. I will keep and maintain the Property in compliance with any state or federal health and safety laws, and hazardous materials and hazardous waste laws. I will not use, generate, manufacture or store any hazardous materials or hazardous waste on, under or about the Property. I will indemnify, defend and hold harmless Lender and its employees, officers and directors and their successors from any claims, damages or costs for required or necessary repair or the removal of mold, termites, dry rot, other damaging pests and infestations and hazardous waste or any other hazardous materials claim. If I do not own but am a tenant on the Property, I will fulfill my obligations under my lease. I also agree that, if I acquire the fee title to the Property, my lease interest and the fee title will not merge unless Lender agrees to the merger in writing.

SD001F (2004-03-2)

DEED OF TRUST-ADJUSTABLE
Page 6

CA

NOTICE OF REMOVAL
EXHIBIT A PAGE 94

Documents produced by DataTree LLC via it's proprietary imaging and delivery system. Copyright 2000, All rights reserved.

0041949603

### 7.    LENDER'S RIGHT TO PROTECT ITS RIGHTS IN THE PROPERTY

If: (A) I do not keep my promises and agreements made in this Security Instrument, or (B) someone, including me, begins a legal proceeding that may significantly affect Lender's rights in the Property (including but not limited to any manner of legal proceeding in bankruptcy, in probate, for condemnation or to enforce laws or regulations), then Lender may do and pay for whatever it deems reasonable or appropriate to protect the Lender's rights in the Property. Lender's actions may include, without limitation, appearing in court, paying reasonable attorneys' fees, purchasing insurance required under Paragraph 5, above (such insurance may cost more and provide less coverage than the insurance I might purchase), and entering on the Property to make repairs. Lender must give me notice before Lender may take any of these actions. Although Lender may take action under this Paragraph 7, Lender does not have to do so. Any action taken by Lender under this Paragraph 7, will not release me from my obligations under this Security Instrument.

I will pay to Lender any amounts which Lender advances under this Paragraph 7 with interest, at the interest rate in effect under the Secured Notes. I will pay those amounts to Lender when Lender sends me a notice requesting that I do so. Interest on each amount will begin to accrue on the date that the amount is advanced by Lender. However, Lender and I may agree in writing to terms that are different from those in this Paragraph 7. This Security Instrument will protect Lender in case I do not keep this promise to pay those amounts with interest.

### 8.    LENDER'S RIGHT TO INSPECT THE PROPERTY

Lender, and others authorized by Lender, may enter upon and inspect the Property. They must do so in a reasonable manner and at reasonable times. Before or at the time an inspection is made, Lender must give me notice stating a reasonable purpose for the inspection.

### 9.    AGREEMENTS ABOUT GOVERNMENTAL TAKING OF THE PROPERTY

I assign to Lender all my rights: (A) to proceeds of all awards or claims for damages resulting from condemnation, eminent domain or other governmental taking of all or any part of the Property; and (B) to proceeds from a sale of all or any part of the Property that is made to avoid condemnation, eminent domain or other governmental taking of the Property. All of those proceeds will be paid to Lender. If I receive any such proceeds, I will immediately deliver them to Lender.

If all of the Property is taken, the proceeds will be used to reduce the Sums Secured. If any of the proceeds remain after the Sums Secured have been paid in full, the remaining proceeds will be paid to me. Unless Lender and I agree otherwise in writing, if only a part of the Property is taken, Sums Secured will be reduced only by the amount of proceeds multiplied by the following fraction: (A) the total amount of the Sums Secured immediately before the taking, divided by (B) the fair market value of the Property immediately before the taking. The remainder of the proceeds will be paid to me.

If I abandon the Property or if I do not answer, within 30 days, a notice from Lender stating that a governmental authority has offered to make a payment or to settle a claim for damages, Lender has the authority to collect the proceeds and settle the claim. Lender may then use the proceeds to reduce the Sums Secured. The 30-day period will begin when the notice is given.

If any proceeds are used to reduce the amount of the outstanding principal of the Secured Notes, that use will not delay the due date or change the amount of any of my regularly scheduled payments under the Secured Notes and under Paragraphs 1 and 2 above. However, Lender and I may agree in writing to delays or changes.

NOTICE OF REMOVAL
EXHIBIT A PAGE 95

Documents provided by DeskTree LLC via it's proprietary imaging and delivery system. Copyright 2003, All rights reserved.

0041949603

**10.     CONTINUATION OF BORROWER'S OBLIGATIONS AND OF LENDER'S RIGHTS**

**(A)     Borrower's Obligations**

Lender may allow a Person who takes over my rights and obligations subject to this Security Instrument to delay or to change the amount of the payments of principal and interest due under the Secured Notes or under this Security Instrument. Even if Lender does this, however, that Person and I will both still be fully obligated under the Secured Notes and under this Security Instrument.

Lender may allow those delays or changes for a Person who takes over my rights and obligations, even if Lender is requested not to do so. Lender will not be required to bring a lawsuit against such a Person for not fulfilling obligations under the Secured Notes or under this Security Instrument, even if Lender is requested to do so.

**(B)     Lender's Rights**

Even if Lender does not exercise or enforce any of its rights under this Security Instrument or under the law, Lender will still have all of those rights and may exercise and enforce them in the future. Even if Lender obtains insurance, pays taxes, or pays other claims, charges or liens against the Property, Lender will have the right under Paragraph 28 below to demand that I make immediate payment in full of the Sums Secured.

**11.     OBLIGATIONS OF BORROWER, CO-SIGNORS AND OF PERSONS TAKING OVER BORROWER'S RIGHTS OR OBLIGATIONS**

Except as provided below, if more than one Person signs this Security Instrument as Borrower, each of us is fully obligated to keep all of Borrower's promises and obligations contained in this Security Instrument. Lender may enforce Lender's rights under this Security Instrument against each of us individually or against all of us together. This means that any one of us may be required to pay all of the Sums Secured.

Any Borrower who co-signs this Security Instrument but does not execute the Note (a "co-signor"): (a) is co-signing this Security Instrument only to mortgage, grant and convey the co-signor's interest in the Property under the terms of this Security Instrument; (b) is not personally obligated to pay the sums secured by this Security Instrument; and (c) agrees that Lender and any other Borrower can agree to extend, modify, forbear or make any accommodations with regard to the terms of this Security Instrument or the Note without the co-signor's consent.

Any Person who takes over my rights or obligations under this Security Instrument will have all of my rights and will be obligated to keep all of my promises and agreements made in this Security Instrument. Similarly, any Person who takes over Lender's rights or obligations under this Security Instrument will have all of Lender's rights and will be obligated to keep all of Lender's agreements made in this Security Instrument.

**12.     MAXIMUM LOAN CHARGES**

If the loan secured by this Security Instrument is subject to a law which sets maximum loan charges, and that law is finally interpreted so that the interest or other loan charges collected or to be collected in connection with the loan exceed permitted limits, then: (A) any such loan charge shall be reduced by the amount necessary to reduce the charge to the permitted limits and (B) any sums already collected from Borrower which exceeded permitted limits will be refunded to Borrower. Lender may choose to make this refund by reducing the outstanding principal balance of the Secured Notes or by making a direct payment to Borrower. If a refund reduces principal, the reduction will be treated as a partial prepayment without any prepayment charge under the Secured Notes.

NOTICE OF REMOVAL
EXHIBIT A PAGE 96

Documents provided by DataTree LLC via it's proprietary imaging and delivery system. Copyright 2003, All rights reserved

0041949603

13.   **LEGISLATION AFFECTING LENDER'S RIGHTS**

If a change in applicable law would make any provision of the Secured Notes or this Security Instrument unenforceable, Lender may require that I make immediate payment in full of all Sums Secured by this Security Instrument.

14.   **NOTICES REQUIRED UNDER THIS SECURITY INSTRUMENT**

Any notice that must be given to me under this Security Instrument will be given by delivering it or by mailing it by first class mail unless applicable law requires use of another method. The notice will be addressed to me at **2333 COLGATE DRIVE, COSTA MESA, CA  92626-6305.** A notice will be given to me at an alternative address if I give Lender notice of my alternative address. I may give notice to Lender of my alternative address in writing or by calling Lender's customer service telephone number provided on my billing statement. I may designate only one mailing address at a time for notification purposes. Except as permitted above for changes of address, any notice that must be given to Lender under this Security Instrument will be given by mailing it by first class mail to Lender's address stated in Section I.(C) above entitled, "Definitions of Words Used In This Deed of Trust," unless Lender gives me notice of a different address. Any notice required by this Security Instrument is given when it is mailed or when it is delivered according to the requirements of this Paragraph 14 or of applicable law.

15.   **GOVERNING LAW; SEVERABILITY**

This Security Instrument and the Secured Notes shall be governed by and construed under federal law and federal rules and regulations, including those for federally chartered savings institutions ("Federal Law") and, to the extent Federal Law does not apply, by the law of the jurisdiction in which the Property is located. In the event that any of the terms or provisions of this Security Instrument or the Secured Notes are interpreted or construed by a court of competent jurisdiction to be void, invalid or unenforceable, such decision shall affect only those provisions so construed or interpreted and shall not affect the remaining provisions of this Security Instrument or the Secured Notes.

16.   **BORROWER'S COPY**

I acknowledge the receipt of one conformed copy of the Secured Notes and of this Security Instrument.

17.   **LENDER'S RIGHTS TO RENTAL PAYMENTS AND TO TAKE POSSESSION OF THE PROPERTY**

If Lender requires immediate payment in full or if I abandon the Property, then Lender, Persons authorized by Lender, or a receiver appointed by a court at Lender's request may: (A) collect the rental payments, including overdue rental payments, directly from the tenants; (B) enter upon and take possession of the Property; (C) manage the Property; and (D) sign, cancel and change rental agreements and leases. If Lender notifies the tenants that Lender has the right to collect rental payments directly from them under this Paragraph 17, I agree that the tenants may make those rental payments to Lender without having to ask (i) Lender whether I have failed to keep my promises and agreements under this Security Instrument, or (ii) me for my permission to do so.

If Lender acts to have the Property sold after a Breach of Duty as defined in Paragraph 28, I understand and agree that: (A) my right to occupy the Property ceases at the time the Property is sold; (B) I shall have no right to occupy the Property after such sale without the written consent of the new owner of the Property; and (C) my wrongful and unlawful possession of the Property may subject me to monetary damages, including the loss of reasonable rent and the cost of eviction. All rental payments collected by

NOTICE OF REMOVAL
EXHIBIT A PAGE 97

Documents provided by DataTree LLC via its proprietary imaging and delivery system. Copyright 2007, All rights reserved.

0041949603

Lender or by a receiver, other than the rent paid by me under this Paragraph 17, will be used first to pay the costs of collecting rental payments and of managing the Property. If any part of the rental payments remains after those costs have been paid in full, the remaining part will be used to reduce the Sums Secured. The costs of managing the Property may include the receiver's fees, reasonable attorneys' fees and the costs of any necessary bonds.

**18.   INJURY TO PROPERTY; ASSIGNMENT OF RIGHTS**

An assignment is a transfer of rights to another. I may have rights to bring legal action against persons, other than Lender, for injury or damage to the Property or in connection with the loan made to me by Lender and which arose or will arise before or after the date of this Security Instrument. These rights to bring legal action may include but are not limited to an action for breach of contract, fraud, concealment of a material fact, or for intentional or negligent acts. I assign these rights, and any and all proceeds arising from these rights, as permitted by applicable law, to Lender. Lender may, at its option, enforce these rights in its own name and may apply any proceeds resulting from this assignment to the Sum Secured and this Security Instrument after deducting any expenses, including attorneys' fees, incurred in enforcing these rights. At the request of Lender, I will sign any further assignments or other documents that may be necessary to enforce this assignment. I will notify Lender immediately if I believe I have the right to bring any such legal action against any persons, and will notify Lender immediately if I assert any claim or demand against or commence any legal action against any such person. If I receive any proceeds from any persons besides Lender in connection with any such claim, demand or legal action, I will immediately deliver such proceeds to Lender.

**19.   CLERICAL ERRORS**

In the event Lender at any time discovers that this Security Instrument, the Secured Notes or any other document related to this loan, called collectively the "Loan Documents," contains an error which was caused by a clerical mistake, calculation error, computer error, printing error or similar error, I agree, upon notice from Lender, to execute such documentation as Lender deems necessary to correct any such error(s) and I also agree that I will not hold Lender responsible for any damage to me which may result from any such error.

**20.   LOST, STOLEN OR MUTILATED DOCUMENTS**

If any of the Loan Documents are lost, stolen, mutilated or destroyed and Lender delivers to me an indemnification in my favor, signed by Lender, then I will sign and deliver to Lender a Loan Document identical in form and content which will have the effect of the original for all purposes.

**21.   WAIVER OF STATUTE OF LIMITATIONS**

I will waive, within applicable law, the pleading of the statute of limitations as a defense to enforce this Security Instrument, including any obligations referred to in this Security Instrument or Secured Notes.

**22.   CAPTIONS**

The captions and headings at the beginning of each paragraph of this Security Instrument are for reference only and will not be used in the interpretation of any provision of this Security Instrument.

**23.   MODIFICATION**

This Security Instrument may be modified or amended only by an agreement in writing signed by Borrower and Lender.

**24.   CONDOMINIUM, COOPERATIVE AND PLANNED UNIT DEVELOPMENT OBLIGATIONS**

If the Property is a unit in a condominium, cooperative or planned unit development, each of which shall be called the "Project," and I have an interest in the common elements of the Project, then Lender and I agree that:

**(A)**   If an owners association or other entity, called "Owners Association," holds title to Property for the benefit or use of the Project and its members or shareholders, the Property also includes my interest in the Owners Association and the uses, proceeds and benefits of my interest.

SD001J (2004-03-2)

DEED OF TRUST-ADJUSTABLE
Page 10

CA

Documents provided by DataTree LLC via it's proprietary imaging and delivery system. Copyright 2003, All rights reserved.

'0041949603'

(B)     The following are called the "Constituent Documents:" (i) The declaration or any other document which created the Project; (ii) By-laws of the Owners Association; (iii) Code of regulations for the Project; (iv) Articles of incorporation, trust instrument or equivalent document which creates the Owners Association; (v) The Project's covenants, conditions and restrictions; (vi) Other equivalent documents.

I shall perform all of my obligations under the Constituent Documents, including my obligation to pay, when due, all dues and assessments. If I do not pay the dues and assessments when due, Lender may, at its option, pay them. I will pay to Lender any amounts which Lender advances under this Paragraph 24 according to the terms described in Paragraph 7 above.

(C)     If the Owners Association maintains, with an insurance company reasonably acceptable to Lender, a master or blanket policy on the Project which is satisfactory to Lender and which provides insurance coverage on the terms, in the amounts, for the periods, and against the hazards Lender requires, including fire and hazards included within the term "extended coverage," and Lender is provided with evidence of such master or blanket policy, then: (i) Lender waives the provision in Paragraph 2(B) above for the payment to Lender of the estimated yearly premium installments for hazard insurance on the Property; and (ii) hazard insurance coverage on the Property as required by Paragraph 5 above is deemed to be satisfied to the extent that the required coverage is provided by the Owners Association policy. I shall give Lender prompt notice of any lapse in the required hazard insurance coverage. I shall provide a copy of such master or blanket policy to Lender annually.

In the event of a distribution of any hazard insurance proceeds, including without limitation any earthquake or special hazards insurance whether or not such coverage was required by Lender, in lieu of restoration or repair following a loss to the Property, whether to the unit or to common elements, any proceeds payable to me are hereby assigned and shall be paid to Lender for application to the Sums Secured by this Security Instrument, with any excess paid to me. If I receive any such proceeds, I will immediately deliver them to Lender or otherwise apply them as set forth above.

I shall take such actions as may be reasonable to insure that the Owners Association maintains a public liability insurance policy acceptable to Lender in form, amount and extent of coverage.

(D)     I shall not, except after notice to Lender and with Lender's prior written consent, either partition or subdivide the Property or consent to: (i) the abandonment or termination of the Project, except for abandonment or termination required by law in the case of substantial destruction by fire or other casualty or in the case of condemnation, eminent domain or other governmental taking; (ii) any amendment to any provision of Constituent Documents unless the provision is for the express benefit of Lender or of lenders generally; (iii) termination of professional management and assumption of self-management of the Owners Association; or (iv) any action which would have the effect of rendering the master or blanket hazard insurance policy and/or the public liability insurance coverage maintained by the Owners Association unacceptable to Lender.

25.     FUTURE ADVANCES
At Borrower's request, Lender, at its option (but before release of this Security Instrument or the full reconveyance of the Property described in the Security Instrument) may lend future advances, with interest, to Borrower. Such future advances, with interest, will then be additional Sums Secured under this Security Instrument.

NOTICE OF REMOVAL
EXHIBIT A PAGE 99

Documents provided by DataTree LLC via it's proprietary imaging and delivery system. Copyright 2003, All rights reserved

0041949603

26.   AGREEMENTS ABOUT LENDER'S RIGHTS IF THE PROPERTY IS SOLD OR TRANSFERRED

   **Acceleration of Payment of Sums Secured.** Lender may, at its option, require immediate payment in full of all Sums Secured by this Security Instrument if all or any part of the Property, or if any right in the Property, is sold or transferred without Lender's prior written permission. Lender also may, at its option, require immediate payment in full if Borrower is not a natural Person and a beneficial interest in Borrower is sold or transferred without Lender's prior written permission. However, Lender shall not require immediate payment in full if this is prohibited by Federal Law in effect on the date of the Security Instrument.

   If Lender exercises the option to require immediate payment in full, Lender will give me notice of acceleration. If I fail to pay all Sums Secured by this Security Instrument immediately, Lender may then or thereafter invoke any remedies permitted by this Security Instrument without further notice to or demand on me.

   **Exception to Acceleration of Payment of Sums Secured.** If the sale or transfer of all or any part of the Property, or of a beneficial interest in Borrower, if Borrower is not a natural Person, is the first one to occur after the date of this Security Instrument, Lender will not exercise the option to accelerate payment in full of all Sums Secured and the loan may be assumed if:

   (i)   Lender receives a completed written application from transferee to evaluate the creditworthiness of transferee as if a new loan were being made to the transferee by Lender;

   (ii)   Lender approves the creditworthiness of the transferee in writing;

   (iii)   transferee makes a cash downpayment sufficient to meet Lender's then current underwriting standards;

   (iv)   an assumption fee, in an amount to be determined by Lender (but not to exceed 1% of the then outstanding balance of Principal and Interest under the Secured Notes at the time of sale or transfer of the Property or of the interest in the Borrower) is paid to Lender; and

   (v)   the transferee executes an assumption agreement which is satisfactory to Lender. Such assumption agreement may provide, if required by Lender, that the transferee open a deposit account with Lender or with a bank or other depository institution approved by Lender, to facilitate direct payments if direct payments are required in the Note.

   The loan may be assumed under its then existing terms and conditions with one exception; the Lifetime Rate Cap may be changed. The Lifetime Rate Cap shall be changed to an interest rate which is the sum of the interest rate in effect on the date of a sale or transfer of the Property or beneficial interest in Borrower plus 5 percentage points, if that sum exceeds the Lifetime Rate Cap stated in the Secured Notes.

27.   SUBSTITUTION OF TRUSTEE
   I agree that Lender may at any time appoint a successor trustee and that Person shall become the Trustee under this Security Instrument as if originally named as Trustee.

SD001L (2004-03-2)                        DEED OF TRUST-ADJUSTABLE                        CA
                                                  Page 12

NOTICE OF REMOVAL
EXHIBIT A PAGE 100

Documents provided by DataTree LLC via it's proprietary imaging and delivery system. Copyright 2003, All rights reserved.

0041949603

28.     **RIGHTS OF THE LENDER IF THERE IS A BREACH OF DUTY**

It will be called a "Breach of Duty" if (i) I do not pay the full amount of each regularly scheduled payment on the date it is due; or (ii) I fail to perform any of my promises or agreements under the Note or this Security Instrument; or (iii) any statement made in my application for this loan was materially false or misleading or if any statement in my application for this loan was materially false or misleading by reason of my omission of certain facts; or (iv) I have made any other statement to Lender in connection with this loan that is materially false or misleading. If there is a Breach of Duty by me, Lender may demand an immediate payment of all sums secured.

If there is a Breach of Duty by me, Lender may exercise the power of sale, take action to have the Property sold under applicable law, and invoke such other remedies as may be permitted under any applicable law.

Lender does not have to give me notice of a Breach of Duty. If Lender does not make a demand for full payment of the Sums Secured upon a Breach of Duty, Lender may make a demand for full payment of the Sums Secured upon any other Breach of Duty.

If there is a Breach of Duty, Lender may also take action to have a receiver appointed to collect rents from any tenants on the Property and to manage the Property. The action to appoint a receiver may be taken without prior notice to me and regardless of the value of the Property.

The sale of the Property may be postponed by or at the direction of Lender. If the Property is sold, I agree that it may be sold in one parcel. I also agree that Lender may add to the amount that I owe to Lender all legal fees, costs, allowances, and disbursements incurred as a result of the action to sell the Property.

Lender will apply the proceeds from the sale of the Property in the following order: (A) to all fees, expenses and costs incurred in connection with the sale, including but not limited to trustees' and attorneys' fees, if any; (B) to all Sums Secured by this Security Instrument; and (C) any excess to the Person or Persons legally entitled to it.

29.     **RECONVEYANCE**

Upon payment of all Sums Secured by this Security Instrument, Lender shall request Trustee to reconvey the Property and shall surrender this Security Instrument and all Secured Notes to Trustee. Trustee shall reconvey the Property without warranty to Borrower. Lender may charge Borrower a reasonable fee for reconveying the Property, but only if the fee is paid to a third party (including the Trustee) for services rendered and the charging of the fee is permitted, whether expressly or by lack of express prohibition, under applicable law. If the fee charged does not exceed any maximum fee set by applicable law, the fee is conclusively presumed to be reasonable.

30.     **STATEMENT OF OBLIGATION**

Lender may collect a fee of $60.00, or such greater maximum amount as may from time to time be allowed by law, for furnishing any statement of obligation with respect to this Security Instrument or the Secured Notes.

NOTICE OF REMOVAL
EXHIBIT A PAGE 101

Documents provided by DataTree LLC via it's proprietary imaging and delivery system. Copyright 2003, All rights reserved.

0041949603

**31.   ( X )   QUICK QUALIFYING LOAN PROGRAM**

I have qualified for this loan by making statements of fact which were relied upon by Lender to approve the loan rapidly. This loan is called a "Quick Qualifying Loan." I have stated and I confirm that: (A) I do not have any other Quick Qualifying Loans with Lender; (B) I have agreed to not further encumber the Property and do not intend to further encumber the Property for at least six months after the date of the Secured Notes and this Security Instrument; and (C) if I am purchasing the Property, all of the terms of the purchase agreement submitted to Lender are true and the entire down payment is cash from my own funds.

If any of the statements of fact that I have made are materially false or misleading, I will be in default under the Secured Notes and this Security Instrument. If I am in such default, Lender may, at its option, increase the interest rate and margin subject to the Lifetime Rate Cap stated in the Secured Notes.

**32.   ( X )   OWNER OCCUPANCY**

Lender has relied upon statements of fact which I have made to qualify for this loan. I have stated and confirm that: (A) the Property is my personal and primary residence; (B) I will occupy the Property not later than 30 days after this Security Instrument is recorded; and (C) I will use the Property as my residence for at least 12 months from the date this Security Instrument is recorded.

If any of the statements of fact that I have made are materially false or misleading, I will be in default under the Secured Notes and this Security Instrument. If I am in such default, Lender may, at its option, increase the interest rate and margin, subject to the Lifetime Rate Cap stated in the Secured Notes.

**( X )   VALUE INDICATES THAT THE PARAGRAPH APPLIES.**

**THIS SPACE INTENTIONALLY LEFT BLANK; SIGNATURE PAGE FOLLOWS.**

NOTICE OF REMOVAL
EXHIBIT A PAGE 102

Documents provided by DataTree LLC via it's proprietary imaging and delivery system. Copyright 2003, All rights reserved

0041949603

BY SIGNING BELOW, I accept and agree to the promises and agreements contained in this Security Instrument and in any rider(s) signed by me and recorded in proper official records.

(PLEASE SIGN YOUR NAME EXACTLY AS IT APPEARS BELOW)

BORROWER(S):

_____ (Seal)
KEITH WINTERBOWER

_____ (Seal)
DEBRA D. WINTERBOWER

ATTACH INDIVIDUAL NOTARY ACKNOWLEDGEMENT

SD001 (2004-03-1)        [AF1 (2004-03-1)]
                          [AL1 (2004-03-1)]        Page 15                          CA

NOTICE OF REMOVAL
EXHIBIT A PAGE 103

Documents provided by DataTree LLC via its proprietary imaging and delivery system. Copyright 2003, All rights reserved.

# ACKNOWLEDGMENT

State of California

County of *Orange* } ss.

On *Feb. 2, 2006* before me, *the undersigned* _____ (here insert name)
Notary Public, personally appeared *Keith Winterbower*
*Debra S. Winterbower*

personally known to me (or proved to me on the basis of satisfactory evidence) to be the person(s) whose name(s) is/are subscribed to the within instrument and acknowledged to me all that he/she/they executed the same in his/her/their authorized capacity(ies), and that by his/her/their signature(s) on the instrument the person(s), or the entity upon behalf of which the person(s) acted, executed the instrument.

WITNESS my hand and official seal.

MARY M. LAUER
COMM. # 1430904
NOTARY PUBLIC-CALIFORNIA
ORANGE COUNTY
COMM. EXP. JULY 15, 2007

Signature *Mary M. Lauer*

(affix seal)

ATTENTION NOTARY: Although the information requested below is OPTIONAL, it could prevent fraudulent attachment of this certificate to another document.

THIS CERTIFICATE MUST BE ATTACHED
TO THE DOCUMENT DESCRIBED AT RIGHT:

Title or Type of Document _____
Number of Pages _____ Date of Document _____
Signer(s) Other Than Named Above _____

## Lawyers Title Company
Subsidiary of
Lawyers Title Insurance Corporation

OFFICES IN:

| LOS ANGELES COUNTY | ORANGE COUNTY | INLAND EMPIRE | SAN DIEGO COUNTY | SANTA BARBARA COUNTY | VENTURA COUNTY |
|---|---|---|---|---|---|
| 800 E. Colorado Blvd. Pasadena, CA 91101 (818) 304-2700 | 18551 Von Karman Ave. Ste. 100/200 Irvine, CA 92612 (714) 223-5575 | 1845 Business Center Dr Suite 200 San Bernardino CA 92408 (800) 676-2582 | 4542 Ruffner St. San Diego, CA 92111 (619) 278-4171 | 200 E. Carrillo St. Santa Barbara, CA 93101 (805) 965-7091 | 751 Daily Dr., Suite 100, Camarillo, CA 93010 (818) 889-6631 (805) 484-2701 |

TI-1100 (Rev.1/97)

Documents provided by DataTree LLC via it's proprietary imaging and delivery system. Copyright 2003, All rights reserved

 **LandAmerica**
**Lawyers Title**

Lawyers Title Company
18551 Von Karman, Suite 100-200
Irvine, California 92612
Phone: (949) 223-5575

## PENALTY OF PERJURY AFFIDAVIT
### (GOVERNMENT CODE 27361.7)

I certify under the penalty of perjury that the notary seal on the document to which this statement is attached reads as follows:

Name of the Notary: Mary M. Lauer

Date Commission expires: 7/5/2007

County Where Bond is Filed: Irvine

Commission No.: 1430904   Manufacturer/Vendor No.: MoCI

Place of Execution: __Irvine, Ca.__   Date: February 6, 2006

Signature: _____
                    LAWYERS TITLE COMPANY

I further certify under the penalty of perjury that the illegible portion of the document to which this statement is attached reads as follows (if applicable):

Date: February 6, 2006

Signature: _____
                    LAWYERS TITLE COMPANY

NOTICE OF REMOVAL
EXHIBIT A PAGE 105

Documents provided by DataTree LLC via it's proprietary imaging and delivery system. Copyright 2003, All rights reserved

WORLD SAVINGS BANK, FSB

# E X H I B I T "A"
## LEGAL DESCRIPTION

LOAN NO. 0041949603

ALL THAT CERTAIN REAL PROPERTY SITUATED IN THE COUNTY OF ORANGE STATE OF CALIFORNIA, DESCRIBED AS FOLLOWS:

Lot 50 of Tract No. 2955, in the City of Costa Mesa, as per map recorded in Book 100, Pages 19 to 23 of Miscellaneous Maps, in the office of the County Recorder of said County.

Assessor's Parcel Number:        141-472-12

NOTICE OF REMOVAL
EXHIBIT A PAGE 106

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

JOSEPH R. MANNING, JR., ESQ.
4667 MACARTHUR BLVD., STE. 150
NEWPORT BEACH, CA 92660

**Exhibit C**

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

32

Documents provided by DataTree LLC via its proprietary imaging and delivery system. Copyright 2003, All rights reserved.

RECORDING REQUESTED BY

WHEN RECORDED MAIL TO

**REGIONAL TRUSTEE SERVICES CORPORAT**
616 1st Avenue, Suite 500
Seattle, WA 98104

APN# 141-472-12
Address 2333 COLGATE DRIVE
COSTA MESA, CA 92626

11°582068

Recorded in Official Records, Orange County
Tom Daly, Clerk-Recorder

12.00

*SRU00462219458*

**2012000134486 12:23pm 03/08/12**

37 402 N34 2
0.00 0.00 0.00 0.00 3.00 0.00 0.00 0.00

**YOU ARE IN DEFAULT UNDER A DEED OF TRUST DATED 1/30/2006. UNLESS YOU TAKE ACTION TO PROTECT YOUR PROPERTY, IT MAY BE SOLD AT A PUBLIC SALE. IF YOU NEED AN EXPLANATION OF THE NATURE OF THE PROCEEDING AGAINST YOU, YOU SHOULD CONTACT A LAWYER.**

## NOTICE OF TRUSTEE'S SALE
Trustee's Sale No. 05-FWA-114954

On March 29, 2012, at 12:00 PM, AT THE NORTH FRONT ENTRANCE TO THE COUNTY COURTHOUSE, 700 CIVIC CENTER DRIVE WEST, in the City of SANTA ANA, County of ORANGE, State of CALIFORNIA, REGIONAL SERVICE CORPORATION, a California corporation, as duly appointed Trustee under that certain Deed of Trust executed by KEITH WINTERBOWER AND DEBRA D. WINTERBOWER, HUSBAND AND WIFE, as Trustors, recorded on 2/7/2006, as Instrument No. 2006000086599, of Official Records in the office of the Recorder of ORANGE County, State of CALIFORNIA, under the power of sale therein contained, WILL SELL AT PUBLIC AUCTION TO THE HIGHEST BIDDER, for cash, or cashier's check (payable at the time of sale in lawful money of the United States) without warranty express or implied as to title, use, possession or encumbrances, all right, title and interest conveyed to and now held by it as such Trustee, in and to the following described property situated in the aforesaid County and State, to-wit:

TAX PARCEL NO. 141-472-12

From information which the Trustee deems reliable, but for which Trustee makes no representation or warranty, the street address or other common designation of the above described property is purported to be 2333 COLGATE DRIVE , COSTA MESA, CA 92626.

Said property is being sold for the purpose of paying the obligations secured by said Deed of Trust, including fees and expenses of sale. The total amount of the unpaid principal balance, interest thereon, together with reasonably estimated costs, expenses and advances at the time of the initial publication of the Notice of Trustee's Sale is $620,707.41.

In compliance with California Civil Code 2923.5(c), the mortgagee, trustee, beneficiary, or authorized agent declares: that it has contacted the borrower(s) to assess their financial situation and to explore options to avoid foreclosure; or that it has made efforts to contact the borrower(s) to assess their financial situation and to explore options to avoid foreclosure by one or more of the following methods: by telephone, by United States mail; either 1st class or certified; by overnight delivery; by personal delivery; by e-mail; by face to face meeting or the borrower has surrendered the property to the mortgagee, trustee, beneficiary, or authorized agent and that the compliance with Civil Code Section 2923.5 was made at least thirty (30) days prior to the date of this Notice of Sale.

CA NOTS

**NOTICE OF REMOVAL
EXHIBIT A PAGE 108**

Documents provided by DataTree LLC via its proprietary imaging and delivery system. Copyright 2003, All rights reserved

Dated: 2/23/2012

REGIONAL SERVICE CORPORATION, Trustee

By _____

MARILEE HAKKINEN, AUTHORIZED AGENT

Agent for Trustee:      AGENCY SALES AND POSTING
                        3210 EL CAMINO REAL, SUITE 200
                        IRVINE, CA 92602
Telephone Number:       (800) 542-2550
Sale Information:       (714) 730-2727 or http://www.rtrustee.com

CA NOTS

**NOTICE OF REMOVAL**
**EXHIBIT A PAGE 109**

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

JOSEPH R. MANNING, JR., ESQ.
4667 MACARTHUR BLVD., STE. 150
NEWPORT BEACH, CA 92660

**Exhibit D**

COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF
33

# Manning Law Office, APC

CIVIL TRIALS, FORECLOSURE DEFENSE, PERSONAL INJURY, CONSUMER PROTECTION & BANKRUPTCY COUNSEL.

Attorney:
Joseph R. Manning, Jr.
Info@ManningLawOffice.com

Office: 949.200.8755
Facsimile: 866.843.8308
www.ManningLawOffice.com

4667 MacArthur Blvd., Ste. 150,
Newport Beach, CA, 92660

February 5, 2013

Wells Fargo Bank, N.A.
P.O. Box 10335
Des Moines, IA 50306-0335
Fax: (866)359-7363

Regional Service Corp.
616 1st Ave., Ste 500
Seattle, WA 98104
Fax (206) 292-4930

RE:
Loan Number:

Keith and Debra Winterbower
0041949603

Dear Sir or Madam:

This office has been retained by Keith and Debra Winterbower with regard to real property 2333 Colgate Dr., Costa Mesa, CA 92626 with lender Wells Fargo Bank and set for auction under Regional Service Corp., sale date set for February 7, 2013

Please be advised that the borrower has had a change of circumstance as their income and expenses have changed, specifically, they have decreased their expenses from $25,000 per month down to $10,000 per month. Pursuant to the 2013 CA Homeowner's Bill of Rights, a borrower shall be reviewed by the mortgage servicer for a loan modification based on a material change of financial circumstances.

Violations of the "Homeowner's Bill of Rights" are subject to regulatory agency enforcement. Material violations are also deemed to be a violation of a California charter or lender license and subject to agency administrative enforcement that could jeopardize continued engagement in California lending/servicing business [Civil Code §2924.12(d), §2924.19(d)]

At this time, there is a sale date scheduled for February 7, 2013 which is in violation of CA Civil Code §2923.6. The sale date must be postponed and the borrower would like to be evaluated for a loan modification due to their change of circumstance.

Please confirm that their loan modification will be reviewed and that the sale date has been cancelled and advise our office by Wednesday, February 6, 2013 before 5:00 p.m., or this office will seek injunctive relief from the Court, under the California Homeowner's Bill of Rights.

If you have any questions, please call me directly at (949) 200-8755.

Sincerely yours,
LAW OFFICES OF JOSEPH R. MANNING, JR.
A PROFESSIONAL CORPORATION

Joseph R. Manning, Jr., Esq.

NOTICE OF REMOVAL
EXHIBIT A PAGE 111

**TX Result Report**

P. 1
02/05/2013 13:14
Serial No.. A4FJ01001658
TC:    86149

| Addressee | Start Time | Time | Prints | Result | Note |
|---|---|---|---|---|---|
| 18663597363 | 02-05 13:13 | 00:00:49 | 001/001 | OK | |

Note: [faded illegible text]

Result: [faded illegible text]

---

# Manning Law Office, APC

CIVIL TRIALS, FORECLOSURE DEFENSE, PERSONAL INJURY, CONSUMER PROTECTION & BANKRUPTCY COUNSEL

Attorney:
Joseph R. Manning, Jr.
Info@ManningLawOffice.com

Office: 949.200.8755
Facsimile: 866.841.8808
www.ManningLawOffice.com

4667 MacArthur Blvd., Ste. 150,
Newport Beach, CA, 92660

February 5, 2013

Wells Fargo Bank, N.A.
P.O. Box 10335
Des Moines, IA 50306-0335
Fax: (866)359-7363

Regional Service Corp.
616 1st Ave., Ste 500
Seattle, WA 98104
Fax (206) 292-4930

RE:
Loan Number:

Dear Sir or Madam:

This office has been re[tained] [illegible] in regard to real property 2333
Colgate Dr., Costa Mesa, CA [illegible] Wells Fargo [illegible] for auction under Regional
Service Corp., sale date set for February [illegible]

Please be advised that the bo[rrower's] [illegible]stance as their income and expenses
have changed, specifically, they have [illegible] $25,000 per month down to $10,000
per month. Pursuant to the 2013 CA Hom[eowner's] [illegible], a borrower shall be reviewed by the
mortgage servicer for a loan modification bas[ed on] material change of financial circumstances.

Violations of the "Homeowner's Bill of Rights" are subject to regulatory agency
enforcement. Material violations are also deemed to be a violation of a California charter or lender license
and subject to agency administrative enforcement that could jeopardize continued engagement in
California lending/servicing business [Civil Code §2924.12(d), §2924.19(d)]

At this time, there is a sale date scheduled for February 7, 2013 which is in violation of CA Civil
Code §2923.6. The sale date must be postponed and the borrower would like to be evaluated for a loan
modification due to their change of circumstances.

Please confirm that their loan modification will be reviewed and that the sale date has been
cancelled and advise our office by Wednesday, February 6, 2013 before 5:00 p.m., or this office will seek
injunctive relief from the Court, under the California Homeowner's Bill of Rights.

If you have any questions, please call me directly at (949) 200-8755.

Sincerely yours,
LAW OFFICES OF JOSEPH R. MANNING, JR.
A PROFESSIONAL CORPORATION

Joseph R. Manning, Jr., Esq.

TX Result Report

P 1
02/05/2013 14:30
Serial No.   A4FJ011001658
TC:   86972

| Addressee | Start Time | Time | Prints | Result | Note |
|---|---|---|---|---|---|
| 12062924930 | 02-05 14:30 | 00:00:26 | 001/001 | OK | |

Note    TM8:Timer TX, POL:Polling, ORG:Original Size Setting, CSI:Frame Erase TX.
PGE:Forward, RELAY:Relay, MBX:Mailbox, SUB:Subaddress, SEP:Selective Polling.
ECM:ECM Communication, PWD:Password, BROADCAST:Broadcast, Original.
LMAN:IP Address Fax, I-FAX:Internet Fax.

Result   OK: Communication OK. S-OK: Stop Communication. PW-OFF: Power Switch OFF.
BUSY/NO SIGNAL, NG: Other Error, Cont: Continue, No Answer.
DOC:No Document Stored. FIL: File Error. DC:Decode Error.
MEMORY FULL, LOVER:Receiving length over.
POLLING:Polling Error. E-MAIL:Memory Document. MDN Response Error.
DEL:Compulsory Memory Document Delete. GEN:Compulsory Memory Document Send.

---

# Manning Law Office, APC

CIVIL TRIALS, FORECLOSURE DEFENSE, PERSONAL INJURY, CONSUMER PROTECTION & BANKRUPTCY COUNSEL

Attorney:
Joseph R. Manning, Jr.
Info@ManningLawOffice.com

Office: 949.200.8755
Facsimile: 866.843.8308
www.ManningLawOffice.com

4667 MacArthur Blvd., Ste. 150.
Newport Beach, CA, 92660

February 5, 2013

Wells Fargo Bank, N.A.
P.O. Box 10335
Des Moines, IA 50306-0335
Fax: (866)359-7363

Regional Service Corp.
616 1st Ave., Ste 500
Seattle, WA 98104
Fax (206) 292-4930

RE:
Loan Number:

Dear Sir or Madam:

This office has been re[...] regard to real property 2335
Colgate Dr., Costa Mesa, CA [...] set for auction under Regional
Service Corp., sale date set for Fe[...]
Please be advised that the b[...]iance as their income and expenses
have changed, specifically, they have [...]$25,000 per month down to $10,000
per month. Pursuant to the 2013 CA Hom[...], a borrower shall be reviewed by the
mortgage servicer for a loan modification base[...]al change of financial circumstances.
Violations of the "Homeowner's Bill of Rights" are subject to regulatory agency
enforcement. Material violations are also deemed to be a violation of a California charter or lender license
and subject to agency administrative enforcement that could jeopardize continued engagement in
California lending/servicing business [Civil Code §2924.12(d), §2924.19(d)].
At this time, there is a sale date scheduled for February 7, 2013 which is in violation of CA Civil
Code §2923.6. This sale date must be postponed and the borrower would like to be evaluated for a loan
modification due to their change of circumstances.
Please confirm that their loan modification will be reviewed and that the sale date has been
cancelled and advise our office by Wednesday, February 6, 2013 before 5:00 p.m., or this office will seek
injunctive relief from the Court, under the California Homeowner's Bill of Rights.

If you have any questions, please call me directly at (949) 200-8755.

Sincerely yours,
LAW OFFICES OF JOSEPH R. MANNING, JR.
A PROFESSIONAL CORPORATION

Joseph R. Manning, Jr., Esq.

NOTICE OF REMOVAL
EXHIBIT A PAGE 113

1  Joseph R. Manning, Jr., Esq. (State Bar No. 223381)
   THE LAW OFFICES OF JOSEPH R. MANNING, JR.
2  A PROFESSIONAL CORPORATION
   4667 MacArthur Blvd., Suite 150
3  Newport Beach, CA 92660
   (949) 200-8755
4  (866) 843-8308

5  Attorneys for PLAINTIFF KEITH WINTERBOWER

ELECTRONICALLY FILED
Superior Court of California,
County of Orange

02/06/2013 at 11:28:00 AM

Clerk of the Superior Court
By Sarah Loose, Deputy Clerk

6

7

8                    SUPERIOR COURT OF CALIFORNIA

9         IN AND FOR THE COUNTY OF ORANGE – CENTRAL JUSTICE CENTER

10

11  KEITH WINTERBOWER,

12          Plaintiff,

           .v.

13

14  WELLS FARGO BANK, N.A., a
    business entity form unknown,
15  REGIONAL TRUSTEE SERVICES
    CORPORATION, a business entity form
16  unknown, and DOES 1-100, inclusive,

17          Defendants.

18

19

| | |
|---|---|
| Case No.: 30-2013-00628738 | |

**FIRST AMENDED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF:**

1.  **VIOLATION OF CAL. CIVIL CODE §2923.6**
2.  **VIOLATION OF CAL. CIVIL CODE §2924**
3.  **VIOLATIONS OF CALIFORNIA BUSINESS & PROFESSIONS CODE §17200**
4.  **NEGLIGENCE**
5.  **UNFAIR DEBT COLLECTION**
6.  **DEMAND FOR ACCOUNTING**

**DEMAND FOR JURY TRIAL**

20

21       TO WELLS FARGO BANK, N.A. and REGIONAL SERVICE CORPORATION, and to

22  their Attorneys of record:

23       Plaintiff KEITH WINTERBOWER (hereinafter known as "Plaintiff"), by his attorney, for

24  causes of action against Defendants WELLS FARGO BANK, N.A., a business entity of unknown

25  form, REGIONAL TRUSTEE SERVICES CORPORATION, a business entity of unknown form,

26

27  and DOES 1 through 100, inclusive (hereinafter collectively known as "Defendants"), alleges the

28  following on information and belief:

_____

FIRST AMENDED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF
1

# I.

## INTRODUCTION

1. Plaintiff owns the subject property located at **2333 Colgate Dr., Costa Mesa, CA 92626** (the "Subject Property").

2. Plaintiff brings this action against Defendants and DOES 1 to 100 based on the following:

   a. Defendants' violations of California *Civil Code* §2923.6;

   b. Defendants' violations of California *Civil Code* §2924;

   c. Defendants' violations of California *Business & Professions Code* §17200 by engaging in unlawful, unfair and/or fraudulent business practices as part and parcel to unsafe and unsound banking procedures;

   d. Negligently and carelessly assessing Plaintiff's loan for a loan modification; and

   e. Unlawful billing practices.

# II.

## PARTIES

3. At all times mentioned herein, Plaintiffs KEITH WINTERBOWER is an individual who resides in the County of Orange, California.

4. Upon information and belief, Defendant WELLS FARGO BANK, N.A., ("Wells Fargo"), is a business organization of unknown form doing business in the State of California.

5. Upon information and belief, Defendant REGIONAL TRUSTEE SERVICES CORPORATION ("Regional Service"), is a business organization of unknown form doing business in the State of California.

6. Plaintiff is ignorant of the true names and capacities of Defendants sued herein as DOES 1-100, inclusive, and therefore, sues these Defendants by such fictitious names. Plaintiff will seek leave of Court to amend this Complaint to allege their true names and capacities when they have

JOSEPH R. MANNING, JR., ESQ.
4667 MACARTHUR BLVD., STE. 150
NEWPORT BEACH, CA 92660

---

FIRST AMENDED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

2

1   been ascertained.

2   7.  Plaintiff is informed and believes, and based on such information and belief, alleges that at all

3   times mentioned in this complaint Defendants were the agents, servants, representatives,

4   partners and/or employees of co-Defendants, and, by engaging in the actions mentioned below,

5   were, unless otherwise alleged, acting within the course and scope of their authority as such

6   agent, servant, representative, partner, and/or employee, with the permission and consent of co-

7

8   Defendants.

9   8.  Plaintiff is informed and believes, and on such information and belief, alleges that each of said

10  Defendants is, in some manner, legally responsible for the unlawful actions, unlawful policies,

11  and unlawful practices hereinafter alleged, and that Plaintiff's damages were proximately

12  caused by Defendants. Plaintiff will seek leave of Court to amend this Complaint to set forth the

13  appropriate charging allegations along with the true names and capacities of said Defendants

14

15  when they have been ascertained.

16  9.  Any allegations about acts of any corporate or other business Defendants means that the

17  corporation or other business did the alleged acts through its officers, directors, employees,

18  agents, and/or representatives, while they were acting within the actual or ostensible scope of

19  their authority.

20

21                                      **III.**

22                          **JURISDICTION AND VENUE**

23  10. Venue and jurisdiction are proper in this Court because injury and damages to Plaintiff occurred

24  in this jurisdictional area, and the Subject Property is located in this jurisdictional area.

25  11. This Court has subject-matter jurisdiction over the causes of action alleged in this Complaint

26  because this Court is a court of general subject-matter jurisdiction and is not otherwise excluded

27  from exercising subject-matter jurisdiction over said causes of action.

28

JOSEPH R. MANNING, JR., ESQ.
4667 MACARTHUR BLVD., STE. 150
NEWPORT BEACH, CA 92660

---

**FIRST AMENDED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF**

3

12. This Court has personal jurisdiction over Defendants because each Defendant resides in, is incorporated in, has its main place of business in, and/or conducts business in the State of California, and a substantial portion of the acts, omissions, events, and transactions constituting the causes of action alleged herein occurred within the State of California. Cal. Code Civil Proc. §410.10.

13. This Court is the appropriate venue for this action under Cal. Code of Civil Proc. §395 & §395.5 because the acts that give rise to the causes of action alleged herein occurred in the County of Orange, State of California, and the Subject Property is located in this county. Plaintiff hereby designates the County of Orange, State of California, as the place of proper venue.

## IV.

## DEMAND FOR JURY TRIAL

14. Plaintiff hereby respectfully requests a trial by jury on all appropriate issues raised in this Complaint.

## V.

## BACKGROUND OF THE HOME AFFORDABLE MODIFICATION PROGRAM

15. **Creation of the Program:** Congress passed the Emergency Economic Stabilization Act of 2008 on October 3, 2008 and amended it with the American Recovery and Reinvestment Act of 2009 on February 17, 2009 (collectively, the "Act"). *12 U.S.C.A. §5201 et seq. (2009).*

16. The purpose of the Act is to grant the Secretary of the Treasury the authority to restore liquidity and stability to the financial system, and to ensure that such authority is used in a manner which "protects home values" and "preserves homeownership." *12 U.S.C.A. §5201.*

17. The Act grants the Secretary of the Treasury the authority to establish the Troubled Asset Relief Program ("TARP"). *12 U.S.C. §5211.*

18. Under TARP, the Secretary may purchase or make commitments to purchase troubled assets

JOSEPH R. MANNING, JR., ESQ.
4667 MACARTHUR BLVD., STE. 150
NEWPORT BEACH, CA 92660

---

**FIRST AMENDED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF**

4

1   from financial institutions.

2   19. Congress allocated up to Seven Hundred Billion Dollars ($700,000,000,000.00) to the United

3      States Department of Treasury for TARP. *12. U.S.C.A §5225.*

4

5   20. The Act grants authority to the Secretary to administer TARP, stating that the Secretary "shall"

6      take into consideration the "need to help families keep their homes and stabilize communities."

7      *12 U.S.C §5213(3).*

8   21. The Act mandates the Secretary, for any acquired assets that are backed by residential real

9      estate, to "implement a plan that seeks to maximize assistance for homeowners," as well as the

10     use of the Secretary's authority over servicers to encourage them to take advantage of programs

11     to "minimize foreclosures." Specifically, the Act authorizes the Security to use credit

12     enhancement and loan guarantees to "facilitate loan modifications to prevent avoidable

13

14     foreclosures." *12 U.S.C.A §5219.*

15  22. The Act also imposes parallel mandates to implement plans to maximize assistance to

16     homeowners and to minimize foreclosures on the Federal Housing Finance Agency, Federal

17     National Mortgage Associate ("Fannie Mae"), Federal Home Loan Mortgage Corporation

18     ("Freddie Mac"), and the Federal Reserve Board, in their roles as "federal property managers."

19     *12 U.S.C.A §5220.*

20

21  23. On February 18, 2009, pursuant to the authority granted under the Act, the Secretary and the

22     Director of the Federal Housing Finance Agency announced the Making Home Affordable

23     Program (the "MHA Program").

24  24. The MHA Program consists of two (2) subprograms: (1) the Home Affordable Refinance

25     Program ("HARP"), designed to assist homeowners with minimal or negative equity in their

26     home by refinancing their mortgages, and (2) the Home Affordable Modification Program

27     ("HAMP"), created to implement the uniform loan modification protocol. It is this subprogram

28

JOSEPH R. MANNING, JR., ESQ.
4667 MACARTHUR BLVD., STE. 150
NEWPORT BEACH, CA 92660

FIRST AMENDED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF
5

1   that is at issue in this case.

2  25. HAMP is funded by the federal government, primarily with TARP funds. The Treasury Dept.

3

4     has allotted at least Seventy-Five Billion Dollars ($75,000,000,000.00) to HAMP, of which at

5     least Fifty Billion Dollars ($50,000,000,000.00) is TARP money.

6  26. Under HAMP, the federal government incentivizes participating servicers to enter into

7     agreements with struggling homeowners that will make adjustments to the existing mortgage

8

9     obligations in order to make the monthly payments more affordable. Servicers receive one

10    thousand dollars ($1,000.00) for each HAMP modification.

11  27. **Defendant's Obligations Under HAMP**: Industry entities that perform the actual interface

12    with borrowers, including such tasks as payment processing, escrow maintenance, loss

13    mitigation and foreclosure, are known as "servicers." Servicers typically act as the agent of the

14    entities that hold mortgage loans.

15  28. If a servicer elects to participate in HAMP, the servicer executes a Servicer Participation

16    Agreement (an "SPA") with the federal government.

17

18  29. The SPA incorporates all "guidelines," "procedures," and supplemental documentation

19    instructions, bulletins, frequently asked questions, letters, Fannie Mae or Freddie Mac, in

20    connection with the duties of the participating servicers (collectively, these documents are

21    known as the "Program Documents").

22  30. As defined in the SPA, a participating servicer is required to "perform" the activities described

23    in the program documents "for all mortgage loans it services."

24  31. HAMP and the SPA are manifestly intended to benefit defaulting borrowers. This is the reason

25    for the program's existence. Supplemental Directive 09-01, incorporated into the SPA, states:

26

27        On February 18, 2009, President Obama announced the Home
           Affordability and Stability plan to help up to 7 to 9 million families
28       restructure or refinance their mortgages to avoid foreclosure. As a
           part of this plan, Treasury Department (Treasury) announced a

JOSEPH R. MANNING, JR., ESQ.
4667 MACARTHUR BLVD., STE. 150
NEWPORT BEACH, CA 92660

---

**FIRST AMENDED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF**

*national modification program aimed at helping 3 to 4 million at risk homeowners*- both those who are in default and those who are at imminent risk of default—by reducing monthly payments to sustainable levels. *Supp. Directive 09-01 at 1 (emphasis added).*

32. Similarly, the MHA website introduces HAMP as a plan to "help....Americans reduce their monthly mortgage payments to more affordable levels by 'preventing avoidable foreclosure.'"

33. The Program Documents require participating servicers to evaluate all loans that are sixty (60) or more days delinquent for HAMP modifications. In addition, if a borrower contacts a participating servicer regarding a HAMP modification, the participating servicer must collect the borrower's income and hardship information to determine if HAMP is appropriate.

34. HAMP modifications consist of two (2) stages: (1) a Participating Servicer is required to gather information and, if appropriate, offer the homeowner a Trial Period Plan ("TPP"). The TPP initiates a three (3) month period during which the homeowner is to make the modified mortgage payments. If the homeowner successfully completes the TPP, the homeowner moves to stage (2), and the Participating Servicer offers the homeowner a permanent mortgage modification.

35. HAMP Supplemental Directive 10-02 expressly states that the lender must proactively solicit all borrowers whose first mortgage loans are potentially eligible for HAMP and who have two (2) or more payments due and unpaid.

36. In addition, Supplemental Directive 10-02 contains a prohibition against referral to foreclosure until either: (a) a borrower has been evaluated and determined to be ineligible for HAMP; or (b) reasonable solicitation efforts have failed.

37. Furthermore, Supplemental Directive 10-02 explicitly requires participating servicers to consider borrowers in active bankruptcy for HAMP if a request is received from the borrower, borrower's counsel, or bankruptcy trustee.

38. In order to qualify for a HAMP modification, **the original loan amount cannot exceed**

JOSEPH R. MANNING, JR., ESQ.
4667 MACARTHUR BLVD., STE. 150
NEWPORT BEACH, CA 92660

FIRST AMENDED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

7

$729,750.00; and the subject property must be owner-occupied.

## VI.

## CALIFORNIA HOMEOWNER'S BILL OF RIGHTS: Effective January 1, 2013

39. California's housing crisis has had a devastating economic impact on the state and local governments. From 2007 to 2011 alone, there were over 900,000 completed foreclosure sales. In 2011, 38 of the top 100 hardest hit ZIP Codes in the nation were in California. All of this foreclosure activity has adversely affected property values and resulted in less money for schools, public safety, and other public services.

40. In addition, according to the Urban Institute, every foreclosure imposes significant costs on local governments, including an estimated nineteen thousand two hundred twenty-nine dollars ($19,229) in local government costs. The foreclosure crisis continues in California, and there remain more than two million "underwater" mortgages in California.

41. **Legislative Intent.** The legislature found and declared that it is essential to the economic health of California to mitigate the negative effects on the state and local economies and the housing market that are the result of continued foreclosures by **modifying the foreclosure process to ensure that borrowers who may qualify for a foreclosure alternative are considered for, and have a meaningful opportunity to obtain, available loss mitigation options.** These changes to California's foreclosure process are essential to ensure that the current crisis is not worsened by unnecessarily adding foreclosed properties to the market when an alternative to foreclosure may be available. Avoiding foreclosure, where possible, will help stabilize the state's housing market and avoid the substantial, corresponding negative effects of foreclosures on families, communities, and the state and local economy.

42. As a result, in February 2012, Attorney General Harris announced the California "Homeowner Bill of Rights," designed to protect homeowners from unfair practices by banks and mortgage

JOSEPH R. MANNING, JR., ESQ.
4667 MACARTHUR BLVD., STE. 150
NEWPORT BEACH, CA 92660

FIRST AMENDED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

8

companies and to help consumers and communities cope with the state's urgent mortgage and foreclosure crisis. Attorney General Harris claims that "this legislation will make the mortgage and foreclosure process more fair and transparent, which will benefit homeowners, their community, and the housing market as a whole."

43. On July 11, 2012, California Governor Jerry Brown signed into law the Homeowner's Bill of Rights (also known as "AB 278" or "SB 900"), marking California as the first U.S. state to adopt into law the residential mortgage foreclosure reform principles outlined in the February 2012 National Mortgage Settlement with the nation's top five mortgage services. The Homeowner's Bill of Rights makes changes to nonjudicial foreclosure protocols for first lien residential mortgage loans.

44. The Homeowner's Bill of Rights provides protections for borrowers and struggling homeowners by prohibiting a series of inherently unfair bank practices that have needlessly forced thousands of homeowners into foreclosure. Essentially, this law ensures that qualified first mortgage borrowers are afforded the right to explore any available alternative to foreclosure with their mortgage servicer before a California nonjudicial foreclosure can commence and/or be completed through foreclosure sale.

45. The Homeowner's Bill of Rights offers borrowers the following protections:

   a. **Burden of Compliance on the "Mortgage Servicer:"** the burden of compliance is placed on the "mortgage servicer," the person servicing the loan or is responsible for interacting a borrower, either as the current owner of the note or as the owner's agent;

   b. **Foreclosure Prevention Alternative:** "foreclosure prevention alternative" is broadly defined as any available loss mitigation option, including first lien loan modification;

   c. **Disclosure:** mortgage servicers must include a disclosure in the borrower's pre-Notice of Default outreach package that includes (i) a statement that the borrower may be entitled to certain protections, and (ii) a statement informing the borrower of his/her right to request a copy of his/her note and deed of trust, any assignment of the deed of

JOSEPH R. MANNING, JR., ESQ.
4667 MACARTHUR BLVD., STE. 150
NEWPORT BEACH, CA 92660

FIRST AMENDED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

9

1     trust required to demonstrate the mortgage servicer's right to foreclosure, and the

2     borrower's payment history since he/she was last less than sixty (60) days past due;

3    d.  **Notice of Default and Declaration of Compliance:** a mortgage servicer, mortgagee,

4     trustee, beneficiary or authorized agent MAY NOT record a Notice of Default until a

5     disclosure (as described above) is sent to the borrower, AND thirty (30) days after

6     either (i) Initial contact is made, to assess the borrower's financial situation and explore

7     options for foreclosure avoidance, OR (ii) The due diligence requirements for locating

8     the borrower have been met with no borrower response. In addition, a declaration of

9     compliance must be attached to the Notice of Default;

10    e.  **Restriction on dual track foreclosure:** mortgage servicers are restricted from

11     advancing the foreclosure process while a borrower is seeking a loan modification.

12     When a borrower completes an application for a loan modification, the foreclosure

      process is essentially on-hold until the complete application has been reviewed;

13    f.  **Guaranteed Single Point of Contact:** borrowers are guaranteed and provided one or

14     more direct means of communication with their single point of contact, as they navigate

15     the system and try to keep their homes- a person or team at the bank who knows the

16     facts of their case, has their paperwork and can get the borrowers a decision about their

      application for a loan modification;

17    g.  **Restriction on "Robo-Signing:"** the recording of "robodocs," or "robo-signing," the

18     process through which banks approved fraudulently signed mortgage documents in the

19     foreclosure process, is PROHIBITED. All mortgage documents, including notices of

20     default and supporting declarations, notices of sale, assignments of deed of trust, and

21     substitutions of trustee recorded in connection with a nonjudicial foreclosure, as well as

22     declarations filed in court with respect to any foreclosure proceeding, must be accurate,

      complete and supported by competent and relevant evidence;

23    h.  **Restriction on Charges and Fees:** mortgage servicers may not charge any application,

24     processing, or other fee for any first lien loan foreclosure prevention alternative, and

25     while a foreclosure prevention alternative is being considered or denial is being

26     appealed, a mortgage servicer cannot collect late fees;

27    i.  **Private right of action:** borrowers are afforded the following private right of action:

28        i.  Up until a foreclosure sale is completed, borrowers may seek a court injunction

           for a material violation of these protections, and may seek attorney's fees.

JOSEPH R. MANNING, JR., ESQ.
4667 MACARTHUR BLVD., STE. 150
NEWPORT BEACH, CA 92660

**FIRST AMENDED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF**
10

ii. After a foreclosure sale is completed, borrowers can seek court recovery for actual damages suffered as a result of a material violation, that was not corrected prior to the foreclosure sale, plus attorney's fees, and, upon a court's finding of willful, reckless, and/or intentional material violations committed, borrowers can be awarded the greater of $50,000 civil money penalty or treble damages.

46. According to the Legislature, the new Bill of Rights brings basic fairness, accountability, and transparency to the state's mortgage and foreclosure process, and it is necessary to provide stability to California's statewide and regional economies and housing market.

47. This new law takes effect January 1, 2013 through January 1, 2018, when alternate provisions become effective on and after that date. A true and correct copy of the relevant Civil Code sections under the Bill of Rights are attached and incorporated hereto as **Exhibit A.**

## VII.

## FACTUAL BACKGROUND

### Defendants' Marked-Up and Unnecessary Fees for Default-Related Services

48. Plaintiff alleges, upon information and belief, that in Defendants' loan servicing operations, Defendants follow a strategy to generate fraudulently concealed default-related fee income. Rather than simply obtaining default-related services directly from independent third-party vendors, and charging borrowers for the actual cost of these services, Defendants assess borrowers' accounts for services that are unnecessary and they unlawfully add additional undisclosed profits on to the charges before they are assessed on borrowers' accounts.

49. Upon information and belief, Defendants' scheme works as follows: Defendants order default-related services from their subsidiaries and affiliated companies, who, in turn, obtain the services from third-party vendors. The third-party vendors charge Defendants for their services. Defendants, in turn, charge borrowers a fee that is significantly marked-up from the third-party vendors' actual fees for the services. As a result, even though the mortgage market has

JOSEPH R. MANNING, JR., ESQ.
4667 MACARTHUR BLVD., STE. 150
NEWPORT BEACH, CA 92660

FIRST AMENDED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

11

NOTICE OF REMOVAL
EXHIBIT A PAGE 124

collapsed; and more and more borrowers are following into delinquency, Defendants continue to earn substantial profits by assessing undisclosed, marked-up fees for default-related services on borrowers' accounts.

50. The mortgage contract between a lender and a borrower consists of two (2) documents: the Promissory Note ("Note") and the Mortgage or Deed of Trust ("Security Instrument"). The mortgage contracts serviced by Defendants are substantially similar because they conform to the standard Fannie Mae/Freddie Mac form contract. These contracts contain form language regarding what occurs if borrowers default on their loans. The Security Instrument authorizes the loan services, in the event of default, to:

> pay for whatever is reasonable or appropriate to protect the note holder's interest in the property and rights under the security instrument, including protecting and/or assessing the value of the property, and securing and/or repairing the property.

51. The Security Instrument further provides that any such amounts disbursed by the servicer shall become additional debt of the borrower secured by the Security Instrument and shall bear interest at the Note rate from the date of disbursement. The Note provides that the note holder:

> will have the right to be paid back by [the borrower] for all of its costs and expenses in enforcing this Note to the extent not prohibited by applicable law. Those expenses include, for example, reasonable attorney's fees.

52. Thus, the mortgage contract allows the servicer to pay for default-related services when necessary or appropriate, and to be reimbursed by the borrowers, but it *does not authorize* the servicer to mark-up the actual cost of those services to make a profit.

53. As discussed above, by charging marked-up fees, Defendants violate their agreements with borrowers because, among other things, charges that exceed the actual cost of the services provided are neither reasonable nor appropriate to protect the Note holder's interest in the property and the rights under the Security Instrument.

54. Furthermore, the wrongful nature of the marked-up fees is demonstrated by the fact that

JOSEPH R. MANNING, JR., ESQ.
4667 MACARTHUR BLVD., STE. 150
NEWPORT BEACH, CA 92660

---

**FIRST AMENDED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF**
12

Defendants do not disclose to borrowers that the fees assessed on their accounts are marked-up from the amount actually charged by the vendor.

55. Plaintiff is informed and believes, and on that basis, alleges that Defendants conceal these marked-up fees for default-related services on borrowers' accounts, including Plaintiff's, by identifying the charges only as "Miscellaneous Fees," "Corporate Advances," "Other Fees" or "Advances" on borrowers' statements.

56. Plaintiff is informed and believes, and on that basis, alleges that under the "Miscellaneous Fees," "Corporate Advances," "Other Fees" or "Advances" categories on borrowers' statements, Defendants also assess unnecessary and unreasonable fees for property inspections. Although such inspections purportedly are conducted to guard against property loss, Defendants' practices are designed to ensure that these fees are charged to as many accounts as possible, even if the inspections are inappropriate, unnecessary, or unreasonable.

57. Plaintiff is informed and believes, and on that basis, alleges that even if the property inspections were properly performed and actually reviewed by someone at the bank, Defendants' continuous assessment of fees for these inspections on borrowers' accounts is still improper and unreasonable because of the frequency with which they are performed. If the first inspection report shows that the property is occupied and in good condition, it is unnecessary and inappropriate for Defendants to automatically continue to order monthly inspections. Nothing in the reports justifies continued monitoring.

58. As a result of Defendants' concealment of these unlawful fees, thousands of unsuspecting borrowers, including Plaintiff, are cheated out of millions of dollars.

### Plaintiff's Injuries as a Result of Defendants' Practices

59. Plaintiff alleges, upon information and belief, that the assessment of these marked-up fees can make it impossible for borrowers to become current on their loan. Charges for default-related

JOSEPH R. MANNING, JR., ESQ.
4667 MACARTHUR BLVD., STE. 150
NEWPORT BEACH, CA 92660

---

**FIRST AMENDED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF**
13

services can add hundreds or thousands of dollars to borrowers' loans over time, driving them further into default.

60. When borrowers, including Plaintiff, get behind on their mortgage, and fees for these default-related services are added on to the past-due principal and interest payments, Defendants' practices make it increasingly difficult for borrowers to ever bring their loan current. Even if borrowers pay the delinquent principal and interest payments, the marked-up fees for default-related services ensure that borrowers stay in default. After paying delinquent principal and interest, although the next payment comes in on time, often through automatic payment deductions from borrowers' bank accounts, part of the payment is applied to the fees first, so there is not enough to cover the entire monthly payment. This makes the payment late, creating a cascade of more fees and arrears, which keeps borrowers in delinquency. By the time borrowers are aware, Defendants are threatening to foreclose unless a huge payment is made, and the weight of these unnecessary fees drops borrowers into a financial abyss.

61. As a result of Defendants' practices, borrowers, including Plaintiff, are forced to move deeper into default, and suffer damage to their credit score. Defendants provide information about borrowers' payment history to credit reporting companies, including whether they have been late with a payment or missed any payments. By keeping borrowers in default with these practices, Defendants affect whether borrowers can get a loan in the future, and what borrowers' interest rate will be on such loans.

62. Additionally, as a result of Defendants' practices, borrowers, including Plaintiff, are wrongfully driven into foreclosure.

**Plaintiff's Financial Struggle and Subsequent Attempts to Remain Current on the Loan**

63. The Subject Property is Plaintiff's principal residence and is owner-occupied.

64. In 2006, Plaintiff entered into a written loan agreement with Defendants for a sum of $525,000

JOSEPH R. MANNING, JR., ESQ.
4667 MACARTHUR BLVD., STE. 150
NEWPORT BEACH, CA 92660

FIRST AMENDED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF
14

(the "Loan"), secured by the Subject Property through a Deed of Trust (recorded February 7, 2006), then and now the principal residence of Plaintiff.

65. In or around 2011, Plaintiff suffered a significant financial setback, due to the poor economy, and as a result, Plaintiff began using the money in his savings and investments to make the monthly mortgage payments and remain current on the loan.

66. However, as time passed, Plaintiff's financial situation continuously got worse, and finally, he was unable to keep up with the mortgage payments. Plaintiff had exhausted through his savings and he had no stable income.

67. Plaintiff is in possession of the Subject Property and no Trustee's sale has occurred. A Trustee's sale is currently set for **March 7, 2013**. As a result, the instant action became necessary.

68. As alleged herein, Plaintiff has never been fairly evaluated for a foreclosure prevention alternative, including a loan modification, *and* there has been a material change in Plaintiff's financial circumstances, and that change has been documented by the borrowers and submitted to Defendants.

69. At this time, Plaintiff's expenses have decreased from $25,000 to $10,000 per month, providing him with more disposable income. Therefore, pursuant to the new California Homeowner's Bill of Rights, specifically *Civil Code* §2923.6(g), Defendants must evaluate Plaintiff's application for an alternative to foreclosure, including a loan modification. Meanwhile, all foreclosure activity on the Subject Property must cease.

70. Plaintiff's claims are simple: when large financial institutions promise to modify eligible loans to prevent foreclosures and taxpaying homeowners live up to their end of the bargain, homeowners expect that promise to be kept, especially when those large financial institutions are acting under the guidance of a federal program specifically targeted at preventing foreclosures.

JOSEPH R. MANNING, JR., ESQ.
4667 MACARTHUR BLVD., STE. 150
NEWPORT BEACH, CA 92660

FIRST AMENDED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF
15

71. Plaintiff has been harmed by Defendants' failure to provide accurate material disclosures and notices such that Plaintiff can cure any alleged default and extinguish the transaction by operation of law.

72. As a result of the above-described wrongful acts and omissions, Plaintiff has been unable to cure the default because of the substantial arrearages, which includes unnecessary fees added to the loan balance.

73. The foregoing acts and material omissions of the Defendants herein alleged were undertaken willfully, persistently, intentionally, knowingly, and/or in gross or reckless disregard of Plaintiff's notice and disclosure rights.

74. Defendants, as employers of the authorized representatives who had contact with Plaintiff, had advanced knowledge of the unfitness of the employee representatives and employed such representatives with a conscious disregard of the rights or safety of others, or authorized/ratified the wrongful conduct for which the damages are awarded or was personally guilty of oppression, fraud, or malice.

75. Defendants are corporate employers. As such, their officers, directors, and/or managing agents had advanced knowledge of the willful and despicable conduct herein alleged and ratified the aforementioned acts of their authorized representatives and employees.

76. Defendants are acting in concert to deprive Plaintiff of his civil rights by attempting to take the Subject Property without due process of law.

**Defendants Lack Standing to Foreclose under the California Homeowner's Bill of Rights**

77. The operative 2006 Deed of Trust provides that the Lender on Plaintiff's loan is "World Savings Bank, FSB," and the Trustee and the Beneficiary is "Golden West Savings Association Service Co." (Exhibit B).

78. As set forth herein, the Notice of Default, recorded on December 7, 2011 and the Notice of Sale,

JOSEPH R. MANNING, JR., ESQ.
4667 MACARTHUR BLVD., STE. 150
NEWPORT BEACH, CA 92660

FIRST AMENDED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

16

recorded on March 8, 2012 (**Exhibit C**), identify Defendant Regional Trustee Service Corporation, as Trustee under the Deed of Trust. However, these documents were recorded without just cause or authority because Defendant Regional Trustee Service Corporation is a stranger to Plaintiff's transaction.

79. In fact, there are NO known recorded Assignments transferring any such beneficial interest to others, including to Defendant Regional Trustee Service Corporation, and such recorded Assignments are mandatory.

80. As fully alleged herein, Regional Trustee Service Corporation, as Trustee, had no such beneficial interest in Plaintiff's Deed of Trust, which renders the Notice of Default and Notice of Trustee's Sale flawed such that *no sale may take place based on these defective documents*.

81. These flawed and defective documents give rise to Plaintiff's claim based on the Homeowner's Bill of Rights, specifically under *Civil Code* §2924(a)(6), as set forth herein.

## VIII.

### FIRST CAUSE OF ACTION

### VIOLATIONS OF CAL. CIV. CODE §2923.6

### (AS TO ALL DEFENDANTS)

82. Plaintiff realleges and incorporates by reference all paragraphs above, as though fully set forth in this cause of action.

83. As of January 1, 2013, the new California Homeowner's Bill of Rights, specifically *Civil Code* §2923.6, applies only to mortgages or deeds of trust that are secured by owner-occupied residential real property containing no more than four (4) dwelling units. For these purposes, "owner-occupied" means that the property is the principal residence of the borrower as indicated in loan documents. In this case, the Subject Property contains no more than four (4) dwelling units and is the principal residence of Plaintiff, as indicated in the loan documents.

JOSEPH R. MANNING, JR., ESQ.
4667 MACARTHUR BLVD., STE. 150
NEWPORT BEACH, CA 92660

---

**FIRST AMENDED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF**
17

84. *Civil Code* §2923.6(g) states that the mortgage servicer shall not be obligated to evaluate applications from borrowers who have already been evaluated or afforded a fair opportunity to be evaluated for a foreclosure prevention alternative prior to January 1, 2013, **unless there has been a material change in the borrower's financial circumstances** since the date of the borrower's previous application AND that change is documented by the borrower and submitted to the mortgage servicer (**Exhibit A**, page 12).

85. In this case, Plaintiff has not been evaluated for a foreclosure prevention alternative, nor has he had a fair opportunity to be evaluated for a foreclosure prevention alternative. Moreover, Plaintiff's financial circumstances have materially changed. Plaintiff's expenses have decreased from $25,000 to $10,000 per month, giving him more disposable income per month. Plaintiff no longer needs to pay $900 per month towards his truck payment, and Plaintiff no longer needs to pay $2,000 per month for the land lease for his mother's residence.

86. Moreover, pursuant to the requirements of *Civil Code* §2923.6, Plaintiff documented this change and Plaintiff's attorney has notified Defendants of this change, via facsimile. A true and correct copy of the letter faxed to Defendants Wells Fargo Bank and Regional Service Corp., informing them of Plaintiff's material financial changes, along with the fax confirmation sheets, are attached and incorporated hereto as **Exhibit D**.

87. Accordingly, under *Civil Code* §2923.6, the mortgage servicer, Defendant Wells Fargo, must evaluate Plaintiff's application for a foreclosure alternative, including a loan modification. In fact, Defendants may NOT conduct a nonjudicial foreclosure sale, including Defendants' scheduling a foreclosure sale date and/or postponing a foreclosure sale date, while a review of the complete loan modification application is pending.

88. Despite these facts, Defendants continue with foreclosure activity on the Subject Property and are proceeding with a Trustee's sale, scheduled for **March 7, 2013. This is a clear violation of**

JOSEPH R. MANNING, JR., ESQ.
4667 MACARTHUR BLVD., STE. 150
NEWPORT BEACH, CA 92660

**FIRST AMENDED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF**
18

1   *Civil Code* §2923.6.

2   89. Therefore, pursuant to the Homeowner's Bill of Rights, and specifically *Civil Code* §2923.6, the

3   foreclosure sale date of Plaintiff's property must be **cancelled,** and Defendant Wells Fargo must

4

5   review Plaintiff for a foreclosure prevention alternative, and specifically, a loan modification.

6   90. The intent of the California legislators in enacting the Homeowner's Bill of Rights was to

7   address the consequences of the subprime mortgage crisis leading to declining real property

8   values and historic levels of foreclosure. Given the vast and devastating impact of the crisis, the

9

10   objective of the Bill of Rights was to make sure lenders, loan servicers, and their agents were

11   communicating and working with borrowers in default to assess the borrowers' financial

12   situation and discuss foreclosure alternatives **before** a foreclosure is started by recording a

13   notice of default. The intent of the legislature is clear and the requirements that it has imposed

14   are by no means arbitrary.

15   91. Defendants' failure to comply with *Civil Code* §2923.6 directly undermines the intent of the

16   statute. This failure to adhere to the statute renders it essentially meaningless and, if the statue is

17   not enforced, it will serve to perpetuate a cycle that results in far too many homeowners being

18   rendered helpless. As a result, Defendants are liable to Plaintiff for any and all statutory and/or

19   actual damages which have resulted from their conduct.

20

21   92. In addition, Plaintiff has incurred costs associated with the foreclosure action since its

22   commencement, and Plaintiff has sought, and now seeks, to be fairly evaluated for a foreclosure

23   prevention alternative, pursuant to the Homeowner's Bill of Rights.

24   93. As a result of the above-described wrongful acts and omissions, Plaintiff has been precluded

25   from the rights granted by *Civil Code* §2923.6.

26

27                                  **IX.**

28                      **SECOND CAUSE OF ACTION**

JOSEPH R. MANNING, JR., ESQ.
4667 MACARTHUR BLVD., STE. 150
NEWPORT BEACH, CA 92660

---

FIRST AMENDED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF
19

## VIOLATIONS OF CAL. CIV. CODE §2924

## (AS TO ALL DEFENDANTS)

94. Plaintiff realleges and incorporates by reference all paragraphs above, as though fully set forth in this cause of action.

95. As set forth herein, *Civil Code* §2924(a)(6) (**Exhibit A**, page 17) provides that Defendants may not engage in foreclosure procedures against Plaintiff's property unless they are the holder of the beneficial interest in the subject Deed of Trust, and as the proper Trustee.

96. As fully set forth above, *Defendants are not* the holder of the beneficial interest in Plaintiff's Deed of Trust.

97. As a result, these actions are a violation of *Civil Code* §2924, specifically section (a)(6), and no foreclosure proceedings can proceed. Plaintiff is entitled to all the rights and remedies set forth in the new statutory scheme known as the Homeowner's Bill of Rights for such violation.

98. *Civil Code* §2924(a)(6) provides in pertinent part that "No entity shall record or cause a notice of default to be recorded or otherwise initiate the foreclosure process unless it is the holder of the beneficial interest under the mortgage or deed of trust, the original trustee or the substituted trustee under the deed of trust or the designated agent of the holder of the beneficial interest."

99. As a direct and proximate result of the negligence and carelessness of Defendants as set forth above, Defendants are precluded from conducting a sale of Plaintiff's home because they are not the holder of the beneficial interest on Plaintiff's Deed of Trust as set forth herein.

100. Based on the foregoing, Plaintiff has suffered, and continues to suffer, general and special damages in an amount to be determined at trial.

## X.

## THIRD CAUSE OF ACTION

## VIOLATIONS OF BUSINESS AND PROFESSIONS CODE §17200

NOTICE OF REMOVAL
EXHIBIT A PAGE 133

JOSEPH R. MANNING, JR., ESQ.
4667 MACARTHUR BLVD., STE. 150
NEWPORT BEACH, CA 92660

**(AS TO ALL DEFENDANTS)**

101. Plaintiff realleges and incorporates by reference all paragraphs above, as though fully set forth in this cause of action.

102. Plaintiff brings this action against Defendants pursuant to California *Business and Professions Code* §17200, *et seq.*, referred to as the Unfair Competition Law (the "UCL").

103. California *Business and Professions Code* §17200 prohibits "any unlawful, unfair or fraudulent business act or practice." For the reasons described herein, Defendants have engaged in unfair or fraudulent business acts or practices in violation of *Bus. and Prof. Code* §17200, *et. seq.*

104. The Court has jurisdiction over this action pursuant to California *Bus. and Prof. Code* §17200, *et seq.*, specifically *Bus. and Prof. Code* §17203, which provides that any person who engages, has engaged, or proposes to engage in unfair competition may be enjoined in any court of competent jurisdiction; and the court may make such orders or judgments, including the appointment of a receiver, as may be necessary to prevent the use or employment by any person of any practice which constitutes unfair competition, or as may be necessary to restore to any person in interest any money or property, real or personal, which may have been acquired by means of such unfair competition; and *Bus. and Prof. Code* §17204, which provides for actions for any relief pursuant to the Unfair Competition Law ("UCL") to be prosecuted exclusively in a court of competent jurisdiction by any board, officer, person, corporation or association, or by any person acting for the interests of itself, its members or the general public.

105. At all times relevant to this Complaint, Defendants were lenders in the business of providing residential mortgages to the general public and were acting within the scope of that business with regard to the loan provided to Plaintiff. Defendants have committed acts of unfair competition as proscribed by §17200 including the practices alleged herein against Plaintiff.

106. Specifically, as fully set forth above, Defendants engaged in deceptive business practices with

JOSEPH R. MANNING, JR., ESQ.
4667 MACARTHUR BLVD., STE. 150
NEWPORT BEACH, CA 92660

**FIRST AMENDED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF**
21

respect to mortgage loan servicing, foreclosure of residential properties and related matters by, among other things:

    a.  Recording the Notice of Default, the Notice of Sale, and conducting a Trustee's sale without complying with *Civil Code* §2923.6, by failing to evaluate Plaintiff's application, or affording Plaintiff a fair opportunity to be evaluated, even after there has been a **material change in Plaintiff's financial circumstances;**

    b.  Recording the NOD, the NTS, and conducting a Trustee's sale without complying with *Civil Code* §2924(a)(6) by doing the alleged acts despite the fact that Defendants are **not the holder of the beneficial interest in** Plaintiff's Deed of Trust;

    c.  Instituting improper or premature foreclosure proceedings to generate unwarranted fees;

    d.  Misrepresenting the foreclosure status to Plaintiff regarding his property; and

    e.  Concealing the true character, quality, and nature of their assessment of marked-up fees against Plaintiff's accounts.

107. *Bus. and Prof. Code* §17200 also prohibits any "fraudulent business act or practice." Defendants' concealment of material facts, as set herein, was misleading and likely to deceive the public within the meaning of this section. This concealment was made with knowledge of its effect, and was done to induce Plaintiff to pay the marked-up and/or unnecessary fees for default-related services.

108. In the course and conduct of its loan servicing and collection, Defendant Wells Fargo omitted a true itemization that identifies the nature of each fee, and it failed to disclose the nature of the charges and fees assessed. Defendant Wells Fargo concealed the fact that the category identified as "Miscellaneous Fees" or "Other Charges" reflects marked-up and/or unnecessary fees that were never incurred by Defendants. Relying on Defendants, Plaintiff and members of the general public believe they are obligated to pay the amounts specified in Defendants' communications for default-related services.

109. Plaintiff relied on his reasonable expectation that Defendants complied with the plain meaning of the mortgage agreement, Notes, Security Instruments, court orders, and confirmed plans,

JOSEPH R. MANNING, JR., ESQ.
4667 MACARTHUR BLVD., STE. 150
NEWPORT BEACH, CA 92660

NOTICE OF REMOVAL
EXHIBIT A PAGE 135

and as a result, Plaintiff relied on Defendants' disclosures about the fees on their statements, reasonably believing the "Other Charges," "Other Fees" or "Miscellaneous Fees" to be valid charges that were not unlawfully marked-up and/or unnecessary. Indeed, to trick borrowers into a sense of trust and to dissuade them from challenging Defendants' unlawful fee assessments, Defendants conceal their scheme by telling borrowers, in statements and other documents, that such fees are "allowed by borrowers' Note and Security Instrument," or that they are "in accordance with the terms of your mortgage." Had the true nature of the fees been disclosed to Plaintiff, he would have been aware of the mark-ups and unnecessary nature of the fees, and Plaintiff would have disputed the charges, not paid them.

110. These violations were and remain to be a matter of Defendants' standard corporate policy, and constitute a consistent pattern and practice of unlawful corporate behavior. Defendants' actions were against public policy, as the legislature enacted the Homeowner's Bill of Rights as an emergency act, to slow the foreclosure process so that foreclosure could be avoided.

111. Defendants' acts and practices, as hereinabove alleged, constitute "fraudulent" business acts under §17200 in that said acts and practices are likely to deceive the public and affected consumers' legal rights and obligations. Defendants' acts, including, but not limited to, active deception, falsifying documents, failing to deliver material documents, and concealment, may preclude consumers from exercising rights to which they are entitled.

112. Defendants' omissions of material facts, as hereinabove alleged, constitute "unlawful" practice because they violate Title 18 United States Code §1341, §1343, and §1962, California *Civil Code* §1572, §1573, §1709, §1710, and §1711, and the common law.

113. Defendants' acts and practices, as hereinabove alleged, constitute "unfair" business acts under *Bus. and Prof. Code* §17200, *et seq.*, in that said acts and practices offend public policy and are substantially injurious to Plaintiff and all consumers. Said acts and practices have no utility

JOSEPH R. MANNING, JR., ESQ.
4667 MACARTHUR BLVD., STE. 150
NEWPORT BEACH, CA 92660

FIRST AMENDED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF
23

1   whatsoever; much less sufficient utility to outweigh the substantial harm to Plaintiff, other

2   consumers, and potential homeowners.

3   114. Defendants knew, or by the exercise of reasonable care, should have known, that the false

4       representations by their representatives and/or agents as herein alleged were untrue and

5       misleading at the time they were made, and clear violations of *Civil Code* §2923.6 and the

6       provisions of HAMP.

7   

8   115. Plaintiff is informed and believes, and based thereon, alleges that the illegal acts of Defendants

9       are a serious threat to Plaintiff because these acts have allowed, or will allow, Defendants to

10      wrongfully foreclose on the Subject Property, to transfer title or interest of the Subject

11      Property, and to cause the imminent eviction of Plaintiff from his home. Because of

12      Defendants' illegal actions, Plaintiff will be forced out of his home. Such eviction will cause

13      Plaintiff to suffer further immediate and irreparable injury, loss, and damage.

14  

15  116. As a direct, proximate, and foreseeable result of Defendants' unlawful, unfair, and fraudulent

16      business practices, Plaintiff has suffered substantial ascertainable losses, and therefore,

17      Defendants should be enjoined from continuing such practices, pursuant to *Business and*

18      *Professions Code* §17203 & §17204.

19  

20  117. As a direct, proximate, and foreseeable result of Defendants' unlawful conduct alleged herein,

21      Plaintiff is at risk of losing the equity in his home or may lose his home through foreclosure by

22      simply doing what he was instructed to do by Defendants.

23  118. As a direct, proximate, and foreseeable result of the unlawful conduct of Defendants, their

24      business acts or practices have caused injury to Plaintiff and the general public; and Plaintiff is

25      entitled to relief, including full restitution and/or disgorgement of all revenues, earnings,

26      profits, compensation, and benefits which may have been obtained by Defendants as a result of

27      such business act or practice.

28  

JOSEPH R. MANNING, JR., ESQ.
4667 MACARTHUR BLVD., STE. 150
NEWPORT BEACH, CA 92660

**FIRST AMENDED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF**

24

119. In addition to the relief requested in the Prayer below, Plaintiff seeks the imposition of a constructive trust over, and restitution of, the monies collected and realized by Defendants.

## XI.

## FOURTH CAUSE OF ACTION

## NEGLIGENCE

## (AS TO ALL DEFENDANTS)

120. Plaintiff realleges and incorporates by reference all paragraphs above, as though fully set forth in this cause of action.

121. At all times relevant herein, Defendants, acting as Plaintiff's lenders and servicers, had a reasonable duty to exercise reasonable care and skill to:

   a. Maintain proper and accurate loan records; and

   b. Discharge and fulfill the other incidents attendant to the maintenance, accounting and servicing of loan records, including, but not limited to, disclosing to Plaintiff the status of any foreclosure actions taken by Defendants, refraining from taking any action against Plaintiff that they did not have the legal authority to do, and providing all relevant information regarding Plaintiff's Loan.

122. In addition, Defendant Wells Fargo stepped outside its normal duties as lender and servicer and assumed additional responsibilities when it undertook efforts to modify loans including Plaintiff's loan. Those additional responsibilities include proper implementation of evaluating Plaintiff for foreclosure prevention alternatives, so that Plaintiff would be fairly evaluated or afforded a fair opportunity to be evaluated for a suitable foreclosure alternative, including a loan modification.

123. By engaging in these alleged actions, Defendants breached their duty of care and skill to Plaintiff, in the servicing of Plaintiff's loan by, among other things:

   a. Failing to evaluate Plaintiff's application for an alternative to foreclosure, even after a *material change in the borrower's financial circumstances* has been documented and

JOSEPH R. MANNING, JR., ESQ.
4667 MACARTHUR BLVD., STE. 150
NEWPORT BEACH, CA 92660

---

**FIRST AMENDED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF**

25

NOTICE OF REMOVAL
EXHIBIT A PAGE 138

submitted to the mortgage servicer, pursuant to *Civil Code* §2923.6;

    b.  Failing to train their representatives and/or provide their representatives with correct information regarding loan modifications so that Plaintiff could have consistent and accurate information from one phone call to the next, and the like;

    c.  Failing to notify Plaintiff that they were foreclosing on Plaintiff's property; and

    d.  Foreclosing on the Subject Property without having the legal authority to do so.

124. As a direct and proximate result of the negligence and carelessness of Defendants and their representatives as set forth above, Plaintiff has suffered, and continues to suffer, general and special damages in an amount to be determined at trial.

## XII.

## FIFTH CAUSE OF ACTION

## UNFAIR DEBT COLLECTION: Rosenthal Fair Debt Collection Practices Act

## *Civil Code* §1788 *et. seq.*

## (AS TO ALL DEFENDANTS)

125. Plaintiff realleges and incorporates by reference all paragraphs above, as though fully set forth in this cause of action.

126. Defendants are "debt collectors" and are engaged debt collection practices under the Rosenthal Fair Debt Collection Practices Act ("The Rosenthal Act").

127. In illegally attempting to collect on Plaintiff's debt obligation in the manner described and alleged herein, Defendants violated the Rosenthal Act by falsely representing that they were the proper holder of the beneficial interest in Plaintiff's Deed of Trust as claimed in the operative Notice of Default, and that they had/have the right to foreclose on Plaintiff's property and receive payments from Plaintiff regarding the property, when that is not true.

128. In addition, the claimed about owing in the Notice of Default contains fraudulent charges and unnecessary fees added by Defendants as described herein in order to benefit Defendants and without just cause.

JOSEPH R. MANNING, JR., ESQ.
4667 MACARTHUR BLVD., STE. 150
NEWPORT BEACH, CA 92660

---

**FIRST AMENDED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF**

26

129. As a direct and proximate result of the negligence and carelessness of Defendants, as set forth above, Plaintiff has suffered, and continues to suffer, general and special damages in an amount to be determined at trial.

## XIII.

## DEMAND FOR ACCOUNTING

130. Plaintiff realleges and incorporates by reference all paragraphs above, as though fully set forth in this cause of action.

131. The elements for a claim for accounting are: (i) a fiduciary relationship or other circumstances appropriate to the remedy, and (ii) a balance due from to Defendant to Plaintiff that can only be ascertained by an accounting. *See Witkin, Cal. Procedure 5th ed. (2008) Pleadings, Section 820.*

132. Defendants have held themselves out to be Plaintiff's creditor and mortgage servicer. As a result of this purported relationship with Plaintiff, said Defendants have a duty to Plaintiff to properly account for payments made by Plaintiff. *See Witkin.* Moreover, "A fiduciary relationship between the parties is not required to state a cause of action for accounting. All that is required is that some relationship exists that requires an accounting." *Teselle v. McLoughlin (2009) 173 Cal. App. 4th 156, 179.*

133. The mortgage contract between Defendants and Plaintiff allows Defendants to pay for default-related services when necessary or appropriate, and to be reimbursed by the borrowers, but it does not authorize Defendants to mark-up the actual cost of those services to make a profit, nor does it allow Defendants to incur unnecessary fees.

134. Nevertheless, Defendants mark-up prices charged by vendors and then, without disclosing the mark-up, assess borrowers' accounts for the higher, marked-up fee, so Defendants can earn a profit.

135. Defendants are aware that it is improper to mark-up and/or assess unnecessary fees on

JOSEPH R. MANNING, JR., ESQ.
4667 MACARTHUR BLVD., STE. 150
NEWPORT BEACH, CA 92660

FIRST AMENDED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF
27

borrowers' accounts for default-related services. Therefore, Defendants fraudulently conceal these fees on borrowers' accounts, omitting any information about Defendants' additional profits, by identifying them on mortgage statements only as "Other Charges," "Other Fees," "Miscellaneous Fees" or "Corporate Advances."

136. Plaintiff has made mortgage payments to Defendants and their successors. Plaintiff believes and is informed that the amount claimed due and owing at the time of the recording of the Notice of Default, $10,870, is not correct.

137. Plaintiff has a reasonable good faith belief that the claimed arrearages include improper excess charges and fees imposed by all Defendants without Plaintiff's knowledge or consent, which are not allowed by law.

138. The actual amount of the arrearages on Plaintiff's loan and the actual amount of money due from Defendants to Plaintiff is unknown to Plaintiff and cannot be ascertained without an accounting of the receipts and disbursements of the aforementioned transactions.

///

///

## PRAYER

WHEREFORE, Plaintiff prays for judgment against each Defendant, jointly and severally, as follows:

1. For damages sustained by Plaintiff due to Defendants' wrongful acts in excess of the jurisdictional limits in an amount to be proven at trial;

2. Pursuant to Cal. *Bus. & Prof. Code* §17200, *et seq.*, that all Defendants, their employees,

3. agents, representatives, successors, assigns, and all persons who act in concert with them, be permanently enjoined from making any false or misleading statements or falsely reporting negative credit to reporting agencies, and from selling the foreclosed property on an unlawfully

JOSEPH R. MANNING, JR., ESQ.
4667 MACARTHUR BLVD., STE. 150
NEWPORT BEACH, CA 92660

FIRST AMENDED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF
28

1   procured debt;

2   4.  Pursuant to Cal. *Bus. & Prof. Code* §17200, *et seq.*, that this Court make such orders or

3

4       judgments necessary to prevent the use or employment by any Defendant of any act which

5       violates §17200, *et seq.*; and to restore to any person in interest, any money or property, real or

6       personal, which may have been acquired by means of any such act;

7   5.  For disgorgement of all monies acquired by Defendants by means of any act or practice

8       declared by this Court to be wrongful;

9   6.  For interest on the sum at the rate of 10% per annum;

10

11   7.  For punitive damages against Defendants due to their intentional and wrongful acts;

12   8.  For reasonable attorney's fees and costs of suit, as allowed by law, and all other relief granted

13       under *Civil Code* §2924.12;

14   9.  For injunctive relief as set forth herein; and

15   10. For such other and further relief as this Court deems just and appropriate.

16

17   Dated: February 6, 2013        LAW OFFICES OF JOSEPH R. MANNING, JR.

18                          A PROFESSIONAL CORPORATION

19

20                         By:

21                            Joseph R. Manning Jr., Esq.

22                            Attorney for Plaintiff

23

24

25

26

27

28

JOSEPH R. MANNING, JR., ESQ.
4667 MACARTHUR BLVD., STE. 150
NEWPORT BEACH, CA 92660

FIRST AMENDED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF

29



1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**Exhibit A**

FIRST AMENDED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF
30



DEERING'S CALIFORNIA CODES ANNOTATED
Copyright (c) 2013 by Matthew Bender & Company, Inc.
a member of the LexisNexis Group.
All rights reserved.

*** This document is current through the 2013 Supplement ***
(All 2012 legislation, 2012 Governor's Reorg. Plan No. 2 and all
propositions approved by the electorate at the June and November 2012 elections)

CIVIL CODE
Division 3. Obligations
Part 4. Obligations Arising from Particular Transactions
Title 14. Lien
Chapter 2. Mortgage
Article 1. Mortgages in General

GO TO CALIFORNIA CODES ARCHIVE DIRECTORY

*Cal Civ Code § 2920.5 (2013)*

First of 2 versions of this section

§ 2920.5.  (First of two) Definitions

For purposes of this article, the following definitions apply:

(a) "Mortgage servicer" means a person or entity who directly services a loan, or who is responsible for interacting with the borrower, managing the loan account on a daily basis including collecting and crediting periodic loan payments, managing any escrow account, or enforcing the note and security instrument, either as the current owner of the promissory note or as the current owner's authorized agent. "Mortgage servicer" also means a subservicing agent to a master servicer by contract. "Mortgage servicer" shall not include a trustee, or a trustee's authorized agent, acting under a power of sale pursuant to a deed of trust.

(b) "Foreclosure prevention alternative" means a first lien loan modification or another available loss mitigation option.

(c)

(1) Unless otherwise provided and for purposes of Sections 2923.4, 2923.5, 2923.55, 2923.6, 2923.7, 2924.9, 2924.10, 2924.11, 2924.18, and 2924.19, "borrower" means any natural person who is a mortgagor or trustor and who is potentially eligible for any federal, state, or proprietary foreclosure prevention alternative program offered by, or

1

Cal Civ Code § 2920.5    Page 2

through, his or her mortgage servicer.

(2) For purposes of the sections listed in paragraph (1), "borrower" shall not include any of the following:

(A) An individual who has surrendered the secured property as evidenced by either a letter confirming the surrender or delivery of the keys to the property to the mortgagee, trustee, beneficiary, or authorized agent.

(B) An individual who has contracted with an organization, person, or entity whose primary business is advising people who have decided to leave their homes on how to extend the foreclosure process and avoid their contractual obligations to mortgagees or beneficiaries.

(C) An individual who has filed a case under Chapter 7, 11, 12, or 13 of Title 11 of the United States Code and the bankruptcy court has not entered an order closing or dismissing the bankruptcy case, or granting relief from a stay of foreclosure.

(d) "First lien" means the most senior mortgage or deed of trust on the property that is the subject of the notice of default or notice of sale.

**HISTORY:**

Added Stats 2012 ch 86 § 2 (AB 278), effective January 1, 2013.

**NOTES:**

**Note**

Stats 2012 ch 86 provides:

SECTION 1. The Legislature finds and declares all of the following:

(a) California is still reeling from the economic impacts of a wave of residential property foreclosures that began in 2007. From 2007 to 2011 alone, there were over 900,000 completed foreclosure sales. In 2011, 38 of the top 100 hardest hit ZIP Codes in the nation were in California, and the current wave of foreclosures continues apace. All of this foreclosure activity has adversely affected property values and resulted in less money for schools, public safety, and other public services. In addition, according to the Urban Institute, every foreclosure imposes significant costs on local governments, including an estimated nineteen thousand two hundred twenty-nine dollars ($19,229) in local government costs. And the foreclosure crisis is not over; there remain more than two million "underwater" mortgages in California.

(b) It is essential to the economic health of this state to mitigate the negative effects on the state and local economies and the housing market that are the result of continued foreclosures by modifying the foreclosure process to ensure that borrowers who may qualify for a foreclosure alternative are considered for, and have a meaningful opportunity to obtain, available loss mitigation options. These changes to the state's foreclosure process are essential to ensure that the current crisis is not worsened by unnecessarily adding foreclosed properties to the market when an alternative to foreclosure may be available. Avoiding foreclosure, where possible, will help stabilize the state's housing market and avoid the substantial, corresponding negative effects of foreclosures on families, communities, and the state and local economy.

(c) This act is necessary to provide stability to California's statewide and regional economies and housing market by facilitating opportunities for borrowers to pursue loss mitigation options.

**Hierarchy Notes:**

2

NOTICE OF REMOVAL
EXHIBIT A PAGE 145



DEERING'S CALIFORNIA CODES ANNOTATED
Copyright (c) 2013 by Matthew Bender & Company, Inc.
a member of the LexisNexis Group.
All rights reserved.

*** This document is current through the 2013 Supplement ***
(All 2012 legislation, 2012 Governor's Reorg. Plan No. 2 and all
propositions approved by the electorate at the June and November 2012 elections)

CIVIL CODE
Division 3. Obligations
Part 4. Obligations Arising from Particular Transactions
Title 14. Lien
Chapter 2. Mortgage
Article 1. Mortgages in General

GO TO CALIFORNIA CODES ARCHIVE DIRECTORY

*Cal Civ Code § 2923.4 (2013)*

First of 2 versions of this section

§ 2923.4. (First of two) Purpose of Act; Loss mitigation options; Construction

(a) The purpose of the act that added this section is to ensure that, as part of the nonjudicial foreclosure process, borrowers are considered for, and have a meaningful opportunity to obtain, available loss mitigation options, if any, offered by or through the borrower's mortgage servicer, such as loan modifications or other alternatives to foreclosure. Nothing in the act that added this section, however, shall be interpreted to require a particular result of that process.

(b) Nothing in this article obviates or supersedes the obligations of the signatories to the consent judgment entered in the case entitled United States of America et al. v. Bank of America Corporation et al., filed in the United States District Court for the District of Columbia, case number 1:12-cv-00361 RMC.

HISTORY:

Added Stats 2012 ch 86 § 3 (AB 278), effective January 1, 2013.

NOTES:

Editor's Notes

3



3 of 38 DOCUMENTS

DEERING'S CALIFORNIA CODES ANNOTATED
Copyright (c) 2013 by Matthew Bender & Company, Inc.
a member of the LexisNexis Group.
All rights reserved.

\*\*\* This document is current through the 2013 Supplement \*\*\*
(All 2012 legislation, 2012 Governor's Reorg. Plan No. 2 and all
propositions approved by the electorate at the June and November 2012 elections)

CIVIL CODE
Division 3. Obligations
Part 4. Obligations Arising from Particular Transactions
Title 14. Lien
Chapter 2. Mortgage
Article 1. Mortgages in General

GO TO CALIFORNIA CODES ARCHIVE DIRECTORY

*Cal Civ Code § 2923.5 (2013)*

First of 3 versions of this section

**§ 2923.5. (First of three; Repealed January 1, 2018) Notice of default, grace period; Contact to assess borrower's financial situation; Due diligence requirement; Discussion of options to avoid foreclosure; Applicability**

(a)

(1) A mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent may not record a notice of default pursuant to Section 2924 until both of the following:

(A) Either 30 days after initial contact is made as required by paragraph (2) or 30 days after satisfying the due diligence requirements as described in subdivision (e).

(B) The mortgage servicer complies with paragraph (1) of subdivision (a) of Section 2924.18, if the borrower has provided a complete application as defined in subdivision (d) of Section 2924.18.

(2) A mortgage servicer shall contact the borrower in person or by telephone in order to assess the borrower's financial situation and explore options for the borrower to avoid foreclosure. During the initial contact, the mortgage servicer shall advise the borrower that he or she has the right to request a subsequent meeting and, if requested, the mortgage servicer shall schedule the meeting to occur within 14 days. The assessment of the borrower's financial situation and discussion of options may occur during the first contact, or at the subsequent meeting scheduled for that

4

purpose. In either case, the borrower shall be provided the toll-free telephone number made available by the United States Department of Housing and Urban Development (HUD) to find a HUD-certified housing counseling agency. Any meeting may occur telephonically.

(b) A notice of default recorded pursuant to Section 2924 shall include a declaration that the mortgage servicer has contacted the borrower, has tried with due diligence to contact the borrower as required by this section, or that no contact was required because the individual did not meet the definition of "borrower" pursuant to subdivision (c) of Section 2920.5.

(c) A mortgage servicer's loss mitigation personnel may participate by telephone during any contact required by this section.

(d) A borrower may designate, with consent given in writing, a HUD-certified housing counseling agency, attorney, or other advisor to discuss with the mortgage servicer, on the borrower's behalf, the borrower's financial situation and options for the borrower to avoid foreclosure. That contact made at the direction of the borrower shall satisfy the contact requirements of paragraph (2) of subdivision (a). Any loan modification or workout plan offered at the meeting by the mortgage servicer is subject to approval by the borrower.

(e) A notice of default may be recorded pursuant to Section 2924 when a mortgage servicer has not contacted a borrower as required by paragraph (2) of subdivision (a) provided that the failure to contact the borrower occurred despite the due diligence of the mortgage servicer. For purposes of this section, "due diligence" shall require and mean all of the following:

(1) A mortgage servicer shall first attempt to contact a borrower by sending a first-class letter that includes the toll-free telephone number made available by HUD to find a HUD-certified housing counseling agency.

(2)

(A) After the letter has been sent, the mortgage servicer shall attempt to contact the borrower by telephone at least three times at different hours and on different days. Telephone calls shall be made to the primary telephone number on file.

(B) A mortgage servicer may attempt to contact a borrower using an automated system to dial borrowers, provided that, if the telephone call is answered, the call is connected to a live representative of the mortgage servicer.

(C) A mortgage servicer satisfies the telephone contact requirements of this paragraph if it determines, after attempting contact pursuant to this paragraph, that the borrower's primary telephone number and secondary telephone number or numbers on file, if any, have been disconnected.

(3) If the borrower does not respond within two weeks after the telephone call requirements of paragraph (2) have been satisfied, the mortgage servicer shall then send a certified letter, with return receipt requested.

(4) The mortgage servicer shall provide a means for the borrower to contact it in a timely manner, including a toll-free telephone number that will provide access to a live representative during business hours.

(5) The mortgage servicer has posted a prominent link on the homepage of its Internet Web site, if any, to the following information:

(A) Options that may be available to borrowers who are unable to afford their mortgage payments and who wish to avoid foreclosure, and instructions to borrowers advising them on steps to take to explore those options.

(B) A list of financial documents borrowers should collect and be prepared to present to the mortgage servicer when discussing options for avoiding foreclosure.

5

(C) A toll-free telephone number for borrowers who wish to discuss options for avoiding foreclosure with their mortgage servicer.

(D) The toll-free telephone number made available by HUD to find a HUD-certified housing counseling agency.

(f) This section shall apply only to mortgages or deeds of trust described in Section 2924.15.

(g) This section shall apply only to entities described in subdivision (b) of Section 2924.18.

(h) This section shall remain in effect only until January 1, 2018, and as of that date is repealed, unless a later enacted statute, that is enacted before January 1, 2018, deletes or extends that date.

**HISTORY:**

Added Stats 2008 ch 69 § 2 (SB 1137), effective July 8, 2008, operative September 6, 2008, repealed January 1, 2013. Amended Stats 2009 ch 43 § 1 (SB 306), effective January 1, 2010, repealed January 1, 2013; Stats 2012 ch 86 § 4 (AB 278), effective January 1, 2013, repealed January 1, 2018, ch 87 § 4 (SB 900), effective January 1, 2013, repealed January 1, 2018.

**NOTES:**

**Editor's Notes**

For legislative findings and declarations, see the 2012 Note under CC § 2920.5 (Second of two).

**Amendments:**

**2009 Amendment:**

(1) Substituted "initial contact" for "contact" in subd (a)(1); (2) amended subd (b) by substituting (a) "declaration that" for "declaration from"; (b) "agent has" for "agent that it has"; (c) "has tried" for "tried"; and (d) "that no contact was required pursuant to subdivision (h)" for "the borrower has surrendered the property to the mortgagee, trustee, beneficiary, or authorized agent"; (3) amended the first sentence of subd (f) by adding (a) ", with consent given in writing,"; and (b) "the borrowers financial situation and"; (4) substituted subd (h)(3) for former subd (h)(3) which read: "(3) The borrower has filed for bankruptcy, and the proceedings have not been finalized."; (5) amended the first sentence of subd (i) by substituting (a) "mortgages or deeds of trust recorded" for "loans made"; and (b) "owner-occupied residential real property containing no more than four dwelling units" for "residential real property and are for owner-occupied residences"; and (6) added "as indicated to the lender in loan documents" in the second sentence of subd (i).

**2012 Amendment:**

(1) Amended the introductory clause of subd (a)(1) by adding (a) "mortgage servicer,"; and (b) "both of the following:"; (2) added subdivision designation (a)(1)(A); (3) amended subd (a)(1)(A) by (a) adding "Either"; and (b) substituting "subdivision (e)" for "subdivision (g)"; (4) added subds (a)(1)(B) and (g); (5) substituted "mortgage servicer" for "mortgagee, beneficiary, or authorized agent" wherever it appears in subds (a)(2), (b), (d), and (e); (6) substituted "recorded" for "filed" in subd (b) and in the first sentence of the introductory paragraph of subd (e); (7)

6

Cal Civ Code § 2923.5

substituted "because the individual did not meet the definition of 'borrower' pursuant to subdivision (c) of Section 2920.5" for "pursuant to subdivision (h)" in subd (b); (8) deleted former subd (e) which read: "(e) If a mortgagee, trustee, beneficiary, or authorized agent had already filed the notice of default prior to the enactment of this section and did not subsequently file a notice of rescission, then the mortgagee, trustee, beneficiary, or authorized agent shall, as part of the notice of sale filed pursuant to Section 2924f, include a declaration that either: (1) States that the borrower was contacted to assess the borrower's financial situation and to explore options for the borrower to avoid foreclosure. (2) Lists the efforts made, if any, to contact the borrower in the event no contact was made."; (9) redesignated former subds (d), (f), (g), (i), and (j) to be subds (c)–(f), and (h); (10) substituted "mortgage servicer's" for "mortgagee's, beneficiary's, or authorized agent's" in subd (c); (11) deleted former subd (e) which read: "(e) For purposes of this section, a 'borrower' shall include a mortgagor or trustor."; (12) substituted "borrower's" for "borrowers" in the first sentence of subd (d); (13) deleted former subd (h) which read: "(h) Subdivisions (a), (c), and (g) shall not apply if any of the following occurs: (1) The borrower has surrendered the property as evidenced by either a letter confirming the surrender or delivery of the keys to the property to the mortgagee, trustee, beneficiary, or authorized agent. (2) The borrower has contracted with an organization, person, or entity whose primary business is advising people who have decided to leave their homes on how to extend the foreclosure process and avoid their contractual obligations to mortgagees or beneficiaries. (3) A case has been filed by the borrower under Chapter 7, 11, 12, or 13 of Title 11 of the United States Code and the bankruptcy court has not entered an order closing or dismissing the bankruptcy case, or granting relief from a stay of foreclosure."; (14) substituted subd (f) for former subd (f) which read: "This section shall apply only to mortgages or deeds of trust recorded from January 1, 2003, to December 31, 2007, inclusive, that are secured by owner-occupied residential real property containing no more than four dwelling units. For purposes of this subdivision, 'owner-occupied' means that the residence is the principal residence of the borrower as indicated to the lender in loan documents"; and (15) substituted "January 1, 2018" for "January 1, 2013" both times it appears in subd (h). (As amended Stats 2012 ch 87 compared to the section as it read prior to 2012. This section was also amended by an earlier chapter, ch 86. See *Gov C § 9605*.)

Note

Stats 2008 ch 69 provides:

SECTION 1.  The Legislature finds and declares all of the following:

(a) California is facing an unprecedented threat to its state economy and local economies because of skyrocketing residential property foreclosure rates in California. Residential property foreclosures increased sevenfold from 2006 to 2007. In 2007, more than 84,375 properties were lost to foreclosure in California, and 254,824 loans went into default, the first step in the foreclosure process.

(b) High foreclosure rates have adversely affected property values in California, and will have even greater adverse consequences as foreclosure rates continue to rise. According to statistics released by the HOPE NOW Alliance, the number of completed California foreclosure sales in 2007 increased almost threefold from 1,902 in the first quarter to 5,574 in the fourth quarter of that year. Those same statistics report that 10,556 foreclosure sales, almost double the number for the prior quarter, were completed just in the month of January 2008. More foreclosures means less money for schools, public safety, and other key services.

(c) Under specified circumstances, mortgage lenders and servicers are authorized under their pooling and servicing agreements to modify mortgage loans when the modification is in the best interest of investors. Generally, that modification may be deemed to be in the best interest of investors when the net present value of the income stream of the modified loan is greater than the amount that would be recovered through the disposition of the real property security through a foreclosure sale.

NOTICE OF REMOVAL
EXHIBIT A PAGE 150

Cal Civ Code § 2923.5

(d) It is essential to the economic health of California for the state to ameliorate the deleterious effects on the state economy and local economies and the California housing market that will result from the continued foreclosures of residential properties in unprecedented numbers by modifying the foreclosure process to require mortgagees, beneficiaries, or authorized agents to contact borrowers and explore options that could avoid foreclosure. These changes in accessing the state's foreclosure process are essential to ensure that the process does not exacerbate the current crisis by adding more foreclosures to the glut of foreclosed properties already on the market when a foreclosure could have been avoided. Those additional foreclosures will further destabilize the housing market with significant, corresponding deleterious effects on the local and state economy.

(e) According to a survey released by the Federal Home Loan Mortgage Corporation (Freddie Mac) on January 31, 2008, 57 percent of the nation's late-paying borrowers do not know their lenders may offer alternatives to help them avoid foreclosure.

(f) As reflected in recent government and industry-led efforts to help troubled borrowers, the mortgage foreclosure crisis impacts borrowers not only in nontraditional loans, but also many borrowers in conventional loans.

(g) This act is necessary to avoid unnecessary foreclosures of residential properties and thereby provide stability to California's statewide and regional economies and housing market by requiring early contact and communications between mortgagees, beneficiaries, or authorized agents and specified borrowers to explore options that could avoid foreclosure and by facilitating the modification or restructuring of loans in appropriate circumstances.

SEC. 7. Nothing in this act is intended to affect any local just-cause eviction ordinance. This act does not, and shall not be construed to, affect the authority of a public entity that otherwise exists to regulate or monitor the basis for eviction.

SEC. 8. The provisions of this act are severable. If any provision of this act or its application is held invalid, that invalidity shall not affect other provisions or applications that can be given effect without the invalid provision or application.


**Law Review Articles:**

Civil: Does Opportunity Knock? The California Foreclosure Prevention Act of 2009. *41 McGeorge L. Rev. 511.*


**Annotations:**

Preemption Issues Arising Under Home Owners' Loan Act of 1933, *12 U.S.C.A. §§ 1461 et seq. 13 ALR Fed 2d 161.*

**Hierarchy Notes:**

Div. 3, Pt. 4, Tit. 14, Ch. 2 Note

Div. 3, Pt. 4. Tit. 14, Ch. 2, Art. 1 Note


**LexisNexis 50 State Surveys, Legislation & Regulations**

NOTICE OF REMOVAL
EXHIBIT A PAGE 151

 **LexisNexis®**

6 of 38 DOCUMENTS

DEERING'S CALIFORNIA CODES ANNOTATED
Copyright (c) 2013 by Matthew Bender & Company, Inc.
a member of the LexisNexis Group.
All rights reserved.

*** This document is current through the 2013 Supplement ***
(All 2012 legislation, 2012 Governor's Reorg. Plan No. 2 and all
propositions approved by the electorate at the June and November 2012 elections)

CIVIL CODE
Division 3. Obligations
Part 4. Obligations Arising from Particular Transactions
Title 14. Lien
Chapter 2. Mortgage
Article 1. Mortgages in General

GO TO CALIFORNIA CODES ARCHIVE DIRECTORY

*Cal Civ Code § 2923.55 (2013)*

First of 2 versions of this section

§ 2923.55. (First of two; Repealed January 1, 2018) Recording of notice of default; Conditions; Information in writing to borrower required; "Due diligence"; Applicability

(a) A mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent may not record a notice of default pursuant to Section 2924 until all of the following:

(1) The mortgage servicer has satisfied the requirements of paragraph (1) of subdivision (b).

(2) Either 30 days after initial contact is made as required by paragraph (2) of subdivision (b) or 30 days after satisfying the due diligence requirements as described in subdivision (f).

(3) The mortgage servicer complies with subdivision (c) of Section 2923.6, if the borrower has provided a complete application as defined in subdivision (h) of Section 2923.6.

(b)

(1) As specified in subdivision (a), a mortgage servicer shall send the following information in writing to the borrower:

(A) A statement that if the borrower is a servicemember or a dependent of a servicemember, he or she may be

9

entitled to certain protections under the federal Servicemembers Civil Relief Act *(50 U.S.C. Sec. 501* et seq.) regarding the servicemember's interest rate and the risk of foreclosure, and counseling for covered servicemembers that is available at agencies such as Military OneSource and Armed Forces Legal Assistance.

(B) A statement that the borrower may request the following:

(i) A copy of the borrower's promissory note or other evidence of indebtedness.

(ii) A copy of the borrower's deed of trust or mortgage.

(iii) A copy of any assignment, if applicable, of the borrower's mortgage or deed of trust required to demonstrate the right of the mortgage servicer to foreclose.

(iv) A copy of the borrower's payment history since the borrower was last less than 60 days past due.

(2) A mortgage servicer shall contact the borrower in person or by telephone in order to assess the borrower's financial situation and explore options for the borrower to avoid foreclosure. During the initial contact, the mortgage servicer shall advise the borrower that he or she has the right to request a subsequent meeting and, if requested, the mortgage servicer shall schedule the meeting to occur within 14 days. The assessment of the borrower's financial situation and discussion of options may occur during the first contact, or at the subsequent meeting scheduled for that purpose. In either case, the borrower shall be provided the toll-free telephone number made available by the United States Department of Housing and Urban Development (HUD) to find a HUD-certified housing counseling agency. Any meeting may occur telephonically.

(c) A notice of default recorded pursuant to Section 2924 shall include a declaration that the mortgage servicer has contacted the borrower, has tried with due diligence to contact the borrower as required by this section, or that no contact was required because the individual did not meet the definition of "borrower" pursuant to subdivision (c) of Section 2920.5.

(d) A mortgage servicer's loss mitigation personnel may participate by telephone during any contact required by this section.

(e) A borrower may designate, with consent given in writing, a HUD-certified housing counseling agency, attorney, or other adviser to discuss with the mortgage servicer, on the borrower's behalf, the borrower's financial situation and options for the borrower to avoid foreclosure. That contact made at the direction of the borrower shall satisfy the contact requirements of paragraph (2) of subdivision (b). Any foreclosure prevention alternative offered at the meeting by the mortgage servicer is subject to approval by the borrower.

(f) A notice of default may be recorded pursuant to Section 2924 when a mortgage servicer has not contacted a borrower as required by paragraph (2) of subdivision (b), provided that the failure to contact the borrower occurred despite the due diligence of the mortgage servicer. For purposes of this section, "due diligence" shall require and mean all of the following:

(1) A mortgage servicer shall first attempt to contact a borrower by sending a first-class letter that includes the toll-free telephone number made available by HUD to find a HUD-certified housing counseling agency.

(2)

(A) After the letter has been sent, the mortgage servicer shall attempt to contact the borrower by telephone at least three times at different hours and on different days. Telephone calls shall be made to the primary telephone number on file.

(B) A mortgage servicer may attempt to contact a borrower using an automated system to dial borrowers,

provided that, if the telephone call is answered, the call is connected to a live representative of the mortgage servicer.

(C) A mortgage servicer satisfies the telephone contact requirements of this paragraph if it determines, after attempting contact pursuant to this paragraph, that the borrower's primary telephone number and secondary telephone number or numbers on file, if any, have been disconnected.

(3) If the borrower does not respond within two weeks after the telephone call requirements of paragraph (2) have been satisfied, the mortgage servicer shall then send a certified letter, with return receipt requested, that includes the toll-free telephone number made available by HUD to find a HUD-certified housing counseling agency.

(4) The mortgage servicer shall provide a means for the borrower to contact it in a timely manner, including a toll-free telephone number that will provide access to a live representative during business hours.

(5) The mortgage servicer has posted a prominent link on the homepage of its Internet Web site, if any, to the following information:

(A) Options that may be available to borrowers who are unable to afford their mortgage payments and who wish to avoid foreclosure, and instructions to borrowers advising them on steps to take to explore those options.

(B) A list of financial documents borrowers should collect and be prepared to present to the mortgage servicer when discussing options for avoiding foreclosure.

(C) A toll-free telephone number for borrowers who wish to discuss options for avoiding foreclosure with their mortgage servicer.

(D) The toll-free telephone number made available by HUD to find a HUD-certified housing counseling agency.

(g) This section shall not apply to entities described in subdivision (b) of Section 2924.18.

(h) This section shall apply only to mortgages or deeds of trust described in Section 2924.15.

(i) This section shall remain in effect only until January 1, 2018, and as of that date is repealed, unless a later enacted statute, that is enacted before January 1, 2018, deletes or extends that date.

## HISTORY:

Added Stats 2012 ch 86 § 6 (AB 278), effective January 1, 2013, repealed January 1, 2018.

## NOTES:

**Editor's Notes**

For legislative findings and declarations see the 2012 Note following *CC § 2920.5* (First of two).

**Former Sections:**

Former CC § 2923.55, relating to specified conditions for which *CC § 2923.52* is inapplicable, was added Stats 2009-2010 2d Ex Sess ch 4 § 6 (SB 7XX), effective May 21, 2009, and ch 5 § 6 (AB 7XX), effective May 21, 2009, and repealed January 1, 2011, by its own terms.

NOTICE OF REMOVAL
EXHIBIT A PAGE 154



10 of 38 DOCUMENTS

DEERING'S CALIFORNIA CODES ANNOTATED
Copyright (c) 2013 by Matthew Bender & Company, Inc.
a member of the LexisNexis Group.
All rights reserved.

*** This document is current through the 2013 Supplement ***
(All 2012 legislation, 2012 Governor's Reorg. Plan No. 2 and all
propositions approved by the electorate at the June and November 2012 elections)

CIVIL CODE
Division 3. Obligations
Part 4. Obligations Arising from Particular Transactions
Title 14. Lien
Chapter 2. Mortgage
Article 1. Mortgages in General

GO TO CALIFORNIA CODES ARCHIVE DIRECTORY

Cal Civ Code § 2923.6 (2013)

First of 3 versions of this section

§ 2923.6.  (First of three; Repealed January 1, 2018) Legislative findings and declarations; Loan modification or
workout plan; Conditions for recording notice of default or sale, or conducting trustee's sale; Denial of
application

   (a) The Legislature finds and declares that any duty that mortgage servicers may have to maximize net present
value under their pooling and servicing agreements is owed to all parties in a loan pool, or to all investors under a
pooling and servicing agreement, not to any particular party in the loan pool or investor under a pooling and servicing
agreement, and that a mortgage servicer acts in the best interests of all parties to the loan pool or investors in the
pooling and servicing agreement if it agrees to or implements a loan modification or workout plan for which both of the
following apply:

   (1) The loan is in payment default, or payment default is reasonably foreseeable.

   (2) Anticipated recovery under the loan modification or workout plan exceeds the anticipated recovery through
foreclosure on a net present value basis.

   (b) It is the intent of the Legislature that the mortgage servicer offer the borrower a loan modification or workout
plan if such a modification or plan is consistent with its contractual or other authority.

NOTICE OF REMOVAL
EXHIBIT A PAGE 155

Cal Civ Code § 2923.6

(c) If a borrower submits a complete application for a first lien loan modification offered by, or through, the borrower's mortgage servicer, a mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall not record a notice of default or notice of sale, or conduct a trustee's sale, while the complete first lien loan modification application is pending. A mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall not record a notice of default or notice of sale or conduct a trustee's sale until any of the following occurs:

(1) The mortgage servicer makes a written determination that the borrower is not eligible for a first lien loan modification, and any appeal period pursuant to subdivision (d) has expired.

(2) The borrower does not accept an offered first lien loan modification within 14 days of the offer.

(3) The borrower accepts a written first lien loan modification, but defaults on, or otherwise breaches the borrower's obligations under, the first lien loan modification.

(d) If the borrower's application for a first lien loan modification is denied, the borrower shall have at least 30 days from the date of the written denial to appeal the denial and to provide evidence that the mortgage servicer's determination was in error.

(e) If the borrower's application for a first lien loan modification is denied, the mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall not record a notice of default or, if a notice of default has already been recorded, record a notice of sale or conduct a trustee's sale until the later of:

(1) Thirty-one days after the borrower is notified in writing of the denial.

(2) If the borrower appeals the denial pursuant to subdivision (d), the later of 15 days after the denial of the appeal or 14 days after a first lien loan modification is offered after appeal but declined by the borrower, or, if a first lien loan modification is offered and accepted after appeal, the date on which the borrower fails to timely submit the first payment or otherwise breaches the terms of the offer.

(f) Following the denial of a first lien loan modification application, the mortgage servicer shall send a written notice to the borrower identifying the reasons for denial, including the following:

(1) The amount of time from the date of the denial letter in which the borrower may request an appeal of the denial of the first lien loan modification and instructions regarding how to appeal the denial.

(2) If the denial was based on investor disallowance, the specific reasons for the investor disallowance.

(3) If the denial is the result of a net present value calculation, the monthly gross income and property value used to calculate the net present value and a statement that the borrower may obtain all of the inputs used in the net present value calculation upon written request to the mortgage servicer.

(4) If applicable, a finding that the borrower was previously offered a first lien loan modification and failed to successfully make payments under the terms of the modified loan.

(5) If applicable, a description of other foreclosure prevention alternatives for which the borrower may be eligible, and a list of the steps the borrower must take in order to be considered for those options. If the mortgage servicer has already approved the borrower for another foreclosure prevention alternative, information necessary to complete the foreclosure prevention alternative.

(g) In order to minimize the risk of borrowers submitting multiple applications for first lien loan modifications for the purpose of delay, the mortgage servicer shall not be obligated to evaluate applications from borrowers who have already been evaluated or afforded a fair opportunity to be evaluated for a first lien loan modification prior to January 1, 2013, or who have been evaluated or afforded a fair opportunity to be evaluated consistent with the requirements of this

NOTICE OF REMOVAL
EXHIBIT A PAGE 156

Cal Civ Code § 2923.6

section, unless there has been a material change in the borrower's financial circumstances since the date of the borrower's previous application and that change is documented by the borrower and submitted to the mortgage servicer.

(h) For purposes of this section, an application shall be deemed "complete" when a borrower has supplied the mortgage servicer with all documents required by the mortgage servicer within the reasonable timeframes specified by the mortgage servicer.

(i) Subdivisions (c) to (h), inclusive, shall not apply to entities described in subdivision (b) of Section 2924.18.

(j) This section shall apply only to mortgages or deeds of trust described in Section 2924.15.

(k) This section shall remain in effect only until January 1, 2018, and as of that date is repealed, unless a later enacted statute, that is enacted before January 1, 2018, deletes or extends that date.

**HISTORY:**

Added Stats 2008 ch 69 § 3 (SB 1137), effective July 8, 2008, repealed January 1, 2013. Amended Stats 2009 ch 43 § 2 (SB 306), effective January 1, 2010, repealed January 1, 2013; Stats 2012 ch 86 § 7 (AB 278), effective January 1, 2013, repealed January 1, 2018, ch 87 § 7 (SB 900), effective January 1, 2013, repealed January 1, 2018.

**NOTES:**

**Editor's Notes**

For legislative findings and declarations, see the 2012 Note under *CC § 2920.5* (Second of two).

**Amendments:**

**2009 Amendment:**

Amended the introductory clause of subd (a) by (1) adding "or to all investors under a pooling and servicing agreement,"; (2) substituting "party in the loan pool or investor under a polling and servicing agreement" for "parties"; and (3) adding "to the loan pool or investors in the pooling and servicing agreement".

**2012 Amendment:**

(1) Amended the introductory clause of subd (a) by (a) adding "that mortgage"; (b) substituting "pooling" for "polling" after "investor under a"; and (c) adding "mortgage" before "servicer acts in"; (2) substituted "mortgage servicer" for "mortgagee, beneficiary, or authorized agent" in subd (b); (3) added subds (c)-(i); (4) redesignated former subd (c) to be subd (k); and (5) substituted "January 1, 2018" for "January 1, 2013" both times it appears in subd (k). (As amended Stats 2012 ch 87 compared to the section as it read prior to 2012. This section was also amended by an earlier chapter, ch 86. See *Gov C § 9605*.)

**Note**

Stats 2008 ch 69 provides:

NOTICE OF REMOVAL
EXHIBIT A PAGE 157



13 of 38 DOCUMENTS

DEERING'S CALIFORNIA CODES ANNOTATED
Copyright (c) 2013 by Matthew Bender & Company, Inc.
a member of the LexisNexis Group.
All rights reserved.

*** This document is current through the 2013 Supplement ***
(All 2012 legislation, 2012 Governor's Reorg. Plan No. 2 and all
propositions approved by the electorate at the June and November 2012 elections)

CIVIL CODE
Division 3. Obligations
Part 4. Obligations Arising from Particular Transactions
Title 14. Lien
Chapter 2. Mortgage
Article 1. Mortgages in General

GO TO CALIFORNIA CODES ARCHIVE DIRECTORY

*Cal Civ Code § 2923.7 (2013)*

First of 2 versions of this section

§ 2923.7. (First of two) Responsibilities of single point of contact; Applicability

(a) Upon request from a borrower who requests a foreclosure prevention alternative, the mortgage servicer shall promptly establish a single point of contact and provide to the borrower one or more direct means of communication with the single point of contact.

(b) The single point of contact shall be responsible for doing all of the following:

(1) Communicating the process by which a borrower may apply for an available foreclosure prevention alternative and the deadline for any required submissions to be considered for these options.

(2) Coordinating receipt of all documents associated with available foreclosure prevention alternatives and notifying the borrower of any missing documents necessary to complete the application.

(3) Having access to current information and personnel sufficient to timely, accurately, and adequately inform the borrower of the current status of the foreclosure prevention alternative.

(4) Ensuring that a borrower is considered for all foreclosure prevention alternatives offered by, or through, the mortgage servicer, if any.

15

NOTICE OF REMOVAL
EXHIBIT A PAGE 158

(5) Having access to individuals with the ability and authority to stop foreclosure proceedings when necessary.

(c) The single point of contact shall remain assigned to the borrower's account until the mortgage servicer determines that all loss mitigation options offered by, or through, the mortgage servicer have been exhausted or the borrower's account becomes current.

(d) The mortgage servicer shall ensure that a single point of contact refers and transfers a borrower to an appropriate supervisor upon request of the borrower, if the single point of contact has a supervisor.

(e) For purposes of this section, "single point of contact" means an individual or team of personnel each of whom has the ability and authority to perform the responsibilities described in subdivisions (b) to (d), inclusive. The mortgage servicer shall ensure that each member of the team is knowledgeable about the borrower's situation and current status in the alternatives to foreclosure process.

(f) This section shall apply only to mortgages or deeds of trust described in Section 2924.15.

(g)

(1) This section shall not apply to a depository institution chartered under state or federal law, a person licensed pursuant to Division 9 (commencing with Section 22000) or Division 20 (commencing with Section 50000) of the Financial Code, or a person licensed pursuant to Part 1 (commencing with Section 10000) of Division 4 of the Business and Professions Code, that, during its immediately preceding annual reporting period, as established with its primary regulator, foreclosed on 175 or fewer residential real properties, containing no more than four dwelling units, that are located in California.

(2) Within three months after the close of any calendar year or annual reporting period as established with its primary regulator during which an entity or person described in paragraph (1) exceeds the threshold of 175 specified in paragraph (1), that entity shall notify its primary regulator, in a manner acceptable to its primary regulator, and any mortgagor or trustor who is delinquent on a residential mortgage loan serviced by that entity of the date on which that entity will be subject to this section, which date shall be the first day of the first month that is six months after the close of the calendar year or annual reporting period during which that entity exceeded the threshold.

**HISTORY:**

Added Stats 2012 ch 86 § 9 (AB 278), effective January 1, 2013.

**NOTES:**

**Editor's Notes**

For legislative findings and declarations, see the 2012 Note under CC § 2920.5 (First of two).

**Hierarchy Notes:**

Div. 3, Pt. 4, Tit. 14, Ch. 2 Note

Div. 3, Pt. 4, Tit. 14, Ch. 2, Art. 1 Note

NOTICE OF REMOVAL
EXHIBIT A PAGE 159

Page 1



1 of 1 DOCUMENT

DEERING'S CALIFORNIA CODES ANNOTATED
Copyright (c) 2013 by Matthew Bender & Company, Inc.
a member of the LexisNexis Group.
All rights reserved.

*** This document is current through the 2013 Supplement ***
(All 2012 legislation, 2012 Governor's Reorg. Plan No. 2 and all
propositions approved by the electorate at the June and November 2012 elections)

CIVIL CODE
Division 3. Obligations
Part 4. Obligations Arising from Particular Transactions
Title 14. Lien
Chapter 2. Mortgage
Article 1. Mortgages in General

GO TO CALIFORNIA CODES ARCHIVE DIRECTORY

Cal Civ Code § 2924 (2013)

§ 2924. Transfer as security deemed mortgage or pledge; Exercise of power of sale; No liability for good faith error; Recital of acts as prima facie evidence; Privileged communications; Rebuttable presumption

(a) Every transfer of an interest in property, other than in trust, made only as a security for the performance of another act, is to be deemed a mortgage, except when in the case of personal property it is accompanied by actual change of possession, in which case it is to be deemed a pledge. Where, by a mortgage created after July 27, 1917, of any estate in real property, other than an estate at will or for years, less than two, or in any transfer in trust made after July 27, 1917, of a like estate to secure the performance of an obligation, a power of sale is conferred upon the mortgagee, trustee, or any other person, to be exercised after a breach of the obligation for which that mortgage or transfer is a security, the power shall not be exercised except where the mortgage or transfer is made pursuant to an order, judgment, or decree of a court of record, or to secure the payment of bonds or other evidences of indebtedness authorized or permitted to be issued by the Commissioner of Corporations, or is made by a public utility subject to the provisions of the Public Utilities Act, until all of the following apply:

(1) The trustee, mortgagee, or beneficiary, or any of their authorized agents shall first file for record, in the office of the recorder of each county wherein the mortgaged or trust property or some part or parcel thereof is situated, a notice of default. That notice of default shall include all of the following:

(A) A statement identifying the mortgage or deed of trust by stating the name or names of the trustor or trustors and giving the book and page, or instrument number, if applicable, where the mortgage or deed of trust is recorded or a description of the mortgaged or trust property.

17

NOTICE OF REMOVAL
EXHIBIT A PAGE 160

Cal Civ Code § 2924                              Page 2

(B) A statement that a breach of the obligation for which the mortgage or transfer in trust is security has occurred.

(C) A statement setting forth the nature of each breach actually known to the beneficiary and of his or her election to sell or cause to be sold the property to satisfy that obligation and any other obligation secured by the deed of trust or mortgage that is in default.

(D) If the default is curable pursuant to Section 2924c, the statement specified in paragraph (1) of subdivision (b) of Section 2924c.

(2) Not less than three months shall elapse from the filing of the notice of default.

(3) Except as provided in paragraph (4), after the lapse of the three months described in paragraph (2), the mortgagee, trustee, or other person authorized to take the sale shall give notice of sale, stating the time and place thereof, in the manner and for a time not less than that set forth in Section 2924f.

(4) Notwithstanding paragraph (3), the mortgagee, trustee, or other person authorized to take sale may record a notice of sale pursuant to Section 2924f up to five days before the lapse of the three-month period described in paragraph (2), provided that the date of sale is no earlier than three months and 20 days after the recording of the notice of default.

(5) Until January 1, 2018, whenever a sale is postponed for a period of at least 10 business days pursuant to Section 2924g, a mortgagee, beneficiary, or authorized agent shall provide written notice to a borrower regarding the new sale date and time, within five business days following the postponement. Information provided pursuant to this paragraph shall not constitute the public declaration required by subdivision (d) of Section 2924g. Failure to comply with this paragraph shall not invalidate any sale that would otherwise be valid under Section 2924f. This paragraph shall be inoperative on January 1, 2018.

(6) No entity shall record or cause a notice of default to be recorded or otherwise initiate the foreclosure process unless it is the holder of the beneficial interest under the mortgage or deed of trust, the original trustee or the substituted trustee under the deed of trust, or the designated agent of the holder of the beneficial interest. No agent of the holder of the beneficial interest under the mortgage or deed of trust, original trustee or substituted trustee under the deed of trust may record a notice of default or otherwise commence the foreclosure process except when acting within the scope of authority designated by the holder of the beneficial interest.

(b) In performing acts required by this article, the trustee shall incur no liability for any good faith error resulting from reliance on information provided in good faith by the beneficiary regarding the nature and the amount of the default under the secured obligation, deed of trust, or mortgage. In performing the acts required by this article, a trustee shall not be subject to Title 1.6c (commencing with Section 1788) of Part 4.

(c) A recital in the deed executed pursuant to the power of sale of compliance with all requirements of law regarding the mailing of copies of notices or the publication of a copy of the notice of default or the personal delivery of the copy of the notice of default or the posting of copies of the notice of sale or the publication of a copy thereof shall constitute prima facie evidence of compliance with these requirements and conclusive evidence thereof in favor of bona fide purchasers and encumbrancers for value and without notice.

(d) All of the following shall constitute privileged communications pursuant to Section 47:

(1) The mailing, publication, and delivery of notices as required by this section.

(2) Performance of the procedures set forth in this article.

(3) Performance of the functions and procedures set forth in this article if those functions and procedures are

18

NOTICE OF REMOVAL
EXHIBIT A PAGE 161

necessary to carry out the duties described in *Sections 729.040, 729.050, and 729.080 of the Code of Civil Procedure.*

(e) There is a rebuttable presumption that the beneficiary actually knew of all unpaid loan payments on the obligation owed to the beneficiary and secured by the deed of trust or mortgage subject to the notice of default. However, the failure to include an actually known default shall not invalidate the notice of sale and the beneficiary shall not be precluded from asserting a claim to this omitted default or defaults in a separate notice of default.

(f) With respect to residential real property containing no more than four dwelling units, a separate document containing a summary of the notice of default information in English and the languages described in Section 1632 shall be attached to the notice of default provided to the mortgagor or trustor pursuant to Section 2923.3.

## HISTORY:

Added Stats 2009-2010 2d Ex Sess ch 4 § 8 (SB 7XX), effective May 21, 2009, operative January 1, 2011. Amended Stats 2010 ch 180 § 1 (SB 1221), effective January 1, 2011, operative January 1, 2011; Stats 2012 ch 86 § 10 (AB 278), effective January 1, 2013, ch 87 § 10 (SB 900), effective January 1, 2013, ch 556 § 2.5 (AB 1599), effective January 1, 2013.

## NOTES:

## Former Sections:

Former CC 2924, similar to the present section, was added Stats 2009-2010 2d Ex Sess ch 5 § 8 (AB 7XX), effective May 21, 2009, operative January 1, 2011, amended Stats 2010 ch 180 § 2 (SB 1221), effective January 1, 2011, operative January 1, 2011, and repealed Stats 2012 ch 86 § 11 (AB 278), effective January 1, 2013, ch 87 § 11 (SB 900), effective January 1, 2013, and ch 556 § 3 (AB 1599), effective January 1, 2013.

Former § 2924, similar to the present section, was enacted 1872, amended Code Amdts 1873-74 ch 612 § 256; Stats 1917 ch 204 § 1; Stats 1923 ch 374 § 1; Stats 1931 ch 764 § 1; Stats 1933 ch 642 § 1, reenacted Stats 1935 ch 650 § 1, amended Stats 1939 ch 983 § 1; Stats 1959 ch 1890 § 1; Stats 1972 ch 1056 § 1; Stats 1973 ch 817 § 1, operative July 1, 1974; Stats 1981 ch 427 § 1; Stats 1990 ch 657 § 1; Stats 1993 ch 686 § 2; Stats 1995 ch 752 § 1; Stats 1996 ch 483 § 1; Stats 1999 ch 974 § 8; Stats 2000 ch 636 § 6; Stats 2006 ch 575 § 4, effective January 1, 2007; Stats 2009-2010 2d Ex Sess ch 4 § 7, effective May 21, 2009, ch 5 § 7, effective May 21, 2009, repealed January 1, 2011, and repealed January 1, 2011, by its own terms.

## Amendments:

## 2010 Amendment:

Added (1) "Except as provided in paragraph (4)," in subd (a)(3); and (2) subd (a)(4). (As amended Stats 2012 ch 556, compared to the section as it read prior to 2012. This section was also amended by two earlier chapters, ch 86 and 87. See *Gov C § 9605*.)

## 2012 Amendment:

(1) Amended subd (a)(4) by substituting (a) "record" for "file"; and (b) "recording" for "filing"; (2) added subds (a)(5) and (a)(6); and (3) substituted subd (f) for former subd (f) which read: "(f) This section shall become operative on

Cal Civ Code § 2924

January 1, 2011." (As amended Stats 2012 ch 556, compared to the section as it read prior to 2012. This section was also amended by two earlier chapters, ch 86 and 87. See *Gov C § 9605.*)

**Historical Derivation:**

(a) CC *§ 2924b*, as added Stats 1933 ch 642 § 2. Reenacted by Stats 1935 ch 650 § 2, Stats 1939 ch 983 § 2, Stats 1951 ch 417 § 2, Stats 1957 ch 1865 § 11.

(b) Field's Draft NY CC § 1610.

*Note*

Stats 1990 ch 657 provides:

SEC. 3. It is the intent of the Legislature in enacting this act to supersede the holding in *Anderson v. Heart Federal Savings*, 208 Cal. App. 3d 202, to the extent that decision restricted the ability of mortgagees and beneficiaries under trust deeds to demand payment of all amounts in default under the terms of an obligation secured by a mortgage or trust deed as a condition to reinstatement of the obligation and avoidance of a sale of the security property to satisfy the obligation.

Stats 2009-2010 2d Ex Sess ch 4 provides:

SECTION 1.  This act shall be known as the California Foreclosure Prevention Act.

SEC. 2.  The Legislature finds and declares all of the following:

(a) California is facing an unprecedented threat to its state and local economies due to skyrocketing residential property foreclosure rates in California. Those high foreclosure rates have adversely affected property values in California, and will have even greater adverse consequences as foreclosure rates continue to rise.

(b) It is essential to the economic health of California for the state to ameliorate the deleterious effects that will result from the continued high rate of foreclosure of residential properties by modifying the foreclosure process to provide additional time for borrowers to work out loan modifications while providing an exemption for mortgage loan servicers that have implemented a comprehensive loan modification program. This change in accessing the state's foreclosure process is essential to ensure that the process does not exacerbate the current crisis by adding more foreclosures to the glut of foreclosed properties already on the market if the foreclosure may be avoided through a loan modification. Those additional foreclosures could further destabilize the housing market with significant, corresponding deleterious effects on the state and local economies.

**Law Review Articles:**

Civil: Does Opportunity Knock? The California Foreclosure Prevention Act of 2009. *41 McGeorge L. Rev. 511.*

**Cross References:**

Mode of recording instruments affecting real property: *CC §§ 1169 et seq.*

20

NOTICE OF REMOVAL
EXHIBIT A PAGE 163

 **LexisNexis®**

15 of 38 DOCUMENTS

DEERING'S CALIFORNIA CODES ANNOTATED
Copyright (c) 2013 by Matthew Bender & Company, Inc.
a member of the LexisNexis Group.
All rights reserved.

*** This document is current through the 2013 Supplement ***
(All 2012 legislation, 2012 Governor's Reorg. Plan No. 2 and all
propositions approved by the electorate at the June and November 2012 elections)

CIVIL CODE
Division 3.  Obligations
Part 4.  Obligations Arising from Particular Transactions
Title 14.  Lien
Chapter 2.  Mortgage
Article 1.  Mortgages in General

GO TO CALIFORNIA CODES ARCHIVE DIRECTORY

Cal Civ Code § 2924.9 (2013)

First of 2 versions of this section

§ 2924.9.  (First of two; Repealed January 1, 2018) Written communication to borrower required after mortgage
servicer recorded notice of default pursuant to Section 2924

(a) Unless a borrower has previously exhausted the first lien loan modification process offered by, or through, his
or her mortgage servicer described in Section 2923.6, within five business days after recording a notice of default
pursuant to Section 2924, a mortgage servicer that offers one or more foreclosure prevention alternatives shall send a
written communication to the borrower that includes all of the following information:

(1) That the borrower may be evaluated for a foreclosure prevention alternative or, if applicable, foreclosure
prevention alternatives.

(2) Whether an application is required to be submitted by the borrower in order to be considered for a foreclosure
prevention alternative.

(3) The means and process by which a borrower may obtain an application for a foreclosure prevention alternative.

(b) This section shall not apply to entities described in subdivision (b) of Section 2924.18.

(c) This section shall apply only to mortgages or deeds of trust described in Section 2924.15.

NOTICE OF REMOVAL
EXHIBIT A PAGE 164

Cal Civ Code § 2924.9

(d) This section shall remain in effect only until January 1, 2018, and as of that date is repealed, unless a later enacted statute, that is enacted before January 1, 2018, deletes or extends that date.

**HISTORY:**

Added Stats 2012 ch 86 § 12 (AB 278), effective January 1, 2013, repealed January 1, 2018.

**NOTES:**

**Editor's Notes**

For legislative findings and declarations see the 2012 Note following *CC § 2920.5* (First of two)

**Hierarchy Notes:**

Div. 3, Pt. 4, Tit. 14, Ch. 2 Note

Div. 3, Pt. 4, Tit. 14, Ch. 2, Art. 1 Note

**NOTICE OF REMOVAL
EXHIBIT A PAGE 165**



16 of 38 DOCUMENTS

DEERING'S CALIFORNIA CODES ANNOTATED
Copyright (c) 2013 by Matthew Bender & Company, Inc.
a member of the LexisNexis Group.
All rights reserved.

*** This document is current through the 2013 Supplement ***
(All 2012 legislation, 2012 Governor's Reorg. Plan No. 2 and all
propositions approved by the electorate at the June and November 2012 elections)

CIVIL CODE
Division 3. Obligations
Part 4. Obligations Arising from Particular Transactions
Title 14. Lien
Chapter 2. Mortgage
Article 1. Mortgages in General

GO TO CALIFORNIA CODES ARCHIVE DIRECTORY

*Cal Civ Code § 2924.10 (2013)*

*First of 2 versions of this section*

§ 2924.10. (First of two; Repealed January 1, 2018) Acknowledgment of receipt of loan modification application;
Responsibilities of mortgage servicer

(a) When a borrower submits a complete first lien modification application or any document in connection with a
first lien modification application, the mortgage servicer shall provide written acknowledgment of the receipt of the
documentation within five business days of receipt. In its initial acknowledgment of receipt of the loan modification
application, the mortgage servicer shall include the following information:

(1) A description of the loan modification process, including an estimate of when a decision on the loan
modification will be made after a complete application has been submitted by the borrower and the length of time the
borrower will have to consider an offer of a loan modification or other foreclosure prevention alternative.

(2) Any deadlines, including deadlines to submit missing documentation, that would affect the processing of a first
lien loan modification application.

(3) Any expiration dates for submitted documents.

(4) Any deficiency in the borrower's first lien loan modification application.

NOTICE OF REMOVAL
EXHIBIT A PAGE 166

(b) For purposes of this section, a borrower's first lien loan modification application shall be deemed to be "complete" when a borrower has supplied the mortgage servicer with all documents required by the mortgage servicer within the reasonable timeframes specified by the mortgage servicer.

(c) This section shall not apply to entities described in subdivision (b) of Section 2924.18.

(d) This section shall apply only to mortgages or deeds of trust described in Section 2924.15.

(e) This section shall remain in effect only until January 1, 2018, and as of that date is repealed, unless a later enacted statute, that is enacted before January 1, 2018, deletes or extends that date.

**HISTORY:**

Added Stats 2012 ch 86 § 13 (AB 278), effective January 1, 2013, repealed January 1, 2018.

**NOTES:**

**Editor's Notes**

For legislative findings and declarations see the 2012 Note following CC § 2920.5 (First of two).

**Hierarchy Notes:**

Div. 3, Pt. 4, Tit. 14, Ch. 2 Note

Div. 3, Pt. 4, Tit. 14, Ch. 2, Art. 1 Note

NOTICE OF REMOVAL
EXHIBIT A PAGE 167



18 of 38 DOCUMENTS

DEERING'S CALIFORNIA CODES ANNOTATED
Copyright (c) 2013 by Matthew Bender & Company, Inc.
a member of the LexisNexis Group.
All rights reserved.

*** This document is current through the 2013 Supplement ***
(All 2012 legislation, 2012 Governor's Reorg. Plan No. 2 and all
propositions approved by the electorate at the June and November 2012 elections)

CIVIL CODE
Division 3.  Obligations
Part 4.  Obligations Arising from Particular Transactions
Title 14.  Lien
Chapter 2.  Mortgage
Article 1.  Mortgages in General

GO TO CALIFORNIA CODES ARCHIVE DIRECTORY

*Cal Civ Code § 2924.11 (2013)*

First of 4 versions of this section

§ 2924.11.  (First of four; Repealed January 1, 2018) Approval of foreclosure prevention alternative; Recording
notice of default or conducting a trustee's sale; Prohibited acts; Rescission or cancellation; Fees; Subsequent
mortgage servicer

(a) If a foreclosure prevention alternative is approved in writing prior to the recordation of a notice of default, a
mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall not record a notice of default under either
of the following circumstances:

(1) The borrower is in compliance with the terms of a written trial or permanent loan modification, forbearance, or
repayment plan.

(2) A foreclosure prevention alternative has been approved in writing by all parties, including, for example, the
first lien investor, junior lienholder, and mortgage insurer, as applicable, and proof of funds or financing has been
provided to the servicer.

(b) If a foreclosure prevention alternative is approved in writing after the recordation of a notice of default, a
mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall not record a notice of sale or conduct a
trustee's sale under either of the following circumstances:

25

NOTICE OF REMOVAL
EXHIBIT A PAGE 168

Cal Civ Code § 2924.11                                                    Page 2

(1) The borrower is in compliance with the terms of a written trial or permanent loan modification, forbearance, or repayment plan.

(2) A foreclosure prevention alternative has been approved in writing by all parties, including, for example, the first lien investor, junior lienholder, and mortgage insurer, as applicable, and proof of funds or financing has been provided to the servicer.

(c) When a borrower accepts an offered first lien loan modification or other foreclosure prevention alternative, the mortgage servicer shall provide the borrower with a copy of the fully executed loan modification agreement or agreement evidencing the foreclosure prevention alternative following receipt of the executed copy from the borrower.

(d) A mortgagee, beneficiary, or authorized agent shall record a rescission of a notice of default or cancel a pending trustee's sale, if applicable, upon the borrower executing a permanent foreclosure prevention alternative. In the case of a short sale, the rescission or cancellation of the pending trustee's sale shall occur when the short sale has been approved by all parties and proof of funds or financing has been provided to the mortgagee, beneficiary, or authorized agent.

(e) The mortgage servicer shall not charge any application, processing, or other fee for a first lien loan modification or other foreclosure prevention alternative.

(f) The mortgage servicer shall not collect any late fees for periods during which a complete first lien loan modification application is under consideration or a denial is being appealed, the borrower is making timely modification payments, or a foreclosure prevention alternative is being evaluated or exercised.

(g) If a borrower has been approved in writing for a first lien loan modification or other foreclosure prevention alternative, and the servicing of that borrower's loan is transferred or sold to another mortgage servicer, the subsequent mortgage servicer shall continue to honor any previously approved first lien loan modification or other foreclosure prevention alternative, in accordance with the provisions of the act that added this section.

(h) This section shall apply only to mortgages or deeds of trust described in Section 2924.15.

(i) This section shall not apply to entities described in subdivision (b) of Section 2924.18.

(j) This section shall remain in effect only until January 1, 2018, and as of that date is repealed, unless a later enacted statute, that is enacted before January 1, 2018, deletes or extends that date.

**HISTORY:**

Added Stats 2012 ch 86 § 14 (AB 278), effective January 1, 2013, repealed January 1, 2018.

**NOTES:**

**Editor's Notes**

For legislative findings and declarations see the 2012 Note following *CC § 2920.5* (First of two).

**Hierarchy Notes:**

Div. 3, Pt. 4, Tit. 14, Ch. 2 Note

Div. 3, Pt. 4, Tit. 14, Ch. 2, Art. 1 Note

NOTICE OF REMOVAL
EXHIBIT A PAGE 169



**LexisNexis®**

DEERING'S CALIFORNIA CODES ANNOTATED
Copyright (c) 2013 by Matthew Bender & Company, Inc.
a member of the LexisNexis Group.
All rights reserved.

*** This document is current through the 2013 Supplement ***
(All 2012 legislation, 2012 Governor's Reorg. Plan No. 2 and all
propositions approved by the electorate at the June and November 2012 elections)

CIVIL CODE
Division 3. Obligations
Part 4. Obligations Arising from Particular Transactions
Title 14. Lien
Chapter 2. Mortgage
Article 1. Mortgages in General

GO TO CALIFORNIA CODES ARCHIVE DIRECTORY

*Cal Civ Code § 2924.12 (2013)*

First of 4 versions of this section

**§ 2924.12.  (First of four; Repealed January 1, 2018) Actions concerning trustee's deed upon sale; Injunctive relief; Liability; Damages; Violations; Attorney's fees and costs**

(a)

(1) If a trustee's deed upon sale has not been recorded, a borrower may bring an action for injunctive relief to enjoin a material violation of Section 2923.55, 2923.6, 2923.7, 2924.9, 2924.10, 2924.11, or 2924.17.

(2) Any injunction shall remain in place and any trustee's sale shall be enjoined until the court determines that the mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent has corrected and remedied the violation or violations giving rise to the action for injunctive relief. An enjoined entity may move to dissolve an injunction based on a showing that the material violation has been corrected and remedied.

(b) After a trustee's deed upon sale has been recorded, a mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall be liable to a borrower for actual economic damages pursuant to Section 3281, resulting from a material violation of Section 2923.55, 2923.6, 2923.7, 2924.9, 2924.10, 2924.11, or 2924.17 by that mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent where the violation was not corrected and remedied prior to the recordation of the trustee's deed upon sale. If the court finds that the material violation was intentional or reckless, or resulted from willful misconduct by a mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent, the court

NOTICE OF REMOVAL
EXHIBIT A PAGE 170

may award the borrower the greater of treble actual damages or statutory damages of fifty thousand dollars ($50,000).

(c) A mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall not be liable for any violation that it has corrected and remedied prior to the recordation of a trustee's deed upon sale, or that has been corrected and remedied by third parties working on its behalf prior to the recordation of a trustee's deed upon sale.

(d) A violation of Section 2923.55, 2923.6, 2923.7, 2924.9, 2924.10, 2924.11, or 2924.17 by a person licensed by the Department of Corporations, Department of Financial Institutions, or Department of Real Estate shall be deemed to be a violation of that person's licensing law.

(e) No violation of this article shall affect the validity of a sale in favor of a bona fide purchaser and any of its encumbrancers for value without notice.

(f) A third-party encumbrancer shall not be relieved of liability resulting from violations of Section 2923.55, 2923.6, 2923.7, 2924.9, 2924.10, 2924.11, or 2924.17 committed by that third-party encumbrancer, that occurred prior to the sale of the subject property to the bona fide purchaser.

(g) A signatory to a consent judgment entered in the case entitled United States of America et al. v. Bank of America Corporation et al., filed in the United States District Court for the District of Columbia, case number 1:12-cv-00361 RMC, that is in compliance with the relevant terms of the Settlement Term Sheet of that consent judgment with respect to the borrower who brought an action pursuant to this section while the consent judgment is in effect shall have no liability for a violation of Section 2923.55, 2923.6, 2923.7, 2924.9, 2924.10, 2924.11, or 2924.17.

(h) The rights, remedies, and procedures provided by this section are in addition to and independent of any other rights, remedies, or procedures under any other law. Nothing in this section shall be construed to alter, limit, or negate any other rights, remedies, or procedures provided by law.

(i) A court may award a prevailing borrower reasonable attorney's fees and costs in an action brought pursuant to this section. A borrower shall be deemed to have prevailed for purposes of this subdivision if the borrower obtained injunctive relief or was awarded damages pursuant to this section.

(j) This section shall not apply to entities described in subdivision (b) of Section 2924.18.

(k) This section shall remain in effect only until January 1, 2018, and as of that date is repealed, unless a later enacted statute, that is enacted before January 1, 2018, deletes or extends that date.

**HISTORY:**

Added Stats 2012 ch 86 § 16 (AB 278), effective January 1, 2013, repealed January 1, 2018.

**NOTES:**

**Editor's Notes**

For legislative findings and declarations see the 2012 Note following *CC § 2920.5* (First of two).

**Hierarchy Notes:**

Div. 3, Pt. 4, Tit. 14, Ch. 2 Note

Div. 3, Pt. 4, Tit. 14, Ch. 2, Art. 1 Note



25 of 38 DOCUMENTS

DEERING'S CALIFORNIA CODES ANNOTATED
Copyright (c) 2013 by Matthew Bender & Company, Inc.
a member of the LexisNexis Group.
All rights reserved.

*** This document is current through the 2013 Supplement ***
(All 2012 legislation, 2012 Governor's Reorg. Plan No. 2 and all
propositions approved by the electorate at the June and November 2012 elections)

CIVIL CODE
Division 3.  Obligations
Part 4.  Obligations Arising from Particular Transactions
Title 14.  Lien
Chapter 2.  Mortgage
Article 1.  Mortgages in General

GO TO CALIFORNIA CODES ARCHIVE DIRECTORY

Cal Civ Code § 2924.15 (2013)

First of 4 versions of this section

§ 2924.15.  (First of four; Repealed January 1, 2018) Applicability of specified code sections to first lien
mortgages or deeds of trust secured by owner-occupied residential real property containing no more than four
dwelling units

(a) Unless otherwise provided, paragraph (5) of subdivision (a) of Section 2924, and Sections 2923.5, 2923.55,
2923.6, 2923.7, 2924.9, 2924.10, 2924.11, and 2924.18 shall apply only to first lien mortgages or deeds of trust that are
secured by owner-occupied residential real property containing no more than four dwelling units. For these purposes,
"owner-occupied" means that the property is the principal residence of the borrower and is security for a loan made for
personal, family, or household purposes.

(b) This section shall remain in effect only until January 1, 2018, and as of that date is repealed, unless a later
enacted statute, that is enacted before January 1, 2018, deletes or extends that date.

HISTORY:

Added Stats 2012 ch 86 § 18 (AB 278), effective January 1, 2013, repealed January 1, 2018.

NOTES:

NOTICE OF REMOVAL
EXHIBIT A PAGE 172



29 of 38 DOCUMENTS

DEERING'S CALIFORNIA CODES ANNOTATED
Copyright (c) 2013 by Matthew Bender & Company, Inc.
a member of the LexisNexis Group.
All rights reserved.

*** This document is current through the 2013 Supplement ***
(All 2012 legislation, 2012 Governor's Reorg. Plan No. 2 and all
propositions approved by the electorate at the June and November 2012 elections)

CIVIL CODE
Division 3. Obligations
Part 4. Obligations Arising from Particular Transactions
Title 14. Lien
Chapter 2. Mortgage
Article 1. Mortgages in General

GO TO CALIFORNIA CODES ARCHIVE DIRECTORY

*Cal Civ Code § 2924.17 (2013)*

First of 2 versions of this section

§ 2924.17. (First of two) Recording or filing of certain documents; Review of evidence to substantiate borrower's default and right to foreclose; Uncorrected violations; Civil penalties

(a) A declaration recorded pursuant to Section 2923.5 or, until January 1, 2018, pursuant to Section 2923.55, a notice of default, notice of sale, assignment of a deed of trust, or substitution of trustee recorded by or on behalf of a mortgage servicer in connection with a foreclosure subject to the requirements of Section 2924, or a declaration or affidavit filed in any court relative to a foreclosure proceeding shall be accurate and complete and supported by competent and reliable evidence.

(b) Before recording or filing any of the documents described in subdivision (a), a mortgage servicer shall ensure that it has reviewed competent and reliable evidence to substantiate the borrower's default and the right to foreclose, including the borrower's loan status and loan information.

(c) Until January 1, 2018, any mortgage servicer that engages in multiple and repeated uncorrected violations of subdivision (b) in recording documents or filing documents in any court relative to a foreclosure proceeding shall be liable for a civil penalty of up to seven thousand five hundred dollars ($7,500) per mortgage or deed of trust in an action brought by a government entity identified in *Section 17204 of the Business and Professions Code*, or in an administrative proceeding brought by the Department of Corporations, the Department of Real Estate, or the Department of Financial Institutions against a respective licensee, in addition to any other remedies available to these

NOTICE OF REMOVAL
EXHIBIT A PAGE 173

Cal Civ Code § 2924.17                                    Page 2

entitles. This subdivision shall be inoperative on January 1, 2018.

**HISTORY:**

Added Stats 2012 ch 86 § 20 (AB 278), effective January 1, 2013.

**NOTES:**

**Editor's Notes**

For legislative findings and declarations see the 2012 Note following *CC § 2920.5* (First of two).

**Hierarchy Notes:**

Div. 3, Pt. 4, Tit. 14, Ch. 2 Note

Div. 3, Pt. 4, Tit. 14, Ch. 2, Art. 1 Note

31

NOTICE OF REMOVAL
EXHIBIT A PAGE 174



31 of 38 DOCUMENTS

DEERING'S CALIFORNIA CODES ANNOTATED
Copyright (c) 2013 by Matthew Bender & Company, Inc.
a member of the LexisNexis Group.
All rights reserved.

*** This document is current through the 2013 Supplement ***
(All 2012 legislation, 2012 Governor's Reorg. Plan No. 2 and all
propositions approved by the electorate at the June and November 2012 elections)

CIVIL CODE
Division 3. Obligations
Part 4. Obligations Arising from Particular Transactions
Title 14. Lien
Chapter 2. Mortgage
Article 1. Mortgages in General

GO TO CALIFORNIA CODES ARCHIVE DIRECTORY

*Cal Civ Code § 2924.18 (2013)*

First of 2 versions of this section

§ 2924.18. (First of two; Repealed January 1, 2018) Recording notice of default, notice of sale, or conducting a
trustee's sale; Applicability of section to depository institutions and specified licensed persons that foreclosed on
residential properties containing no more than four dwelling units; Notifications; Subsequent mortgage servicer

(a)

(1) If a borrower submits a complete application for a first lien loan modification offered by, or through, the
borrower's mortgage servicer, a mortgage servicer, trustee, mortgagee, beneficiary, or authorized agent shall not record
a notice of default, notice of sale, or conduct a trustee's sale while the complete first lien loan modification application is
pending, and until the borrower has been provided with a written determination by the mortgage servicer regarding that
borrower's eligibility for the requested loan modification.

(2) If a foreclosure prevention alternative has been approved in writing prior to the recordation of a notice of
default, a mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall not record a notice of default
under either of the following circumstances:

(A) The borrower is in compliance with the terms of a written trial or permanent loan modification, forbearance,
or repayment plan.

NOTICE OF REMOVAL
EXHIBIT A PAGE 175

Cal Civ Code § 2924.18                                                Page 2

(B) A foreclosure prevention alternative has been approved in writing by all parties, including, for example, the first lien investor, junior lienholder, and mortgage insurer, as applicable, and proof of funds or financing has been provided to the servicer.

(3) If a foreclosure prevention alternative is approved in writing after the recordation of a notice of default, a mortgage servicer, mortgagee, trustee, beneficiary, or authorized agent shall not record a notice of sale or conduct a trustee's sale under either of the following circumstances:

(A) The borrower is in compliance with the terms of a written trial or permanent loan modification, forbearance, or repayment plan.

(B) A foreclosure prevention alternative has been approved in writing by all parties, including, for example, the first lien investor, junior lienholder, and mortgage insurer, as applicable, and proof of funds or financing has been provided to the servicer.

(b) This section shall apply only to a depository institution chartered under state or federal law, a person licensed pursuant to Division 9 (commencing with Section 22000) or Division 20 (commencing with Section 50000) of the *Financial Code*, or a person licensed pursuant to Part 1 (commencing with Section 10000) of Division 4 of the *Business and Professions Code*, that, during its immediately preceding annual reporting period, as established with its primary regulator, foreclosed on 175 or fewer residential real properties, containing no more than four dwelling units, that are located in California.

(c) Within three months after the close of any calendar year or annual reporting period as established with its primary regulator during which an entity or person described in subdivision (b) exceeds the threshold of 175 specified in subdivision (b), that entity shall notify its primary regulator, in a manner acceptable to its primary regulator, and any mortgagor or trustor who is delinquent on a residential mortgage loan serviced by that entity of the date on which that entity will be subject to Sections 2923.55, 2923.6, 2923.7, 2924.9, 2924.10, 2924.11, and 2924.12, which date shall be the first day of the first month that is six months after the close of the calendar year or annual reporting period during which that entity exceeded the threshold.

(d) For purposes of this section, an application shall be deemed "complete" when a borrower has supplied the mortgage servicer with all documents required by the mortgage servicer within the reasonable timeframes specified by the mortgage servicer.

(e) If a borrower has been approved in writing for a first lien loan modification or other foreclosure prevention alternative, and the servicing of the borrower's loan is transferred or sold to another mortgage servicer, the subsequent mortgage servicer shall continue to honor any previously approved first lien loan modification or other foreclosure prevention alternative, in accordance with the provisions of the act that added this section.

(f) This section shall apply only to mortgages or deeds of trust described in Section 2924.15.

(g) This section shall remain in effect only until January 1, 2018, and as of that date is repealed, unless a later enacted statute, that is enacted before January 1, 2018, deletes or extends that date.

**HISTORY:**

Added Stats 2012 ch 86 § 21 (AB 278), effective January 1, 2013, repealed January 1, 2018.

**NOTES:**

Editor's Notes

33

NOTICE OF REMOVAL
EXHIBIT A PAGE 176



33 of 38 DOCUMENTS

DEERING'S CALIFORNIA CODES ANNOTATED
Copyright (c) 2013 by Matthew Bender & Company, Inc.
a member of the LexisNexis Group.
All rights reserved.

\*\*\* This document is current through the 2013 Supplement \*\*\*
(All 2012 legislation, 2012 Governor's Reorg. Plan No. 2 and all
propositions approved by the electorate at the June and November 2012 elections)

CIVIL CODE
Division 3. Obligations
Part 4. Obligations Arising from Particular Transactions
Title 14. Lien
Chapter 2. Mortgage
Article 1. Mortgages in General

GO TO CALIFORNIA CODES ARCHIVE DIRECTORY

Cal Civ Code § 2924.19 (2013)

First of 2 versions of this section

§ 2924.19.  (First of two; Repealed January 1, 2018) Actions concerning trustee's deed; Injunctive relief;
Liability; Damages; Violations; Attorney's fees and costs

(a)

(1) If a trustee's deed upon sale has not been recorded, a borrower may bring an action for injunctive relief to
enjoin a material violation of Section 2923.5, 2924.17, or 2924.18.

(2) Any injunction shall remain in place and any trustee's sale shall be enjoined until the court determines that the
mortgage servicer, mortgagee, beneficiary, or authorized agent has corrected and remedied the violation or violations
giving rise to the action for injunctive relief. An enjoined entity may move to dissolve an injunction based on a showing
that the material violation has been corrected and remedied.

(b) After a trustee's deed upon sale has been recorded, a mortgage servicer, mortgagee, beneficiary, or authorized
agent shall be liable to a borrower for actual economic damages pursuant to Section 3281, resulting from a material
violation of Section 2923.5, 2924.17, or 2924.18 by that mortgage servicer, mortgagee, beneficiary, or authorized agent
where the violation was not corrected and remedied prior to the recordation of the trustee's deed upon sale. If the court
finds that the material violation was intentional or reckless, or resulted from willful misconduct by a mortgage servicer,
mortgagee, beneficiary, or authorized agent, the court may award the borrower the greater of treble actual damages or

34

statutory damages of fifty thousand dollars ($50,000).

(c) A mortgage servicer, mortgagee, beneficiary, or authorized agent shall not be liable for any violation that it has corrected and remedied prior to the recordation of the trustee's deed upon sale, or that has been corrected and remedied by third parties working on its behalf prior to the recordation of the trustee's deed upon sale.

(d) A violation of Section 2923.5, 2924.17, or 2917.18 by a person licensed by the Department of Corporations, the Department of Financial Institutions, or the Department of Real Estate shall be deemed to be a violation of that person's licensing law.

(e) No violation of this article shall affect the validity of a sale in favor of a bona fide purchaser and any of its encumbrancers for value without notice.

(f) A third-party encumbrancer shall not be relieved of liability resulting from violations of Section 2923.5, 2924.17, or 2924.18, committed by that third-party encumbrancer, that occurred prior to the sale of the subject property to the bona fide purchaser.

(g) The rights, remedies, and procedures provided by this section are in addition to and independent of any other rights, remedies, or procedures under any other law. Nothing in this section shall be construed to alter, limit, or negate any other rights, remedies, or procedures provided by law.

(h) A court may award a prevailing borrower reasonable attorney's fees and costs in an action brought pursuant to this section. A borrower shall be deemed to have prevailed for purposes of this subdivision if the borrower obtained injunctive relief or damages pursuant to this section.

(i) This section shall apply only to entities described in subdivision (b) of Section 2924.18.

(j) This section shall remain in effect only until January 1, 2018, and as of that date is repealed, unless a later enacted statute, that is enacted before January 1, 2018, deletes or extends that date.

HISTORY:

Added Stats 2012 ch 86 § 22 (AB 278), effective January 1, 2013, repealed January 1, 2018.

NOTES:

Editor's Notes

For legislative findings and declarations see the 2012 Note following CC § 2920.5 (First of two).

Hierarchy Notes:

Div. 3, Pt. 4, Tit. 14, Ch. 2 Note

Div. 3, Pt. 4, Tit. 14, Ch. 2, Art. 1 Note



DEERING'S CALIFORNIA CODES ANNOTATED
Copyright (c) 2013 by Matthew Bender & Company, Inc.
a member of the LexisNexis Group.
All rights reserved.

*** This document is current through the 2013 Supplement ***
(All 2012 legislation, 2012 Governor's Reorg. Plan No. 2 and all
propositions approved by the electorate at the June and November 2012 elections)

CIVIL CODE
Division 3. Obligations
Part 4. Obligations Arising from Particular Transactions
Title 14. Lien
Chapter 2. Mortgage
Article 1. Mortgages in General

GO TO CALIFORNIA CODES ARCHIVE DIRECTORY

*Cal Civ Code § 2924.20 (2013)*

First of 2 versions of this section

§ 2924.20. (First of two) Adoption of regulations; Enforcement

Consistent with their general regulatory authority, and notwithstanding subdivisions (b) and (c) of Section 2924.18, the Department of Corporations, the Department of Financial Institutions, and the Department of Real Estate may adopt regulations applicable to any entity or person under their respective jurisdictions that are necessary to carry out the purposes of the act that added this section. A violation of the regulations adopted pursuant to this section shall only be enforceable by the regulatory agency.

HISTORY:

Added Stats 2012 ch 86 § 23 (AB 278), effective January 1, 2013.

NOTES:

Editor's Notes

For legislative findings and declarations see the 2012 Note following CC § 2920.5 (First of two).

Hierarchy Notes:

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

JOSEPH R. MANNING, JR., ESQ.
4667 MACARTHUR BLVD., STE. 150
NEWPORT BEACH, CA 92660

**Exhibit B**

FIRST AMENDED COMPLAINT FOR DAMAGES AND EQUITABLE RELIEF
31

Documents provided by DataTrace LLC via its proprietary imaging and delivery system. Copyright 2003, All rights reserved.

RECORDING REQUESTED BY:
WORLD SAVINGS BANK

Recorded in Official Records, Orange County
Tom Daly, Clerk-Recorder

                57.00

2006000086599 01:49pm 02/07/06
104 18 D11 18

0.00 0.00 0.00 0.00 51.00 0.00 0.00 0.00

WHEN RECORDED MAIL TO:
WORLD SAVINGS BANK
FINAL DOCUMENTATION
CLOSING DEPARTMENT
P.O. BOX 659548
SAN ANTONIO, TX 78265-9548

LOAN NUMBER: 0041949603

NOTE AMOUNT: $525,000.00

FOR RECORDER'S USE ONLY

## DEED OF TRUST

THIS IS A FIRST DEED OF TRUST WHICH SECURES A NOTE WHICH CONTAINS PROVISIONS ALLOWING FOR CHANGES IN MY INTEREST RATE, FREQUENCY AND AMOUNT OF PAYMENTS AND PRINCIPAL BALANCE (INCLUDING FUTURE ADVANCES AND DEFERRED INTEREST). AT LENDER'S OPTION THE SECURED NOTE MAY BE RENEWED OR RENEGOTIATED. THE SECURED NOTE PROVIDES FOR MONTHLY PAYMENTS OF PRINCIPAL AND INTEREST.

THE MAXIMUM AGGREGATE PRINCIPAL BALANCE SECURED BY THIS DEED OF TRUST IS $656,250.00 WHICH IS 125% OF THE ORIGINAL PRINCIPAL NOTE AMOUNT.

I.     DEFINITIONS OF WORDS USED IN THIS DEED OF TRUST
       (A)  Security Instrument. This Deed of Trust, which is dated January 30, 2006, will be called the "Security Instrument."

       (B)  Borrower. KEITH WINTERBOWER AND DEBRA D. WINTERBOWER, HUSBAND AND WIFE sometimes will be called "Borrower" and sometimes simply "I" or "me."

       (C)  Lender. WORLD SAVINGS BANK, FSB, ITS SUCCESSORS AND/OR ASSIGNEES, will be called "Lender." Lender is a FEDERAL SAVINGS BANK, which is organized and exists under the laws of the United States. Lender's address is 1901 Harrison Street, Oakland, CA 94612 .

SD001A (2004-03-2)
DEFERRED INTEREST

DEED OF TRUST-ADJUSTABLE
Page 1

CA

LENDER'S USE ONLY

0 0 3

NOTICE OF REMOVAL
EXHIBIT A PAGE 181

Documents provided by DataTree LLC via it's proprietary imaging and delivery system. Copyright 2003, All rights reserved.

0041949603

**(D)  Note.** The note signed by Borrower and having the same date as this Security Instrument, including all extensions, renewals, substitutions and modifications thereof, will be called the "Note." The Note shows that I owe Lender the original principal amount of U.S. **$525,000.00,** plus accrued and deferred interest and such other amounts as stated in the Note. I have promised to pay this debt in regularly scheduled periodic payments as provided in the Note and to pay the debt in full by March 1, 2036 ("Maturity Date").

**(E)  Property.** The property that is described below in Section III entitled "Description of the Property" will be called the "Property."

**(F)  Sums Secured.** The amounts described below in Section II entitled "Borrower's Transfer of Rights in the Property" sometimes will be called the "Sums Secured."

**(G)  Person.** Any person, organization, governmental authority or other party will be called "Person."

**(H)  Trustor, Beneficiary, Trustee.** Borrower is the "Trustor," Lender is the "Beneficiary" and Golden West Savings Association Service Co., A California Corporation is the "Trustee."

**II.    BORROWER'S TRANSFER OF RIGHTS IN THE PROPERTY**

I irrevocably grant and convey the Property to the Trustee, in trust for Lender, with a power of sale subject to the terms of this Security Instrument. This means that, by signing this Security Instrument, I am giving Lender and Trustee those rights that are stated in this Security Instrument and also those rights that the law gives to lenders who are beneficiaries of a deed of trust and to trustees of a deed of trust. I am giving Lender and Trustee these rights to protect Lender from possible losses that might result if I fail to:

(i)     pay all amounts owed to Lender under the Note and all other notes secured by this Security Instrument, called the "Secured Notes," including future advances made by Lender and any changes to the Secured Notes made with the written consent of Lender;

(ii)    pay, with interest, any amounts that Lender spends under Paragraphs 2 and 7 below to protect the value of the Property and Lender's rights in the Property; and

(iii)   keep all of my other promises and agreements under this Security Instrument, the Secured Notes and any changes to the Secured Notes made with the written consent of Lender.

**III.    DESCRIPTION OF THE PROPERTY**

I give Trustee rights in the Property described below:

(i)     The Property which is located at **2333 COLGATE DRIVE, COSTA MESA, CA  92626-6305.** The legal description of the Property is attached as Exhibit "A" which is made a part of this Security Instrument. This Property is called the "Described Property."

(ii)    All buildings and other improvements that are located on the Described Property;

SD0018 (2004-03-2)
DEFERRED INTEREST                     DEED OF TRUST-ADJUSTABLE
                                                Page 2                                              CA

**NOTICE OF REMOVAL
EXHIBIT A PAGE 182**

Documents provided by DataTrac LLC via it's proprietary imaging and delivery system. Copyright 2003. All rights reserved.

0041949603

(iii)    All rights in other property that I have as owner of the Described Property. These rights are known as easements, rights and appurtenances attached to the Property;

(iv)    All rents or royalties and other income from the Described Property;

(v)    All mineral, oil and gas rights and profits, water rights and stock that are part of the Described Property;

(vi)    All rights that I have in the land which lies in the streets or roads in front of, behind or next to, the Described Property;

(vii)    All fixtures that are now or in the future will be on the Described Property or on the property described in subsection (i) of this Section;

(viii)    All of the rights and property described in subsections (ii) through (vii) of this Section that I acquire in the future;

(ix)    All replacements of or additions to the property described in subsections (ii) through (viii) of this Section; and

(x)    All of the amounts that I pay to Lender under Paragraph 2 below.

IV.    BORROWER'S RIGHT TO GRANT A SECURITY INTEREST IN THE PROPERTY AND BORROWER'S OBLIGATION TO DEFEND OWNERSHIP OF THE PROPERTY

I promise that: (i) I lawfully own the Property; (ii) I have the right to grant and convey the Property to Trustee; and (iii) there are no outstanding claims, charges, liens or encumbrances against the Property, except for those which are of public record.

I give a general warranty of title to Lender. This means that I will be fully responsible for any losses which Lender suffers because someone other than myself and the Trustee has some of the rights in the Property which I promise that I have. I promise that I will defend my ownership of the Property against any claims of such rights.

## COVENANTS

I promise and I agree with Lender as follows:

1.    BORROWER'S PROMISE TO PAY

I will pay to Lender, on time, all principal and interest due under the Secured Notes and any prepayment and late charges due under the Secured Notes.

2.    PAYMENTS FOR TAXES AND INSURANCE

(A)    Borrower's Obligations

I will pay all amounts necessary to pay taxes and hazard insurance premiums on the Property as well as assessments, leasehold payments, ground rents or mortgage insurance premiums (if any).

NOTICE OF REMOVAL
EXHIBIT A PAGE 183

Documents provided by DataTree LLC via it's proprietary imaging and delivery system. Copyright 2005, All rights reserved.

(B)   **Escrow Accounts**                                                          0041949603

Subject to applicable law, no escrow shall be required except upon written demand by Lender, in which case, I shall pay to Lender on the day payments are due under the Note, until the Note is paid in full, a sum ("Funds") for: (a) yearly taxes, penalties and assessments which may attain priority over this Security Instrument as a lien on the Property; (b) yearly leasehold payments or ground rents on the Property, if any; (c) yearly hazard or property insurance premiums; (d) yearly flood insurance premiums, if any; and (e) yearly mortgage insurance premiums, if any. These items are called "Escrow Items." Lender may, at any time, collect and hold Funds in an amount not to exceed the maximum amount a lender for a federally related mortgage loan may require for an escrow account under the federal Real Estate Settlement Procedures Act of 1974 as amended from time to time, 12 U.S.C. § 2601 et seq. ("RESPA"), unless another law that applies to the Funds sets a lesser amount. If so, Lender may, at any time, collect and hold Funds in an amount not to exceed the lesser amount. Lender may estimate the amount of Funds due on the basis of current data and reasonable estimates of expenditures of future Escrow Items in accordance with applicable law.

The Funds shall be held in an institution whose deposits are insured by a federal agency, instrumentality, or entity (including Lender, if Lender is such an institution) or in any Federal Home Loan Bank. Lender shall apply the Funds to pay the Escrow Items. Lender may not charge me for holding and applying the Funds, annually analyzing the escrow account, or verifying the Escrow Items, unless Lender pays me interest on the Funds and/or applicable law permits Lender to make such a charge. However, Lender may require me to pay a one-time charge for an independent real estate tax reporting service used by Lender in connection with this loan, unless applicable law provides otherwise. Unless an agreement is made or applicable law requires interest to be paid, Lender shall not be required to pay me any interest or earnings on the Funds. Lender shall give to me, without charge, an annual accounting of the Funds, showing credits and debits to the Funds and the purpose for which each debit to the Funds was made. The Funds are pledged as additional security for all sums secured by this Security Instrument.

If the Funds held by Lender exceed the amounts permitted to be held by applicable law, Lender shall account to me for the excess Funds in accordance with the requirements of applicable law. If the amount of the Funds held by Lender at any time is not sufficient to pay the Escrow Items when due, Lender may so notify me in writing, and, in such case I shall pay to Lender the amount necessary to make up the deficiency or shortage. I shall make up the deficiency or shortage in accordance with the requirements of the Lender, at its sole discretion, in the manner and times prescribed by RESPA.

Upon payment in full of all sums secured by this Security Instrument, Lender shall promptly refund to me any Funds held by Lender. If, under Paragraph 28, Lender shall acquire or sell the Property, Lender, prior to the acquisition or sale of the Property, shall apply any Funds held by Lender at the time of acquisition or sale as a credit against the sums secured by this Security Instrument.

SD001D (2004-03-2)                          DEED OF TRUST-ADJUSTABLE
                                                     Page 4                                              CA