**AMENDED**

O

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SA CV 13-0360-DOC-MLGx                     Date: March 27, 2013

Title: KEITH WINTERBOWER AND DEBRA WINTERBOWER V. WELLS FARGO BANK, N.A. ET AL.

PRESENT:

THE HONORABLE DAVID O. CARTER, JUDGE

| Julie Barrera | N/A |
|---|---|
| Courtroom Clerk | Court Reporter |

ATTORNEYS PRESENT FOR PLAINTIFF:    ATTORNEYS PRESENT FOR DEFENDANT:

None Present                                                  None Present

**PROCEEDINGS: (IN CHAMBERS):  AMENDED - ORDER DENYING PLAINTIFF'S APPLICATION FOR A TEMPORARY RESTRAINING ORDER**

Before the Court is Plaintiffs' Ex Parte Application for a Temporary Restraining Order ("Ex Parte") (Dkt. 11). After reviewing the Ex Parte and Defendants' Opposition, the Court DENIES Plaintiff's Ex Parte.[1]

**I.     Background**

In 2006, Plaintiffs borrowed $525,000 from World Savings Bank, FSB. (World Savings, through name changes and mergers, is now part of Defendant Wells Fargo, N.A. ("Wells Fargo.")) The loan was memorialized by an adjustable rate note and secured by a deed of trust recorded against 2333 Colgate Drive, in Costa Mesa ("the house"). Ex Parte at Ex. A.

In 2011, Plaintiff fell behind on mortgage payments. Ex Parte at 4; Opp'n (Dkt. 12) at 2 (identifying Steptember as the month of defaulting on the loan). A Notice of Default was recorded on December 7, 2011. Request for Judicial Notice Re: Mot. to

---

[1] The Court finds the matter appropriate for decision without oral argument. Fed R. Civ. P. 78; L. R. 7-15.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SA CV 13-0360-DOC-MLGx            Date: March 27, 2013
                                                                          Page 2

Dismiss ("First RJN") (Dkt. 6) at Ex. G.[2] Defendant Regional Trustee Service Corporation ("Regional") is listed as the Trustee in the Notice of Default. Ex Parte at 4. On February 24, 2012, Regional recorded a substitution of trustee, by which it replaced the prior trustee called Golden West Savings Association Services Co. Request for Judicial Notice In Support of Opposition to Plaintiff's Ex Parte Application ("Second RJN") (Dkt. 13) at Ex. 2.[3] Regional recorded a Notice of Trustee's Sale on March 8, 2012.

       Neither party discusses subsequent delays in carrying out the foreclosure sale. On February 5, 2013, Plaintiffs filed a complaint in Orange County Superior Court. Notice of Removal (Dkt. 1) at Ex. A. On February 28, 2013, Defendants removed this case from Orange County Superior Court. Notice of Removal. Plaintiffs represent that they applied for a temporary restraining order that same day to stop Defendants from selling the house.[4] A further hearing on a temporary restraining order in state court was set for March 5, 2013, but presumably did not happen because the case was removed.

       This Ex Parte was filed March 22, 2013. An Opposition was filed March 25, 2013. The trustee's sale is now set for March 28, 2013.

       For the reasons stated below, the Court DENIES Plaintiff's Request.

## II.     Legal Standard

       Pursuant to Rule 65 of the Federal Rules of Civil Procedure, the court may grant preliminary injunctive relief in order to prevent "immediate and irreparable injury." Fed. R. Civ. P. 65(b)(1)(A). Interim injunctive relief is granted on grounds similar to that governing the issuance of a preliminary injunction. *City of Tenakee Springs v. Block*, 778 F.2d 1402, 1407 (9th Cir. 1985). The decision to grant or deny a preliminary injunction is within the discretion of the district court. *Alliance for the Wild Rockies v. Cottrell*, 632

---

[2] To the extent the Court cites a document for which Defendant Wells Fargo request for judicial notice, that request is GRANTED.

[3] The substitution identifies the Wells Fargo employee making the substitution, and contains his name printed under the signature line, but the substitution is not signed by anyone. Plaintiff does not say anything about this issue, and instead asserts "there are NO known recorded Assignments substituting the Trustee." Ex Parte at 6.

[4] There appears to be an irrelevant discrepancy here as to dates, with Plaintiff representing that the case was not removed until March 4, 2013, yet the date stamp on the Notice of Removal filed in this Court shows February 28, 2013.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SA CV 13-0360-DOC-MLGx							Date: March 27, 2013
												Page 3

---

F.3d 1127, 1131 (9th Cir. 2011). However, a preliminary injunctive relief is "never awarded as of right." *Winter v. Natural Resources Defense Council, Inc.*, 555 U.S. 7, 24 (2008).

In the Ninth Circuit, a plaintiff is entitled to a preliminary injunction if he satisfies either of two tests: (1) the *Winter* factor test; or (2) the "sliding scale" test, also referred to as the "serious questions" test.[1] *See Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). The sliding scale test requires a slightly weaker showing of success on the merits to be outweighed by strong equitable considerations. *See id.* 632 F.3d at 1134-35.

Under the *Winter* factor test, a plaintiff is entitled to a preliminary injunction if he establishes that: (1) he is "likely to succeed on the merits"; (2) the "balance of equities tips in [plaintiff's] favor"; (3) he is "likely to suffer irreparable harm in the absence of preliminary relief"; and (4) a preliminary injunction is in the public interest. *Winter*, 555 U.S. at 20; *Save Our Sonoran, Inc. v. Flowers*, 408 F.3d 1113, 1120 (9th Cir. 2005).

Under the sliding scale test, a plaintiff is entitled to a preliminary injunction if he establishes: (1) "serious questions going to the merits"; (2) "a balance of hardships that tips sharply towards the plaintiff"; (3) "a likelihood of irreparable injury"; and (4) a preliminary injunction is in the public interest. *Alliance for the Wild Rockies*, 632 F.3d at 1135 (noting that the last two factors are identical to two of the factors in *Winter*). While the test "requires the plaintiff to make a showing on all four prongs," the showing need not be equally strong. *See id.*

In *Alliance for the Wild Rockies*, the Ninth Circuit followed the overwhelming majority of Circuits to hold that the sliding scale test survived the Supreme Court's decision in *Winter*. *See id.* (reversing denial of preliminary injunction because district court's failure to apply the "serious questions" test was "an error of law"); *Hoosier Energy Rural Elec. Co-op., Inc. v. John Hancock Life Ins. Co.*, 582 F.3d 721, 725 (7th Cir. 2009) (Easterbrook, J.) ("[T]he more net harm an injunction can prevent, the weaker the plaintiff's claim on the merits can be while still supporting some preliminary relief."); *Citigroup Global Mkts., Inc. v. VCG Special Opportunities Master Fund Ltd.*, 598 F.3d 30, 35 (2d Cir. 2010) ("Because the moving party must not only show that there are

---

[1] A plaintiff may also obtain a preliminary injunction without satisfying either of these two tests if a statute provides for a lesser showing. *See e.g., Tennessee Valley Authority v. Hill*, 437 US 153, 194 (1978); *United States v. Estate Pres. Services*, 202 F.3d 1093, 1098 (9th Cir. 2000) ("The traditional requirements for equitable relief need not be satisfied since Section 7408 expressly authorizes the issuance of an injunction.")

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SA CV 13-0360-DOC-MLGx  Date: March 27, 2013
Page 4

'serious questions' going to the merits, but must additionally establish that 'the balance of hardships tips decidedly' in its favor, its overall burden is no lighter than the one it bears under the 'likelihood of success' standard.") (emphasis in original); *but cf. Real Truth About Obama, Inc., v. Fed. Election Comm'n*, 575 F.3d 343, 347 (4th Cir. 2009) (holding that the "sliding scale approach" does not survive the Winter decision) *vacated on other grounds by* 130 S.Ct. 2371 (2010). The Ninth Circuit's holding that the sliding scale test survives *Winter* is also consistent with scholars' conclusions and the Supreme Court's own statements. *See Winter*, 555 U.S. at 51 (Ginsburg, J., dissenting) ("This Court has never rejected [the sliding scale] formulation, and I do not believe it does so today."); Bethany M. Bates, Reconciliation After *Winter*: The Standard for Preliminary Injunctions in Federal Courts, 111 Colum. L. Rev. 1522, 1523, 1552-53 (2011) (explaining that the sliding scale analysis survives *Winter* because "contemporary Supreme Court cases also support the use of the sliding scale approach" and *Winter* merely held that "only showing a 'possibility' of irreparable harm was not enough" to obtain a preliminary injunction, but "failed to comment on whether courts could use a sliding scale analysis or whether a movant could be granted a preliminary injunction based on a showing that there are serious questions going to the merits").

### III. Discussion

The Court DENIES the TRO Application as Plaintiff has not made the required showing of likelihood of success on the merits or that the balance of hardships tips sharply in their favor.

### a. Likelihood of Success on the Merits
#### i. California Civil Code Section 2923.6

Plaintiffs argue that they "have not been fairly evaluated, nor afforded an opportunity [to] explore a foreclosure prevention alternative, including a loan modification." Ex Parte at 4. Plaintiffs allege that Defendants are violating California Civil Code Section 2923.6, referred to as the Homeowner's Bill of Rights, and thus cannot carry out a foreclosure sale. Under 2923.6(g), a mortgage servicer is not obliged to evaluate applications for first lien loan modifications from borrowers who have already been evaluated or given a fair chance to be evaluated for such relief before January 2013, "unless there has been a material change in the borrower's financial circumstances" since

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SA CV 13-0360-DOC-MLGx					Date: March 27, 2013
								Page 5

---

the previous application "and that change is documented by the borrower and submitted to the mortgage servicer."

On February 5, 2013, Plaintiffs' attorneys sent Defendants a letter stating that "the borrower has had a change of circumstance as their income and expenses have changed." Notice of Removal at Ex. A, Page 203.[5] At the time, the foreclosure was set for two days later, on February 7, 2013. The letter says that, "specifically, [Plaintiffs] have decreased their expenses from $25,000 per month down to $10,000 per month." *Id.* While such an application is pending, Plaintiffs contend, Defendants cannot carry out a sale—they are obliged to consider the loan application because there was a material change in the borrower's financial circumstances and the change was "documented and submitted." *See* Cal. Civ. Code § 2923.6(c) & (g).

There are several reasons such an argument does not establish a sufficient likelihood of success on the merits.

First, Defendants make a credible argument that to "document" and "submit" a material change in circumstance means more than simply stating one's expenses decreased and then providing two numbers. Otherwise, such a barebones description would easily sidestep the entire purpose of subsection (g), which is meant to relieve mortgage servicers from evaluating multiple loan modification applications submitted for the purpose of delay. *See* Cal. Civ. Code § 2923.6 (g).[6]

Second, Wells Fargo is a party to the National Mortgage Settlement, a settlement reached in *United States of America et al. v. Bank of America Corporation et al.*, 1:12-cv-00361 RMC, in D.C. District Court. Second RJN Ex. 3. By California Civil Code Section 2924.12, which explains a homeowner's injunctive remedies under the Homeowner Bill of Rights, a signatory to that settlement "shall have no liability for a violation of Section . . . 2923.6" so long as the signatory is in compliance with the relevant terms from the Settlement Term Sheet. Plaintiffs make no such allegations as to a lack of compliance with the settlement. Further, the Settlement Term Sheet would appear to support the argument that if a borrower applies for a loan modification less than 15 days before a

---

[5] Plaintiffs represent that this letter is Exhibit D to their Ex Parte, but there is no document after the cover page for the exhibit. The Notice of Removal does have the letter. Page 203 in Exhibit A corresponds to page 19 of 71 for the second attachment found at Docket 1-1.

[6] In a Declaration attached to this Ex Parte, Plaintiff Keith Winterbower states that his business increased, and that he cut costs because he no longer needs to pay a $900 car payment for his truck, or $2,000 per month toward a land lease for his mother's home. Keith Winterbower Decl. ¶ 10. The Court need not decide if this would be a sufficient level of detail because Winterbower did not include such information in his lawyer's letter sent two days before a foreclosure sale.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SA CV 13-0360-DOC-MLGx　　　　　　　　　　　　Date: March 27, 2013
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　Page 6

scheduled sale, the servicer's obligation is simply to notify the borrower before the sale as to its determination on the application. National Mortgage Settlement, Second RJN Ex. 3, at A-20 of Term Sheet. Defendants have done so here. D. Dennis La Decl. (Dkt. 12-1) at Ex. A.

None of the above should be taken as a conclusive finding by this Court as to the meaning of relatively new portions of the California Civil Code, and of the meaning of the National Mortgage Settlement. It seems wise to avoid weighing in definitively about such questions when considering an ex parte application for a temporary restraining order, a request meant to be filed only in an emergency. The point is merely that such arguments do raise a serious doubt as to Plaintiffs' likelihood on the merits. The Court has considered further arguments submitted by Defendants, but declines to rely on them.

### ii. California Civil Code Section 2924

Plaintiffs allege that Defendants do not have authority to foreclose because Regional is a stranger to the Deed of Trust, and there are no known recorded assignments substituting Regional as trustee. Ex Parte at 6-7. As noted above, such a substitution was recorded on February 24, 2012. Second RJN at Ex. 2. Section 2934a(c) provides that such a form can be recorded after a notice of default and before a notice of sale, provided a copy of the substitution is mailed "to all persons to whom a copy of the notice of default would be required to be mailed by the provisions of Section 2924b." The recorded substitution contains an affidavit, as is required under the statute, attesting that Regional mailed the copy to all recipients required under the statute. Second RJN at Ex. 2.

The point here, again, is not that this is an airtight case for Defendants. For one, it seems odd that the Substitution of Trustee, though identifying the Wells Fargo officer authorizing such a step, is not actually signed. But Plaintiffs' argument simply asserts no such document exists. When those are the arguments for and against success on the merits, this Court does not find a sufficient likelihood of Plaintiffs' success.

### iii. Business & Professions Code Section 17200

An action based on Section 17200, the Unfair Competition Law ("UCL"), borrows a violation of another law and treats that violation as an unlawful practice. *Chabner v. United OmahaLife Ins. Co.*, 225 F.3d 1042, 1048 (9th Cir. 2000). Thus, the UCL can form the basis for a private cause of action even if the underlying statute, from which the UCL is "borrowing" a violation, has no private cause of action. *Id.* But here, where

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL

Case No. SA CV 13-0360-DOC-MLGx                      Date: March 27, 2013
                                                                                                     Page 7

---

"Plaintiffs' § 17200 claim is based on Defendants' violation" of the previously discussed Civil Code sections (2923.6 and 2924), *see* Ex Parte at 11, the likelihood of success on a UCL claim is accordingly reduced based on the above analysis of the underlying claimed violations. *See Ingels v. Westwood One Broad. Servs., Inc.*, 129 Cal. App. 4th 1050, 1060 (2005). The Court agrees with Defendants that if conclusory references to marked-up fees are meant to support another UCL cause of action, such a showing is not made in the Ex Parte.

### b. Balance of the Equities/ Balance of Hardship/ Likelihood of Irreparable Harm / Public Interest

Because the Court does not believe Plaintiffs have shown they are likely to succeed on the merits, the sliding scale test from *Alliance for the Wild Rockies* would be the test more favorable to them. However, even if the Court found there were serious questions as to the merits, the second prong, a balance of hardships that "tips sharply towards the plaintiff" is not met here. *See Alliance for the Wild Rockies*, 632 F.3d at 1135. As Defendants correctly note, an ex parte application should be brought when the moving party faces irreparable harm, and when that party "is without fault in creating the crisis that requires ex parte relief," or "the crisis occurred as a result of excusable neglect." *Mission Power Eng'g Co. v. Cont'l Cas. Co.*, 883 F. Supp. 488, 492 (C.D. Cal. 1995).

Here, Plaintiffs applied for a state court temporary restraining order a month ago, then the case was removed, and presumably Defendants chose to delay the foreclosure, leading to a scheduled sale on March 28, 2013. Plaintiffs offer no reason why an ex parte filed less than a week before the sale is necessary, given this awareness that Defendants would be pursuing a foreclosure sale. Plaintiff Keith Winterbower's Declaration is dated March 4, 2013. It notes a pending foreclosure sale on March 28. Keith Winterbower Decl. ¶ 14. And the paragraphs of the Declaration clearly track all the arguments made in the Ex Parte. *See id.* at ¶¶ 6-12. Given those facts, Plaintiffs helped create this emergency, and this Court cannot find that a balance of hardships tips sharply in their favor, or that injunctive relief in these circumstances would be in the public interest. The Court further notes Wells Fargo's representation that Plaintiffs have lived in their house since September 2011 without making mortgage payments.

It is certainly true that the foreclosure sale threatens a definite irreparable harm to Plaintiffs. This factor alone, in this case, is outweighed by the other factors discussed

**UNITED STATES DISTRICT COURT**
**CENTRAL DISTRICT OF CALIFORNIA**

**CIVIL MINUTES – GENERAL**

Case No. SA CV 13-0360-DOC-MLGx　　　　　　　　　　　Date: March 27, 2013
　　　　　　　　　　　　　　　　　　　　　　　　　　　　　Page 8

above. And, again, the Court would be remiss if it did not make clear that, when facing such harm, Plaintiffs should move quickly for relief, as their application, if meritorious, can only benefit from as much time for consideration as possible.

**IV.　Disposition**

　For the foregoing reasons, the Court DENIES Plaintiff's Ex Parte Application.

　The Clerk shall serve a copy of this minute order on counsel for all parties in this action.

MINUTES FORM 11
CIVIL-GEN　　　　　　　　　　　　　　　　　　　　　　Initials of Deputy Clerk: jcb